**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF OHIO WESTERN DIVISION**

TYLER GISCHEL,                          )
                                        )        CIVIL ACTION NO.  1:17 CV 475
                                        )        JUDGE: SUSAN J. DLOTT
          PLAINTIFF,                    )
                                        )
             v.                         )
                                        )
UNIVERSITY OF CINCINNATI, et al.        )
                                        )
          DEFENDANTS.                   )


**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................1

II.  FACTS PRECLUDING DISMISSAL OF GISCHEL'S CLAIMS . . . . . . . . . . . . .2

III. LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

     A. Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

     B. UC's Motion to Dismiss Gischel's Title IX Claims Should Be Denied Because
        Those Claims Are Based on Specific Allegations of Gender Bias that Must Be
        Construed in Gischel's Favor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Sixth Court, without expressly deciding the issue but looking to the Second Circuit Court of Appeals' decision in Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994) for guidance, has recognized the existence of two types of Title IX claims male students can advance when erroneously disciplined for false allegations of sexual misconduct: (1) erroneous outcomes; and (2) selective enforcement. See Mallory v. Ohio Univ., 76 Fed.Appx. 634, 638–39 (6th Cir. 2003). Gischel successfully pled both types of claims here.*

        1. Gischel has sufficiently pled an erroneous outcome claim based on
           allegations of gender bias that cast doubt on the accuracy of the disciplinary
           hearing and has established a particularized causal connection between the
           flawed outcome and UC's gender bias. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*The Sixth Circuit Court of Appeals has held that, to state an erroneous outcome claim, a plaintiff must plead: (1) "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) a "particularized ... causal connection between the flawed outcome and gender bias." Cummins, 662 F. App'x at 452 (citing Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)). Gischel's erroneous outcome claim should not be dismissed because Gischel satisfies both elements in his FAC.*

        2. UC's motion to dismiss Gischel's hostile environment sexual harassment
           and/or discrimination claim should be denied because Gischel has
           sufficiently pled all elements of that claim. . . . . . . . . . . . . . . . . . . . . . . . .22

*Gischel has pled sufficient facts to state a claim for hostile environment sexual harassment based on existing law. In Klemencic v. Ohio State University, 263 F.3d 504 (6th Cir. 2001), the Sixth Circuit identified three elements for such a claim: (1) a "sexually hostile environment"; (2) the university's "actual notice" of this environment and "authority to take corrective action to end discrimination"; and (3) the university's response to the hostile environment "amounted to deliberate indifference." The Fourth Circuit Court of Appeals reached a similar conclusion in identifying four elements of a Title IX hostile environment claim as: (1) plaintiff was a student at an educational institution receiving federal funds, (2) he/she was subjected to harassment based on his/her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution. See Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007), en banc.*

3. UC's motion to dismiss Gischel's deliberate indifference claim should be denied because the Sixth Circuit has acknowledged the validity of such a claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Citing to an opinion from the District Court for the Eastern District of Michigan, UC claims that a Title IX "deliberate indifference" claim fails because it does not apply to cases "where the student alleges 'discriminatory application of a facially gender-neutral policy by school officials.'" See UC MTD at PAGEID#1405, citing Doe v. Baum, No. 16-13174, 2017 WL 57241, at \* 26 (E.D. Mich. Jan. 5, 2017). However, no court in this District has reached such a holding. Rather, the Sixth Circuit in Mallory v. Ohio Univ. (76 Fed.Appx. 634, 639 (6th Cir. 2003) assumed that such a claim was valid. In Mallory, the court described the three elements of a Title IX deliberate indifference claim as requiring that a plaintiff establish: (1) "an official of the institution had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct;" (2) the university's conduct caused the student "to undergo harassment or make [him/her] liable or vulnerable to it;" and (3) the university's "response to the harassment . . . is clearly unreasonable in light of the known circumstances." Id. at 638.*

4. UC's motion to dismiss should be denied because Gischel has sufficiently pled a Title IX selective enforcement claim based on allegations that UC treats similarly situated females more favorably. . . . . . . . . . . . . . . . . . . .25

*As articulated in Marshall v. Ohio Univ., with regard to a Title IX selective enforcement claim a plaintiff: "essentially asserts that even if he or she did violate a university policy, the decision to initiate disciplinary proceedings or the severity of the penalty imposed was motivated by gender bias. To state such a claim, [a plaintiff] must allege "that a female was in*

*circumstances sufficiently similar to his own and was treated more favorably by [defendant university]." Moreover, [a plaintiff] must allege facts that would demonstrate that the difference in treatment was because of his gender." Marshall, 2015 U.S. Dist. LEXIS 155291, *17-18 (citations omitted). Here, Gischel has pled plausible facts establishing that UC's gender bias triggered flawed and unjust disciplinary proceedings that caused UC to impose severe sanctions against Gischel even though the allegations against him were patently false.*

C.  Gischel's § 1983 Claims Should Not Be Dismissed because Gischel Properly Alleged Facts Establishing the Individual Defendants' Gender-Biased Conduct Resulted in a Violation of His Procedural and Substantive Due Process and Equal Protection Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . 29

*Gischel asserted claims under 42 U.S.C. § 1983 for Individual Defendants' violations of procedural and substantive due process and a violation of equal protection under the Fourteenth Amendment based on their gender-biased conduct. Those claims were supported with properly pled allegations of gender bias.*

1.  Gischel stated a claim for equal protection based on the Individual Defendants' unequal treatment of male students. . . . . . . . . . . . . .. . . . . . . .29

*To establish an equal protection violation, a plaintiff must show that a defendant has "burdened a fundamental right, which he was exercising, targeted a suspect class, of which he is a part, **or** treated him any differently than others similarly situated without any rational basis." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 313 (6th Cir. 2005).*

2.  Gischel stated a claim for violation of substantive due process based on the Individual Defendants' violation of Gischel's equal protection rights30

*The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1.*

3.  Gischel stated a claim for violation of procedural due process based on the gender-biased disciplinary proceedings. . . . . . . . . . . . . . . . . . . . . . . . . .30

*To establish a procedural due process claim, [Gischel] must show that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Cir. 2014). The Sixth Circuit has held that suspension resulting from a university's disciplinary decision "clearly implicates a property interest." Cummins, 662 Fed. Appx. at 445.*

D.  The Individual Defendants Are Not Entitled to Qualified Immunity as to the University's Title IX Proceeding because They Violated Clearly Established Statutory and/or Constitutional Rights of Which a Reasonable Person Would Have Known. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*There is no qualified immunity here. Qualified immunity shields government officials performing discretionary functions from liability if they have violated an individual's constitutional right, but that right was not "clearly established" when the officials acted.  See Marvin v. City of Taylor, 509 F.3d 234, 243 (6th Cir. 2007). To determine whether a government official is entitled to qualified immunity, courts apply a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Colvin v. Caruso, 605 F.3d 282, 290 (6th Cir. 2010) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310 (6th Cir. 2005)).*

E.  Gischel Adequately Pled His Claim of Malicious Prosecution under the Fourth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983.36

*The elements of a Section 1983 claim for malicious prosecution are: (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.* Sykes v. Anderson, *625 F.3d 294, 309-10 (6th Cir. 2010). Plaintiff properly pled the claim.*

F.  Defendant Richey Is Not Entitled to Qualified Immunity from the Section 1983 Malicious Prosecution Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

*Police officers who withhold and destroy evidence are not entitled to qualified immunity.* Spurlock v. Satterfield, 167 F.3d 995, 1006 (6th Cir. 1999).

G.  UC's Motion to Dismiss Gischel's Declaratory Judgment Claims Should Be Denied Because That Claim Is Tied to Viable, Underlying Claims . . . . . . . . 37

## I.    INTRODUCTION

Defendants University of Cincinnati, ("UC"), Jyl Shaffer ("Shaffer"), UC's former Title IX Coordinator and investigator for the Title IX complaint filed by Jennifer Schoewe ("Schoewe") against Plaintiff Tyler Gischel ("Gischel"), Detective William Richey ("Richey"), UC Police Department ("UCPD"), Daniel Cummins ("Cummins"), UC's Assistant Dean of Students and Director of Office of Judicial Affairs ("OUJA"), Brice Mickey ("Mickey"), Program Coordinator in the Student Activities & Leadership Development Office at UC and served as the Chair of the Administrative Review Committee ("ARC") panel which heard Schoewe's case and unlawfully sanctioned Gischel, Tonge Mack ("Mack"), Director of Student Retention Initiatives at UC and served on the ARC panel overseeing Gischel's hearing, Arnett Glasco ("Glasco"), Senior Academic Director at UC and served as one of the faculty members of the ARC panel, Rachel J. Smith ("Smith"), professor at the UC College of Law and at all relevant times served as the University Appeals Administrator who reviewed and ultimately denied Gischel's appeal (collectively, the individuals will be referred to as "Individual Defendants" and all of the defendants as "Defendants") conducted a gender-biased investigation against Gischel resulting in his unlawful expulsion from UC without due process.

The investigation was gender-biased and constitutionally insufficient because the investigator, UCPD Detective Richey, was motivated to discriminate against Gischel because of his gender and Richey's romantic interest in and inappropriate relationship with Schoewe. UC and Individual Defendants relied on Richey's gender-biased investigation to achieve the desired result of finding Gischel responsible. In addition, Defendants were wrongfully motivated by gender to find Gischel responsible to avoid negative publicity, to appease Schoewe and other activists on campus, and because of pressure from the United States Department of Education, Office of Civil

Rights (hereinafter "DOE" or "OCR"). Defendants unlawfully expelled Gischel after he engaged in consensual sexual activity with Schoewe based on an investigation in which crucial information was withheld or destroyed by Defendants.

Outside of the administrative proceeding at UC, Richey and the UCPD maliciously prosecuted Gischel. The prosecution against Gischel was malicious because Richey withheld, and then destroyed, relevant, presumably exculpatory information. He also instructed and encouraged Schoewe to do the same. There is no telling what exculpatory information Richey and Schoewe destroyed, but it had to be damning for Richey to violate his obligations to a court of law and for Schoewe to abandon her vendetta against Gischel. Even after learning that its employee charged with providing Gischel a fair investigation intentionally destroyed or withheld exculpatory information, UC did nothing to remedy the harm inflicted upon Gischel.

UC's Motion to Dismiss fails in its entirety because Gischel's First Amended Complaint ("FAC") is replete with allegations not just of the consensual nature of the sexual activity between Gischel and Schoewe, but paragraph after paragraph describing UC's anti-male bias and how that bias led to a tainted investigation and disciplinary proceeding and, ultimately, to Gischel's unlawful discipline. Despite the many factual allegations in the FAC, UC seeks dismissal of all counts against it, urging this Court to defy bedrock Supreme Court law by ignoring well-pled factual allegations and by improperly construing those allegations in favor of UC. UC's Motion to Dismiss is not well founded and should be denied.

## II.    FACTS PRECLUDING DISMISSAL OF GISCHEL'S CLAIMS

This case is the result of a sexual encounter between Gischel and Schoewe on August 23, 2015. *See* FAC at PageID#759-60, ⁋ 95-96. Gischel and Schoewe were both intoxicated at the party where they first met on August 23rd. *Id*. at ⁋ 95, PageID#759. At that party, Schoewe flirted

with Gischel, including kissing him, making out with him, and grabbing his penis without his permission. *Id*. at ¶ 96(a)-(d). Gischel and Schoewe left the party together and—at Schoewe's insistence—went to Gischel's apartment. Schoewe was able to walk to Gischel's apartment, climb two flights of stairs without assistance, and converse with him. *Id*. at ¶ 96(e)-(i).

Once at the apartment, Gischel and Schoewe kissed and eventually had sexual intercourse. *Id*. at ¶ 96(i)-(m). Schoewe verbally consented to the sexual intercourse. *Id*. at ¶¶ 96(k), 107(j)-(k), 108. She also indicated her consent through non-verbal actions. *Id*. at ¶¶ 96(m), 108. After the sexual intercourse, Gischel offered to walk Schoewe home, but she told him she did not want him to do so because she was going to another party. *Id*. at ¶ 96(n)-(r). Schoewe was able to leave the apartment, walk to the other party, and get home that evening on her own. *Id*. at ¶¶ 96(p)-(s), 107.

The next day Schoewe became embarrassed by her conduct and needed an explanation for her boyfriend. *Id*. PageID# 760 at ¶¶ 100-01. She began to research date rape drugs and reported to her boyfriend and mother that she believed she had been drugged the night before. *Id*. at ¶¶ 101-02. Schoewe's mother filed a report with UCPD Detective Richey. *Id*. at ¶ 102. Schoewe filed a report with Shaffer through UC's Title IX office. *Id*., PageID#761 at ¶ 103.

Richey and Shafer preceded with interviewing Schoewe. At the interview, Schoewe stated that she was neither incapacitated nor intoxicated by alcohol, but felt tipsy. Instead, Schoewe believed she was given a date rape drug, which was later disproven through a toxicology report. *Id*. PageID# 760-61 at ¶¶ 101-02, 105. On September 4, 2015, Schoewe notified Richey she wanted to pursue both a criminal and Title IX complaint against Gischel. *Id*. at PageID# 761 at ¶ 106.

On September 16, 2015, Richey interrogated Gischel in Shaffer's presence. Neither informed Gischel that he was the subject of a criminal or Title IX investigation. *Id*. at ¶ 107. After securing the interview, Shaffer informed Gischel of the Title IX complaint for the first time on

September 18, 2015. *Id*., PageID#763 at ¶ 109. Shaffer never interviewed Gischel or any of his witnesses. *Id*., PageID#764 at ¶ 113.[1]

During Richey's investigation of Schoewe's criminal and Title IX complaint, Richey and Schoewe became romantically interested in one another. Throughout the investigation and as this romantic relationship evolved, Richey allowed Schoewe to supplement her testimony with alleged "facts" she would suddenly remember. *Id*., PageID#763 at ¶ 110. Richey conspired with Schoewe to create, fabricate and/or destroy evidence against Gischel. This is evidenced by the fact that Richey, the head of UC's Special Victims Unit, decided he would rather face the consequences of destroying evidence than produce his cell phone communications, including text messages, with Schoewe to the Ohio court handling the criminal case filed against Gischel as a result of the incident. *Id*., PageID#755-57, 768 at ¶¶ 86, 126. Schoewe also destroyed evidence and refused to produce her cell phone communications with Gischel to the criminal court. This obstruction of justice led the criminal court to dismiss the indictment with prejudice. *Id*.

In sum, Richey's investigation that formed the basis of the criminal indictment and the Title IX proceedings was biased because of sex. *Id*., PageID#734, 753-54 at ¶¶ 27, 79. Richey's bias against Gischel shines through in his interview of Gischel. *Id*., PageID#757 at ¶ 89. In addition to his sexual interests in Schoewe, Richey was also biased to believe females over males accused of sexual assault. *Id*., PageID#756-57 at ¶¶87-89.

At Schoewe and her mother's insistence, UC unlawfully suspended Gischel on October 16, 2017 while UC's investigation was still pending and when UC knew Gischel presented no harm to Schoewe. *Id*., PageID#763 at ¶ 111. Cummins granted this interim suspension to avoid negative publicity that it was not harshly disciplining male students accused of sexual assault. *Id*. at ¶ 111-

[1] The "Jill" that sat through interviews with Detective Richey was an employee of the UCPD, not Shaffer.

4

12.  Schoewe and UC have both represented in public filings in the case of *Schoewe v. Univ. of Cincinnati*, Case No. 1:17-cv-00504 (filed on July 25, 2017, just twelve days after Gischel filed his Complaint) that Gischel was not harassing Schoewe, but that she and her mother wanted him suspended from campus because Schoewe was afraid and anxious about seeing him on campus. *Id* at ⁋ 111 and Case No. 1:17-cv-00504, Doc. No. 3, PageID # 14-16.[2]

In fact, Schoewe pled that UC initially decided not to impose an interim suspension on Gischel, but succumbed to pressure to do so after the criminal indictment. *Id.*, Doc. No. 1 at ⁋⁋ 20, 24-27 PageID # 3- 5. As UC stated in its reply memorandum in support of the motion to dismiss in that case, "Ms. Schoewe's contention is that because Mr. Gischel was not immediately removed from campus, she was made more 'vulnerable' to harassment, and UC should be liable for that vulnerability even though she does not allege that she had any future action with Mr. Gischel, much less was harassed by Mr. Gischel." *Id.*, at Doc. No. 6, PageID# 44.

After the interim suspension, UC's Title IX investigation languished until UC learned that Schoewe had filed a complaint with OCR.  *See* FAC, PageID#764, at ⁋ 115. On February 3, 2016, Shaffer sent her Title IX investigation report to Cummins. *See id.* at ⁋ 113. Cummins subsequently notified Gischel that the matter had been referred to the OUJA and that a procedural review was scheduled for February 12, 2016. *Id*. at ⁋ 114. By at least February 9, 2016, UC also knew that Schoewe had filed a complaint with OCR about UC's handling of her complaint. *Id*. at ⁋ 115.[3]

---

[2] The Court can consider the pleadings in Schoewe's case against UC in ruling upon Defendants' Motion to Dismiss because the documents are referenced in the FAC at paragraph 111 and are public records. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6ᵗʰ Cir. 1997); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.").

[3] This is a good example of where UC encourages the Court not to accept the well-pled allegations in the Complaint and instead construe all evidence in favor of UC. UC asks the Court to disregard Plaintiff's allegations and assume that UC was not influenced by the OCR complaint because Schoewe filed it after

On February 25, 2016, Cummins notified Gischel that the ARC would conduct a hearing on March 15, 2016 concerning Schoewe's allegations. *Id*., PageID#765 at ¶¶ 117-19. Despite the fact UC policies required Shaffer be neutral, she appeared at the hearing with Schoewe showing her implied support for Schoewe. *Id*., PageID#753-54, 765 at ¶ 79, 119. This is consistent with Shaffer's gender-biased writings in favor of females in sexual assault proceedings. *Id*., PageID#75-553 at ¶¶ 79-82. The hearing lasted less than two hours, evidencing the fact the hearing panel relied heavily on Richey's investigation. *Id*., PageID#765 at ¶ 119.

Defendant Mickey served as the hearing chair. While he asked Gischel almost all of Schoewe's questions, Mickey and the other hearing panel members refused to ask most of Gischel's sixty-three questions to Schoewe. Importantly, Mickey and the hearing panel members refused to allow Gischel to inquire about Schoewe's relationship with Richey and whether the integrity of the investigation was compromised because of Richey and Schoewe's romantic interests in one another. *Id*., PageID#765-66 at ¶¶ 120-21. Specifically, the following questions were not asked:

(a)  Did you know or had you met Detective Richey before this incident?
(b)  After this incident did Detective Richey secure [for you] four football tickets to a UC football game, which was sold out?
(c)  Since this incident, have you called or texted Detective Richey between 1:00 A.M. and 5:00 A.M. in the morning?
(d)  How many times, approximately, have you and Detective Richey texted each other?
(e)  Why?
(f)  Did Detective Richey ever say 'I love you' to you?
(g)  Did Detective Richey ever give you a back rub?
(h)  Did Detective Richey ever give you any gifts?
(i)  Did Detective Richey ever give you a pendant?
(j)  Did you ever state on social media that your detective loves you?
(k)  Did Detective Richey ever text you saying 'I want to kiss you?'
(l)  Have you ever worn Detective Richey's police hat or jacket? *Exhibit 38* (containing

---

Gischel's interim suspension. *See* MTD, Doc. No. 11, PageID#1413. Gischel has not alleged that the OCR filing impacted the decision to issue the interim suspension. Rather, Gischel alleged that the OCR complaint influenced the hearing and expulsion and UC's decision to ignore the impact of Richey's romantic relationship on such.

proffered questions).

*Id*., PageID#766 at ℙ 121.

      Gischel possessed evidence proving Richey and Schoewe engaged in the conduct addressed in these questions. *See FAC, Exhibit 43*, p. 10 (containing social media position of Schoewe in defendant Richey's police hat and jacket and Richey Internal Investigation, which investigation resulted in his removal from the Special Investigations to Criminal Investigations). Had the panel acted neutrally, instead of relying on their gender-biased training (described in more detail below), Gischel would have been able to substantiate how Richey and Schoewe were conspiring to present false testimony against Gischel if Schoewe would have been required to answer these questions truthfully. Again, the evidence supporting this belief includes the fact that Schoewe and Richey obstructed justice in refusing to provide an Ohio court information about their private communications which caused that court to dismiss with prejudice criminal charges against Gischel. *See, FAC,* PageID#750, 766 at ℙℙ 69, 122.

      Mickey and the hearing panel members also refused to allow Gischel to ask questions relating to the credibility of Schoewe's incapacitation claim. *Id*., PageID#766-67 at ℙℙ 121, 123. The unasked questions were:

    (a)    Did you vomit that night?
    (b)    Did you fall down while you were at the party?
    (c)    Did you fall down at all while walking to Topper's?
    (d)    Were you carrying a purse or handbag that night?
    (e)    Did you lose anything that was in your purse or handbag?
    (f)    Did you take any prescription or non-prescription medicine the day of or the evening of the party?
    (g)    Do you remember kissing Tyler that night at the party or at Topper's?
    (h)    Did you feel embarrassed the next morning when you woke up?
    (i)    Why?
    (j)    Do you remember telling the nurses at University of Cincinnati Hospital that you do not drink alcohol?
    (k)    Do you know there were no date rape type drugs found in your blood and urine testing?

7

(l)     Is this a case where you woke up the next morning and you simply regretted what you had done the night before with Tyler?

(m)     Did you drink too much that night?

(n)     Did you drink enough to be mentally impaired that night?

*Id.*, Page ID#767 at ⁋ 123. The failure to ask these questions prevented Gischel from establishing that Schoewe was not incapacitated. *Id.* at ⁋ 124. UC, in particular Richey and Shaffer, also concealed from the hearing panel the existence of a toxicology report demonstrating that Schoewe did not have any date rape drugs in her system; thus, negating her claim that she was incapacitated by drugs, not alcohol. *Id.*, PageID# 754, 768 at ⁋⁋ 82, 125.

After prohibiting Gischel from exposing these defects in Schoewe's allegations and her conspiracy with Richey and/or Shaffer to prohibit the introduction of exculpatory evidence, the ARC erroneously found Gischel responsible for "violating provision(s) of the Student Code of Conduct specifically, Violation of Law. *See, Exhibit 44* (containing Dismissal of Criminal Charge against Gischel), Physical Abuse or Harm, Harassment or Discrimination, and Violation of University Policies or Rules, most specifically University Policy Statement of Sex Offenses." *Id.*, PageID# 768 at ⁋ 126. Gischel timely appealed the discipline, but Smith rejected the appeal and confirmed Gischel's expulsion from UC. *Id.*, PageID# 734, 769-771 at ⁋⁋ 27, 127-35.

Even though UC knew about Richey's inappropriate relationship with Schoewe (*Id.*, Page ID#766 at ⁋ 122), Defendants allowed his tainted investigation to serve as the basis for expelling Gischel. *Id.*, PageID#771 at ⁋ 135. Further, even though the criminal court dismissed the indictment against Gischel with prejudice because Richey and Schoewe intentionally destroyed relevant evidence as to Gischel's innocence, UC took no action to remedy the harm inflicted upon Gischel as a result of the biased investigation and the destruction of relevant evidence.

In addition to the gender-biased investigation that Gischel was subjected to in part because of Richey's romantic interest in Schoewe, the FAC contains detailed allegations about how UC discriminated against male students at UC due to pressure from OCR and internal and external groups at UC. *Id*., PageID# 729-58 at ¶¶ 12-93.  The FAC also detailed how the investigation and hearing violated UC's policies and denied Gischel rights to which he was entitled. *Id*., PageID#771-77 at ¶¶ 135-57.

Schoewe's case and DOE complaint were highly publicized and subjected UC to pressure and scrutiny from the DOE and the media.  *Id*., PageID#733 at 23. The timing of UC's decision to set the Title IX complaint for hearing with the filing of Schoewe's complaint with OCR is evidence that UC felt pressured to adjudicate the manner to obtain a favorable finding from OCR. *Id*., PageID#739 at ¶ 35. UC's failure to address the impact that Richey's biased investigation had on the Title IX proceeding—even though the evidence was compelling enough for UC to demote Richey—is additional evidence that UC was motivated to avoid negative publicity relating to its handling of Schoewe's well-publicized campaign against UC and its sexual assault procedures. *Id*., PageID#734 at ¶ 27.

Gischel was also discriminated against because of UC's gender-biased training of its hearing panel members for the handling of sexual assault case. The training is replete with sexist, stereotypical statements against men that presume males to be sexual predators.  *Id*., PageID#750 at ¶¶ 69, 72-78. Examples of the stereotypical statements encouraging discrimination against male students in UC's training materials are:

    (a)    "Some *men* believe that spending money on a women means that she owes them sex at the end of the evening;"
    (b)    "Some *men* believe that women play hard to get, by saying "no" when they really mean "yes" and enjoy being aggressively pursues;"
    (c)    "Some *men* perceive that sex is their right;"
    (d)    Falsely alleging large percentages of male students are sexually assaulting their

female peers by claiming: (i) "It is estimated that for a school the size of the University of Cincinnati, about 1,225 rapes or attempted rapes occur each year" even though (ii) the training materials admit that in 2014 only "48 rapes reported to the SARC; of those, 2 reported to UCPD;"

(e)  "A *woman has a 4x greater chance of being raped* by someone she knows than by a stranger;" and

(f)  "*83% of perpetrators are* acquaintances (friends of the family, dates, *boyfriends*, relatives, authority figures);" *Id.*, p. 29 (emphasis added).

*Id.*, PageID#750-53 at ⁋ 69.  OCR warns the presence of this type of sex stereotyping may violate Title IX's gender neutral mandates.  *See e.g.,* OCR's September 22, 2017 *Q and A on Campus Sexual Misconduct*, p.5 (noting: '[decision-making techniques or approaches that apply sex stereotypes . . . may violate Title IX . . . .")(available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf).

## III.  LAW AND ARGUMENT

### A.  Standard

To satisfy the liberal pleading requirements of the Federal Rules of Civil Procedure and survive a Rule 12(b)(6) motion, a plaintiff must provide only "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).  A court *must* construe the complaint in a light most favorable to the plaintiff, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor.  *Logsdon v. Hains,* 492 F.3d 334, 340 (6th Cir. 2007).  A complaint must not be dismissed "*unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*" *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957) (emphasis added).  This Court recently affirmed the 12(b)(6) standard in the Title IX context.  *See Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 748-49 (S.D. Ohio

2014) (a court must "construe all well-pleaded facts liberally in favor of the party opposing the motion" and "assume their veracity").

The Second Circuit Court of Appeals, upon whom courts in this district have consistently relied in construing Title IX claims, has made clear the pleading standard for Title IX claims is not heightened for male plaintiffs seeking relief under Title IX.  In *Doe v. Columbia Univ.*, 831 F.3d 46 (2nd Cir., 2016), the Second Circuit explained that even though the *McDonnell Douglas* burden-shifting framework applies in Title IX cases, it ***does not apply in the context of Civ. R. 12(b) motions to dismiss***.  Rather, Columbia held:

> [A] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a ***minimal plausible inference*** of such discrimination."

*Id.* at 56 (emphasis added); *see also Brown Univ.*, 166 F.Supp.3d at 188 (denying a motion to dismiss and noting that "*Iqbal* and *Twombly* did not convert the standard for surviving a motion to dismiss into a quasi-summary judgment standard[.]"); *Doe v. Regents of Univ. of California*, 2:15-cv-02478-SVW-JEM (June 8, 2017, C. Dist. CA) (reversing earlier grant of a motion to dismiss, based on *Columbia*, and noting that "it is entirely possible that the Plaintiff's claims are simply untrue . . .  After the evidence is collected and presented, the Plaintiff's allegations of an erroneous outcome may no longer be plausible.  However, such considerations are inappropriate for this Court at the motion to dismiss phase[.]") (attached as Exhibit A); *Doe v. Ohio State Univ.,* No.: 2:16-cv-171, 2017 U.S. Dist. LEXIS 34725 (S.D. Ohio, Mar. 10, 2017) at *21, quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511 (2002) ("The Supreme Court 'has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss .

11

. . the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases[.]"); *Neal v. Col. St. Univ.*, No. 16-cv-873, 2017 WL 633045 (D. Col., Feb. 16, 2017) (citing *Columbia* as basis for rejecting university's motion to dismiss a Title IX claim); *Doe v. Lynn Univ., Inc.*, No. 9:16–cv–80850, 2017 WL 237631 (S.D. Fla. Jan. 19, 2017) (same). Applying this standard to the case at bar, it is clear UC's motions must be denied.

**B. UC's Motion to Dismiss Gischel's Title IX Claims Should Be Denied Because Those Claims Are Based on Specific Allegations of Gender Bias that Must Be Construed in Gischel's Favor.**

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Sixth Court, without expressly deciding the issue but looking to the Second Circuit Court of Appeals' decision in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) for guidance, has recognized the existence of two types of Title IX claims male students can advance when erroneously disciplined for false allegations of sexual misconduct: (1) erroneous outcomes; and (2) selective enforcement. *See Mallory v. Ohio Univ.*, 76 Fed.Appx. 634, 638–39 (6th Cir. 2003). Gischel successfully pled both types of claims here.

Contrary to UC's allegations throughout the brief, Gischel does not allege that UC acted in a gender-biased manner simply because of directives and pressure from OCR. UC attempts to ignore the evidence of gender bias and essentially asks the Court to turn the motion to dismiss standard on its head and construe the evidence in the light most favorable to Defendants.

Defendants do so in an attempt to ignore the astonishing facts in this case and rely on recent cases finding that favoring victims does not equal gender discrimination.[4]

Here, Gischel presented evidence of gender bias—specifically he was expelled based on an investigation conducted by a university employee who was both biased against males accused of sexual misconduct and pursuing a romantic relationship with the an aggressive and assertive Schoewe who invited widespread media attention and caused a DOE investigation into what she asserted was UC's mishandling of her sexual assault allegations. Specifically, Schoewe was upset because UC did not remove Gischel from campus the minute she filed her allegations. *See* FAC, PageID#763 at ⸿ 111 and Case No. 1:17-cv-00504, Doc. No. , PageID # 44.

Nevertheless, UC's position is: male students accused of sexual assault cannot be victims of gender discrimination because any disparate treatment is due to victim advocacy; even if male students were discriminated against, the court should not interfere with university proceedings; but, if the court does intervene, UC cannot be liable because it was simply complying with DOE directives. However, this Court should reject UC's arguments because it need not defer to university decisions tainted by unlawful discrimination or advice of others. *See e.g., Doe v. Univ. of Cinn.,* No.16-4693, 2017 WL 4228791, ** 1, 5 (6th Cir. Sept. 25, 2017) (affirming preliminary injunction on due process grounds in part because "[d]isciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others . . . "[t]he risk of error is not at all trivial, and it should be guarded against . . . without prohibitive cost or interference with the educational process" and allegations that university decisions are "totally accurate . . . never mistaken

---

[4] Gischel respectfully disagrees with these decisions and asserts that the complaints in those cases adequately pled gender discrimination and should not have been dismissed. Notably, two of these cases are on appeal to the United States Court of Appeals for the Sixth Circuit with oral arguments to take place in November and December 2017. *See, e.g., Doe v. Miami Univ., et al.,* Case No. 17-3396, and *Doe v. Denison Univ., et al.*, Case No. 17-3401. Each of the cases are fully briefed.

and never unfair . . . is *not* the case, and no one suggests that it is.")(internal citations omitted); *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (holding that following DOE directives alone is not evidence of gender discrimination, but may be considered along with other evidence of gender discrimination); *Kunda v. Muhlenberg College*, 621 F.2d 532, 545 (3rd Cir. 1980) ("academic institutions . . . are not ipso facto entitled to special treatment under federal laws prohibiting discrimination); *Elghanmi v. Franklin College of Indiana, Inc*., 2000 U.S. Dist. Lexis 16667, *23 (S.D. Ind., Oct. 2, 2000)("Congress did not intend that institutions of higher learning enjoy immunity from the Nation's anti-discrimination statutes.")(citing *Davis v. Weidner*, 596 F.2d 726, 731 (7th Cir. 1979)); *Schneider v. Northwestern*, 925 F. Supp. 1347, 1368 (N.D. Ill. 1996)("courts will not subject institutions to a more deferential standard of review or a lesser obligation to repair the adverse effects of discrimination")(quoting William A. Kaplin and Barbara A. Lee, The Law of Higher Education § 3.3.2.1 at 214-15 (Jossey-Bass, 3d ed. 1995). Accordingly, this Court should carefully analyze the unique facts of Gischel's claims and the unlawful treatment he received at the hands of UC and Detective Richey.

**1. Gischel has sufficiently pled an erroneous outcome claim based on allegations of gender bias that cast doubt on the accuracy of the disciplinary hearing and has established a particularized causal connection between the flawed outcome and UC's gender bias.**

The Sixth Circuit Court of Appeals has held that, to state an erroneous outcome claim, a plaintiff must plead: (1) "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) a "particularized ... causal connection between the flawed outcome and gender bias." *Cummins*, 662 F. App'x at 452 (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)). Gischel's erroneous outcome claim should not be dismissed because Gischel satisfies both elements in his FAC.

First, Gischel alleged numerous facts that cast doubt on the accuracy of the outcome of his disciplinary hearing.  For example, Gischel alleges that: (1) the investigation was gender-biased because of Richey's anti-male bias and romantic pursuit of Schoewe; (2) Richey denied Gishel a fair and impartial adjudication by destroying evidence from his cell phone that contained exculpatory information; (3) Gischel was effectively denied the right to cross examine Schoewe because his questions inquiring about her relationship with Richey and about her level of intoxication were not asked; (3) Schoewe verbally consented to the sexual encounter; (4) Schoewe did not exhibit signs of incapacitation; (5) UC failed to consider or remedy the impact of Richey's inappropriate relationship with Schoewe by either providing information about the relationship to the hearing panel or reconsidering the discipline after demoting Richey; (6) Defendants violated Gischel's rights under UC policies because of anti-male pressure caused by media scrutiny and a DOE investigation launched at the same time it was adjudicating Gischel's case; and (7) Smith failed to appropriate review the evidence in response to Gischel's appeal.  These allegations, and the many others set forth in the FAC, raise serious questions about the integrity and accuracy of UC's disciplinary process and its outcome.  *See* FAC, Doc. 10 & Exhibits thereto; *see also* Section II, *supra*.

Notably, UC attempts to distance itself from Richey's romantic relationship with Schoewe and his obstruction of justice in Gichel's criminal case. UC virtually ignores it in their MTD. However, Richey cannot be a neutral investigator while flirting with and seeking a romantic relationship with the complaining party. UC asserts that Gischel's texts to his friends negate Richey's wrongdoing and establish that Schoewe was incapacitated. This argument ignores the other well-pled allegations in the FAC that Schoewe was not incapacitated, was capable of

consenting, and did in fact consent—both verbally and non-verbally—to the sexual intercourse, which she later regretted. *See* FAC, PageID#759, 762 at ¶¶ 96, 107.

UC also asserts that Gischel's erroneous outcome claim should be dismissed because Gischel failed to establish the second element – that there is a "causal connection between the flawed outcome and gender bias." See MTD at PageID#1409-14. But UC misconstrues the alleged facts, misapplies the relevant law, and invites this Court to run afoul of bedrock precedent requiring it to accept all factual allegations as true and draw all reasonable inferences in Gischel's favor. As set forth in *Cummins*, causation sufficient to state a Title IX discrimination claim can be shown via "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Cummins,* 662 F. App'x at 452.

In this case there is no need to inquire into statements and patterns of decision-making showing the influence of gender because there is direct evidence of gender discrimination. Namely, in this case, we know that Richey was biased in favor of Schoewe in conducting the investigation and that his bias for Schoewe and against Gischel was on the basis of sex.

Gischel recognizes that Richey was not the final decisionmaker. However, his investigation formed the basis for the decision, was the primary evidence relied upon by the hearing panel, was intended to cause the hearing panel to find Gischel responsible for sexual misconduct under UC's policies, and he achieved that goal. Thus, his bias can be attributed to UC and the hearing panel based on a cat's paw theory of liability. The cat's paw theory of liability developed in the Title VII context. *See e.g., Waters v. Drake*, 105 F. Supp. 3d 780, 804, (S.D. Ohio, Apr. 24, 2015)(addressing cat's paw theory in Title IX case). Basically, if a supervisory employee is motivated by discrimination bias intended to cause an adverse employment action and the final

decisionmaker relies on the supervisor's biased report, then the employer is vicariously liable for discrimination. *See Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 350 (6th Cir. 2012). *See also, Doe v. Case Western Reserve Univ.,* No.1:17CV414, 2017 WL 3840418, *7 (S.D.OH. Sept. 1, 2017) (rejecting motion to dismiss Title IX claim in part because Plaintiff alleged anti-male bias on the part of the university's non-decisionmaker Deputy Title IX coordinator "exercised enormous influence over the record and evidence presented to the decision maker."); *Doe v. Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672, *10 (Aug. 18, 2017) (granting preliminary injunction in due process claim because investigator improperly: (a) redacted information from her investigative report that "if considered by the ultimate factfinder—the Title IX decision panel, may have altered their ultimate credibility determinations," and (b) created "a funneling effect whereby information deemed irrelevant by the Investigator, an allegedly neutral party, is thereafter disallowed from submission to the Title IX decision panel—the ultimate . . . arbiter of both relevance and the accused's fate.").This theory applies with equal force here.

Nonetheless, even without this direct evidence, the FAC contains evidence sufficient to meet the requirements of *Cummins*. In Section II of the FAC, Gischel specifically alleges that UC has a pattern of decision-making showing the influence of gender and that Richey and Shaffer have made statements demonstrating the same. *See* FAC at ¶¶, PageID#729-58, 12-94. Gischel alleged this gender bias tainted UC's investigation and led it to engage in a flawed and superficial adjudication which was neither independent nor impartial, and which resulted in a flawed outcome. *Id*.

In addition, Gischel alleges UC's gender bias arose, in part, from the backlash against it for its elimination of a program for sexual assault victims. See FAC, PageID#747-49 at ¶¶ 60-65. Moreover, Gischel also alleges that:

17

23. Upon information and belief, UC feared that if UC did not show preferential treatment to females such as Schoewe who allege sexual misconduct by males, UC would lose its federal funding. Evidence supporting this belief includes, but is not limited to, an OCR complaint Schoewe filed against UC alleging UC "fail[ed] to promptly and equitably respond to complaints, reports and/or incidents of sexual violence of which it had notice." *See, Exhibit 4* (containing OCR Notification to University of Cincinnati of Investigation) and *Exhibit 5* (containing the Cincinnati Enquirer article entitled *"In the Dark: Meet the Sexual Assault Survivor Who Ignited a Federal Investigation of UC"*)

24. OCR's investigation of Schoewe's complaint against UC occurred simultaneously with UC's disciplinary proceedings against Gischel. *See Exhibit 46* (containing Schoewe's Complaint against UC filed with OCR, received pursuant to FOIA Request). Evidence supporting this belief includes, but is not limited to, the newspaper article Cincinnati Enquirer article entitled *"In The Dark: Meet The Sexual Assault Survivor Who Ignited A Federal Investigation Of UC" Id,* OCR documentation contained in *Exhibit 4* which describes OCR's investigation of UC and *Exhibit 6,* p.85 (containing the OUJA file) which reflects Cummins' notation OUJA file that Schoewe's accusation against Gischel was part of OCR's investigation of UC.

*See* FAC. In multiple paragraphs, Gischel details specific facts outlining internal and external pressure on UC, from the media, groups at UC, and the DOE, including the risk of losing a large amount of federal funds. *See id.,* Page ID#733-70 at ¶¶ 24-31, 38, 60, 66, 94, 116, 133. Therefore, UC's claim that the allegations of pressure asserted upon UC are "vague," "unsubstantiated" and "conclusory" (MTD at PageID# 1413, 1420) is thus flatly wrong.

Taken together, Gischel's allegations of internal and external pressure fully support Gischel's claim that UC's gender bias caused the erroneous result reached by UC. Courts across the country have refused to dismiss erroneous outcome claims premised on allegations of pressure such as these. *See e.g., Neal v. Col. St. Univ.,* No. 16-cv-873-(RM)(CBS), 2017 WL 633045 (D. Col. Feb. 16, 2017)(rejecting motion to dismiss Title IX claim because male plaintiff alleged his erroneous outcome occurred in part because defendant university "bow[ed] to DOE/OCR pressure to discipline males); *Doe v. Washington & Lee Univ.,* No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS

102426, *29 (W.D. Va., Aug. 5, 2015)(refusing to dismiss a Title IX claim in part because male plaintiff alleged defendant university was "under pressure from the government to convict male students of sexual assault, [therefore] a reasonable fact finder could plausibly determine that Plaintiff was wrongly found responsible for sexual misconduct and that this erroneous finding was motivated by gender bias."); *Collick v. William Paterson Univ.*, No. 16–471(KM)(JBC), 2016 WL 6824374, *12 (D.N.J. Nov. 17, 2016), *appeal pending* (refusing to dismiss a Title IX claim in part because male plaintiff alleged DOE pressure may have caused defendant university to "believe it was in the spotlight" and therefore erroneously disciplined plaintiff to show it would sanction males accused of sexual misconduct); *Doe v. Salisbury Univ.,* 123 F. Supp. 3d 748, 768 (D. Md. 2015)(rejecting motion to dismiss Title IX claim in part because male plaintiffs alleged defendant university possessed communications evidencing its erroneous discipline of plaintiffs was causally linked to university's desire to demonstrate to OCR that the university would aggressively discipline male students); *Doe v. Lynn Univ., Inc.*, No. 9:16–cv–80850, 2017 WL 237631, *4 (S.D. Fla. Jan. 19, 2017) (refusing to dismiss a Title IX claim where male plaintiff alleged his erroneous discipline occurred in part because of pressure related to: (a) DOE directives interpreted by defendant university as mandating discipline of male students accused of sexually assaulting female students; (b) criticism of defendant university's handling of female students' sexual assault complaints against males; and (c) university's awareness of said criticism); *Doe v. Regents of Univ. of California*, 2:15-cv-02478-SVW-JEM (June 8, 2017, C. Dist. CA)(unreported and contained in Doc.38-5)(rejecting motion to dismiss Title IX claim because male plaintiff alleged defendant university faced "growing local and national pressure" to discipline male students generated in part by female students' OCR complaints alleging the university "failed to adequately handle their complaints of sexual assault.").

Despite claiming that it accepts all of Gischel's well-pled allegations as true, UC spends much of its motion arguing the veracity of the allegations, providing alternative interpretations to the facts, or outright misrepresenting the allegations in the FAC. For example, instead of accepting as true Gischel's allegations that UC acted in a biased manner against him because of Schoewe's DOE complaint, UC attempts to provide an alternate interpretation, claiming that the timing of the OCR Complaint in relation to when the investigation began eliminates any bias argument. MTD at PageID # 1413. This, however, asks the Court to disregard Gischel's allegations that the investigation was rushed forward (when it had otherwise languished) as soon as Schoewe filed the OCR complaint and that he was found responsible, in part, to seek a favorable resolution of the OCR complaint. *See* FAC at ¶¶ 23-26, 92-93.

UC's argument in this regard also draws an improper inference in favor of UC. At the Rule 12(b)(6) stage, Title IX lawsuits may not be dismissed because there may be a benign, gender-neutral motivation for a university's actions. *See, e.g., Columbia*, 831 F.3d at 58 ("*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be the most plausible explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible."); *see also Doe v. Brown Univ.,* 166 F.Supp.3d 177, 188 (D.R.I., 2016) (construing a Title IX defendant's conduct as gender-neutral "improperly draws an inference in favor of the defendant instead of the plaintiff" and "whether [a defendant's] actions were driven by a desire to crack down on students accused of sexual assault of any gender, or on men specifically, simply may not be a question that can be resolved at the motion to dismiss"). As explained by the court in a recent case involving Case Western Reserve University:

> It is not Plaintiff's responsibility at this time to demonstrate facts that prove that the outcome of the disciplinary procedure was erroneous as a result of gender bias. Rather, to survive a motion to dismiss, Plaintiff need plead only enough facts to

> show that his allegation that the flawed outcome of his disciplinary proceeding was motivated by gender bias is 'plausible.'

*Doe v. Case Western Reserve Univ.* No., 2017 WL 3840418, *9 (denying motion to dismiss where plaintiff alleged that Title IX coordinator, who was the person to investigate the complaint, prepare the evidentiary report, and testify at his hearing was biased against men).

The totality of the allegations set forth in Gischel's FAC fully supports his Title IX erroneous outcome claim. As in the Title VII context, it is the totality of the circumstances alleged by a Title IX plaintiff that are dispositive. In two recent Title IX cases with facts similar to those alleged here, the courts denied motions to dismiss by the universities because the totality of the allegations were sufficient to plead a claim. *See, Doe v. Case Western Reserve Univ.*, 2017 WL 3840418, *6-7 (S.D.OH. Sept. 1, 2017) (finding the totality of the following gender bias allegations warranted rejection of motion to dismiss Title IX complaint); *Doe v. The Trustees of The Univ. of Penn.,* No.16-5088, 2017 WL 4049033, *14-16 (Sept. 13, 2017) (finding when "taken together" the gender bias evidence sufficient to reject a motion to dismiss Title IX erroneous result and breach of contract claim. S*ee also, Williams v. General Motors*, 187 F.3d 553 (6th Cir. 1998) ("This totality-of-circumstances examination should be viewed as the most basic tenet of the [Title VII] cause of action. Hence, courts must be mindful of the need to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility."); *Neal*, 2017 WL 633045 at *15 ("Taking all of [p]laintiff's allegations together—gender-skewed implementation of the 2011 DCL, pressure to avoid DOE investigation and loss of federal funding, procedural shortcomings against Plaintiff's ability to present evidence and question witnesses, and Wilson's gender-biased statements—these facts are similar to those in cases that find plausible gender bias allegations"). Because the totality of facts alleged by Gischel, properly construed, amounts to a claim for Title IX erroneous outcome, UC's Motion to Dismiss should be denied.

### 2. UC's motion to dismiss Gischel's hostile environment sexual harassment and/or discrimination claim should be denied because Gischel has sufficiently pled all elements of that claim.

Gischel has pled sufficient facts to state a claim for hostile environment sexual harassment based on existing law. In *Klemencic v. Ohio State University*, 263 F.3d 504 (6th Cir. 2001), the Sixth Circuit identified three elements for such a claim: (1) a "sexually hostile environment"; (2) the university's "actual notice" of this environment and "authority to take corrective action to end discrimination"; and (3) the university's response to the hostile environment "amounted to deliberate indifference."  The Fourth Circuit Court of Appeals reached a similar conclusion in identifying four elements of a Title IX hostile environment claim as: (1) plaintiff was a student at an educational institution receiving federal funds, (2) he/she was subjected to harassment based on his/her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.  *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007), *en banc*.

Here, Gischel has alleged a hostile environment exists at UC which unfairly stereotypes males as sexual aggressors and females as victims.  Evidence cited by Gischel in support of this allegation includes, but is not limited to: UC's training of individuals involved in sexual misconduct cases to believe that males are dishonest sexual predators expecting sex from women, (*See* FAC, Page ID#750 at ⁋ 69); UC's allowance of a biased investigation to serve as the basis for expelling Gischel (*id.*, PageID# 734-70 at ⁋⁋ 27, 69, 122, 125, 129); UC's involvement with organizations promoting preferential treatment of females over males in sexual assault proceedings (*id.*, PageID#751-53 at ⁋⁋ 72-78); UC's belief that the female complainant is always telling the truth leading to a presumption of guilt for a male student accused of sexual assault (*id.*, PageID# 744-57 at ⁋⁋ 51-52, 80, 87-88); UC's promulgation of the false statistic that one in five UC women

are subject to sexual assault (*id.*, PageID#741 at ¶ 43); and UC's showing of the film, "The Hunting Ground," which has been roundly criticized as being a "highly misleading if not dishonest" portrayal of sexual assaults of female students by their male counterparts (*id.*, PageID#745 at ¶ 53) and fear of negative publicity and lawsuits (*id.*, PageID#733-68 at ¶¶ 22-23, 27, 60, 66, 93, 111, 125). Gischel further alleged that these archaic assumptions about men and women lead UC to show preferential treatment to females, and cause innocent males on UC's campus, like Gischel, to be harassed by way of biased and unjust disciplinary hearing and then unlawfully disciplined on the basis of false allegations of misconduct. *See id.*, PageID#749, 757 at ¶¶ 66, 89. Gischel alleged that he gave UC actual notice of this environment—most notably, in his detailed written appeal of the disciplinary board's flawed findings and the many examples of flawed procedures he identified therein—and despite irrefutably having the authority to take corrective action to end the discrimination against Gischel, UC did nothing. *See id.*, PageID#769 at ¶ 129.

These facts undoubtedly support a claim for hostile environment sexual harassment, as they are similar to facts that sufficiently withstood motions to dismiss in the cases of *Rouse v. Duke Univ.*, 869 F. Supp. 2d 674 (M.D.N.C., Apr. 5, 2012), and *Doe v. University of Ky.*, No.5:150cv-296-JMH (E.D. Ky. Aug. 31, 2016). Both of those cases involved female plaintiffs attempting to make claims for sexual harassment, but there can be no doubt that the same standards apply to a male plaintiff. For these reasons, UC's argument for dismissal fails.

### 3. UC's motion to dismiss Gischel's deliberate indifference claim should be denied because the Sixth Circuit has acknowledged the validity of such a claim.

Citing to an opinion from the District Court for the Eastern District of Michigan, UC claims that a Title IX "deliberate indifference" claim fails because it does not apply to cases "where the

student alleges 'discriminatory application of a facially gender-neutral policy by school officials.'" *See* UC MTD at PAGEID#1405, citing *Doe v. Baum*, No. 16-13174, 2017 WL 57241, at * 26 (E.D. Mich. Jan. 5, 2017). However, no court in this District has reached such a holding. Rather, the Sixth Circuit in *Mallory v. Ohio Univ.* (76 Fed.Appx. 634, 639 (6th Cir. 2003) assumed that such a claim was valid. In *Mallory*, the court described the three elements of a Title IX deliberate indifference claim as requiring that a plaintiff establish: (1) "an official of the institution had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct;" (2) the university's conduct caused the student "to undergo harassment or make [him/her] liable or vulnerable to it;" and (3) the university's "response to the harassment . . . is clearly unreasonable in light of the known circumstances." *Id.* at 638.

In this case, Gischel pled sufficient facts to establish all three elements of his deliberate indifference claim. Gischel alleges that that he provided actual, written notice of the misconduct—the bias against him which manifested in a flawed disciplinary proceeding—in his appeal to Smith, who had authority to take corrective action to remedy the misconduct. *See* FAC, PageID #769 at ¶ 127-28. Despite having actual notice, neither Smith nor any other UC official took corrective action, thus they were deliberately indifferent to the misconduct of Richey and Shaffer and allowed a biased investigation, where information was withheld and/or manipulated, to serve as the basis for expelling Gischel. The misconduct caused Gischel to be found responsible for sexual misconduct, which ultimately led to severe emotional distress. *See id.*, PageID # 734, 789, at ¶¶ 26, 224, 232.

In light of the known circumstances, UC's conduct in this case was clearly unreasonable. Based on the allegations set forth in the FAC, which must be accepted as true and construed in Gischel's favor, UC's Motion to Dismiss this count should be denied.

24

**4. UC's motion to dismiss should be denied because Gischel has sufficiently pled a Title IX selective enforcement claim based on allegations that UC treats similarly situated females more favorably.**

As articulated in *Marshall v. Ohio Univ.*, with regard to a Title IX selective enforcement claim a plaintiff:

> essentially asserts that even if he or she did violate a university policy, the decision to initiate disciplinary proceedings or the severity of the penalty imposed was motivated by gender bias. To state such a claim, [a plaintiff] must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably by [defendant university]." Moreover, [a plaintiff] must allege facts that would demonstrate that the difference in treatment was because of his gender.

*Marshall*, 2015 U.S. Dist. LEXIS 155291, *17-18 (citations omitted). Here, Gischel has pled plausible facts establishing that UC's gender bias triggered flawed and unjust disciplinary proceedings that caused UC to impose severe sanctions against Gischel even though the allegations against him were patently false. *See* FAC, PageID#729-77 at ¶¶ 12-157. UC's failure to take any action about Schoewe's grabbing Gischel's penis without his permission is evidence of selective enforcement under Title IX. Gischel was intoxicated when Schoewe grabbed his penis without her permission, yet neither UC nor any UC official with knowledge of the allegations took any action against Schoewe. *Id.*, PageID #'s 754-781, ¶¶ 81, 83, 88, 112, 157, 178. Because Gischel has yet to engage in discovery, he was forced to rely largely on information and belief allegations to outline other examples of UC's preferential treatment of females who engage in sexual misconduct. Gischel alleges:

- Upon information and belief, UC possesses additional documentation evidencing UC's unlawful patter of gender biased decision making which favors female students over male students like Gischel who are false accused of sexual assault. Evidence supporting this allegation includes, but is not limited to, UC's failure to respond to Gischel's public records request." (FAC, ¶ 181, PageID #***);

- "Moreover, based on the information detailed in this Complaint, and upon information and belief, UC's unlawful discipline of Gischel occurred, in part, because of UC's archaic

assumptions that female students do not sexually assault fellow male students because females are less sexually promiscuous than males." (*Id*. at ¶58, PageID #***);

- "Upon information and belief, the violations of UC Policies and Gischel's due process and Title IX rights occurred because State Defendants embraced gender bias in UC's training materials given to individuals investigating and adjudicating sexual assault allegations. Evidence supporting this belief includes, but is not limited to the 2015 ARC Training Outline-JDA, attached as *Exhibit 30*. Gender bias in this training material include, but are not limited to statements such as:

  o "Some *men* believe that spending money on a women means that she owes them sex at the end of the evening;"
  o "Some *men* believe that women play hard to get, by saying "no" when they really mean "yes" and enjoy being aggressively pursues;"
  o "Some *men* perceive that sex is their right;"
  o Falsely alleging large percentages of male students are sexually assaulting their female peers by claiming: (i) "It is estimated that for a school the size of the University of Cincinnati, about 1,225 rapes or attempted rapes occur each year" even though (ii) the training materials admit that in 2014 only "48 rapes reported to the SARC; of those, 2 reported to UCPD;"
  o "A *woman has a 4x greater chance of being raped* by someone she knows than by a stranger;" and
  o "*83% of perpetrators are* acquaintances (friends of the family, dates, *boyfriends*, relatives, authority figures);" *Id.*, p. 29 (emphasis added)."

  (*See* FAC, PageID #750 at ¶69)

- "State Defendants' have created a hostile environment based on gender which in turn creates an adverse educational setting in violation of Title IX in part because UC engages in sex stereotyping discrimination based on unlawful notions of masculinity and femininity. This hostile environment causes innocent males on UC's campus to be unlawfully disciplined and interferes with males' ability to participate in or benefit from various activities including learning on campus." (*Id*. at ¶ 70); and

- "Upon information and belief, in virtually all cases of campus sexual misconduct by UC, the accused student is male and the accusing student is female." (*Id*. at ¶ 170, PageID #780).

These types of allegations of preferential treatment have often been found sufficient to withstand motions to dismiss. *See, e.g., Waters*, 105 F. Supp. 3d 780, 804 (rejecting motion to dismiss Title IX claims where complaint alleged the university treated "similarly-situated female employees [] more leniently" when they "condon[ed]" sexual misconduct); *Yap v. Northwestern University*, 119

F.Supp.3d 841, 845 (N.D. Ill 2015) (refusing to dismiss Title IX claim because Northwestern "did not promptly respond to [plaintiff's] sexual harassment claim . . . while Northwestern promptly investigates similar complaints by female students); *Salisbury Univ.*, 123 F. Supp. 3d at 768 (rejecting motion to dismiss Title IX claim based on allegations that the university had communications evidencing that it favored female complainants against male respondents).

Moreover, Gischel's claim for Title IX selective enforcement is not, as UC suggests, improper because of Gischel's reliance on allegations based upon information and belief. *See* MTD at PageID #1398, 1420. Rather, Gischel based his selective enforcement claim on information and belief allegations that female UC students engaging in sexual misconduct are treated more favorably at UC. *See* FAC, ¶ 181, PageID #782. Numerous court decisions have rejected universities' motions to dismiss Title IX claims based on similar "information and belief" allegations. *See e.g., Doe v. Case Western Reserve Univ.,* 2017 WL 3840418, *6-7 (rejecting motion to dismiss based in part (a) "information and belief" allegations that "there are no reported incidents of male complaints against female students for sexual assault and/or no reports of female accused students being disciplined for sexual misconduct by males;" (b) "information and belief" allegations that university employees "are knowledgeable of the fact that complaints of sexual misconduct are disproportionately lodged by females against males;" (c) "information and belief" allegations that university "recognized the increased pressure, both internally, and from the United States government to aggressively discipline male students accused of sexual misconduct, under threat of rescission of federal funds;"); *Doe v. The Trustees of The Univ. of Penn.,* No.16-5088, 2017 WL 4049033, *16-17 (Sept. 13, 2017) (rejecting motion to dismiss Title IX selective enforcement claim that did not specifically identify a similarly situated female" because "we will permit Plaintiff to conduct discovery to ascertain whether, in fact, there are facts to support his

allegations, based on information and belief, that similarly situated females are treated more favorably than he was."); *Brown Univ.*, 2016 U.S. Dist. LEXIS 21027 at *28-29 (finding allegations "pled 'upon information and belief' . . . [are not] improper under Twombly and Iqbal . . . [and are] a permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis."); *Salisbury Univ.*, 123 F. Supp. 3d at 748 (finding alleging gender-bias "based solely 'upon information and belief,' [] is a permissible . . . even after the *Twombly* and *Iqbal* decisions . . . .") *Ritter v. Okla. City Univ.*, No. Civ–16–0438–HE, 2016 WL 3982554, *2 (W.D. Okla. July 22, 2016) (granted a temporary restraining order in part because plaintiff established Title IX claim based on "information and belief" allegations); *Prasad v. Cornell Univ.,* No.5:15-cv-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) (rejecting a motion to dismiss a Title IX claim filed by a male student which was based in part on "information and belief" allegations); *Cassidy v. Teaching Co., LLC*, No.2:13-cv-884, 2014 U.S. Dist. LEXIS 55022, *8 (S.D. Ohio, Sept. 4, 2014) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.")).

Additionally, given UC's denial of most of Gischel's public records request, Gischel cannot plead more detailed information about how UC treats similarly situated female students differently than male students. UC cannot on the one hand deny Gischel this information and on the other hand ask for dismissal because Gischel cannot produce the information.  *Marshall v. Indiana Univ.*, 170 F. Supp.3d 1201, 1210 (S. D. Ind. 2016) (denying IU's motion to dismiss because it denied the plaintiff access to facts). In this case, Gischel has adequately pled a claim for

28

which relief can be granted in order to survive a motion to dismiss. *See, e.g.,* Bethany A. Corbin, *Riding The Wave Or Drowning?: An Analysis Of Gender Bias And* Twombly/Iqbal *In Title IX Accused Student Lawsuits*, Fordham L. Rev., May 2017, p.18 (noting that such a requirement "imposes an impossible burden on plaintiffs to identify evidence without discovery").

For all of these reasons, UC's motion to dismiss Gischel's selective enforcement claim should be denied.

**C. Gischel's § 1983 Claims Should Not Be Dismissed because Gischel Properly Alleged Facts Establishing the Individual Defendants' Gender-Biased Conduct Resulted in a Violation of His Procedural and Substantive Due Process and Equal Protection Rights.**

Gischel asserted claims under 42 U.S.C. § 1983 for Individual Defendants' violations of procedural and substantive due process and a violation of equal protection under the Fourteenth Amendment based on their gender-biased conduct. Those claims were supported with properly pled allegations of gender bias. The Court should not dismiss these claims.

**1. Gischel stated a claim for equal protection based on the Individual Defendants' unequal treatment of male students.**

The gender bias detailed in Gischel's Amended Complaint also establishes his claim that Individual Defendants violated his equal protection rights. To establish an equal protection violation, a plaintiff must show that a defendant has "burdened a fundamental right, which he was exercising, targeted a suspect class, of which he is a part, *or* treated him any differently than others similarly situated without any rational basis." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (emphasis added). In the FAC, Gischel alleged that UC treated him differently than Schoewe, who had sexually assaulted him by grabbing his penis, as well as other female students accused of sexual assault. *See* FAC at ¶¶ 81, 83, 88, 112, 157, 178, 186

29

### 2. Gischel stated a claim for violation of substantive due process based on the Individual Defendants' violation of Gischel's equal protection rights.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Gischel alleged the Individual Defendants' gender bias violated Gischel's protected property interest in his education and right to pursue an education and future educational opportunities and occupational liberty. *See* FAC at ¶ 200, PageID #785. He also alleged the Individual Defendants caused an arbitrary abuse of executive power so egregious it shocks the conscience. *See id.* at ¶ 207, PageID #786. As support for his assertion that the Individual Defendants gender bias shocked the conscience, Gischel cited to Richey's biased investigation because of his romantic relationship with Schoewe, the destruction of and failure to consider exculpatory evidence, and other Individual Defendants' failure to address or remedy these violations. *See id.* at ¶¶ 204-07, PageID #786.

The Sixth Circuit's decisions in *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 (6th Cir. 2003) and *Rogers v. Tennessee Bd. of Regents*, 273 F.App'x 458, 463 (6th Cir. 2008), both acknowledge a substantive due process violation can occur if a university violates a student's equal protection rights. *See Bell*, 351 F.3d 250-251; *Rogers*, 273 F.App'x at 463. As set forth above, Gischel has asserted an equal protection violation premised on the Individual Defendant's unequal treatment of male and female students, and Richey's gender-biased investigation. This equal protection violation thus provides an additional basis for Gischel's substantive due process claim. Therefore, the district court erred in dismissing this claim.

### 3. Gischel stated a claim for violation of procedural due process based on the gender-biased disciplinary proceedings.

"To establish a procedural due process claim, [Gischel] must show that (1) [he] had a life, liberty, or property interest protected by the Due Process Clause; (2) [he] was deprived of this

30

protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). The Sixth Circuit has held that suspension resulting from a university's disciplinary decision "clearly implicates a property interest." *Cummins*, 662 Fed. Appx. at 445.

In *Cummins*, this Court provided the analytical framework for determining what process is due when a property interest is at stake. Relying on *Mathews v. Eldredge*, 424 U.S. 319, 332 (1976), the Court determined that the level of process required by the Fourteenth Amendment is determined by balancing three factors: "(1) the nature of the private interest affected by the deprivation; (2) the risk of an erroneous deprivation in the current procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the governmental interest involved, including the burden that additional procedures would entail." *Cummins*, 662 Fed. Appx. at *14. Importantly, although the inquiry is intended to be flexible, due process requires, at a minimum, "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at *15. In the school-disciplinary context, this means an accused student must at least receive the following: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker. *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 565-66 (6th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

With regard to the requirement that a student be afforded an opportunity to present his side of the story before an unbiased decisionmaker, the Sixth Circuit has been very clear: "[p]rocedural due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased." *Heyne*, 655 F.3d at 566, citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *see also Nasierowksi*

31

*Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 897 n.8 (6th Cir. 1991) ("[I]t is a hallmark of procedural due process that 'a biased decisionmaker is constitutionally unacceptable. . . '"). So, for example, in *Heyne*, this Court determined a plaintiff stated a claim for violation of procedural due process where the plaintiff alleged the principal was biased in disciplinary proceedings against the plaintiff. In support of his assertion of bias, the plaintiff alleged that the principal had, among other things, failed to discipline an African-American student for making a threat, even though the student code of conduct prohibited threats; and disciplined the plaintiff, who was white, to cover the school district from liability in the face of a threated lawsuit. *See id*. at 568.

Similar to the plaintiff in *Heyne*, Gischel detailed how gender bias caused a number of procedural deficiencies which form the basis for his procedural due process claim in Section 4 of the FAC. For example, Gischel alleged Individual Defendants found him responsible when a preponderance of the evidence did not support the finding. *See* FAC, PageID#771 at ¶ 138. Doe alleged UC did not provide him a prompt, reliable and impartial adjudication as required by UC's policies and by the DOE. *See id*., PageID#772 at ¶ 139. Gischel also detailed how Richey's interrogation of him violated federal law. *See id*. at ¶ 140. Gischel alleged Individual Defendants withheld providing him notice of the Title IX complaint to deny him right to which he is entitled under UC's policies. *See id.*, Page ID#773-74 at ¶ 141-44. A "[u]niversity's failure to follow its own procedural guidelines" can violate due process if the violations "affect the fundamental fairness of [a] hearing." *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972). Here, Gischel alleged in detail how UC's violations of its own policies impacted the fundamental fairness of Gischel's hearing. *See* FAC, PageID#771-79 at ¶¶ 135-57. For this reason as well his claim should not have been dismissed.

But, perhaps most importantly, a substantial portion of the FAC is devoted to identifying how Individual Defendants' gender bias deprived Gischel of the opportunity to present his side of the story before an unbiased decisionmaker, as required by *Heyne*. In particular, Gischel specifically alleged Detective Richey prepared the investigatory report upon which the hearing panel relied, and we know he did not include all relevant information. Reliance on this investigatory report, combined with the gender-biased training of the hearing panel members, is sufficient evidence to state a claim for violation of due process. *See* FAC at ⁋750, 69, 72-78, PageID #750-. *See e.g., Supra,* p.17 (discussing how *Penn. St. Univ.* and *Case Western Reserve Univ.* rejected motions to dismiss claims similar to those raised by Gischel in part because plaintiffs alleged biased investigations contributed to plaintiffs' erroneous discipline).

Because of Richey's romantic interest in Schoewe, there was simply no way for him to be an impartial decision maker. "[A] biased decisionmaker [is] constitutionally unacceptable, [and] 'our system of law has always endeavored to prevent even the probability of unfairness.' " *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). But "[i]n the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, 968 F.2d 1215 (6th Cir. 1992) (unpublished table decision) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)); *see also Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F.Supp.2d 621, 628 (W.D. Mich. 2001). Actual bias can be "personal animosity, illegal prejudice, or a personal or financial stake in the outcome." *Ikpeazu*, 775 F.2d at 254. *See Doe v. Ohio State University*, 219 F. Supp.3d 645, 658 (S.D. Ohio 2016) (refusing to dismiss a student's due process claim because the complaint pled facts that the training of hearing panel members in a manner intended to produce bias against men accused of sexual misconduct).

In addition, Gischel specifically alleged how the hearing panel (because of their training and the gender bias detailed herein) refused to ask crucial questions that Richey presented concerning the propriety of the investigation because of Richey and Schoewe's relationship and about whether Schoewe was incapacitated. *See, e.g., Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672, *7-8 (granting preliminary injunction in due process claim because hearing panel refused to ask accuser certain written questions presented by plaintiff when: (a) hearing panel's claim that questions related to impermissible "new evidence" was false since the questions addressed accuser's alleged "medical examination" which was raised previously in the proceeding, and (b) the "medical exam could unquestionably affect the credibility of [accuser] by (1) confirming its ultimate existence, and (2) corroborating or discrediting her allegations against" plaintiff). *Nokes v. Miami Univ.,* No. 1:17-cv-482, 2017 WL 3674910, *10 (S.D.OH. Aug. 25 2017)(granting preliminary injunction in due process claim in part because plaintiff's "disciplinary hearing turned on the credibility of the witnesses many of which were absent for cross-examination . . . [as a result the] Court cannot and will not guess at: (1) how those absent witnesses would have fared during questioning; and (2) how the panel would have weighed the absent witnesses' testimony.").

As was the case in *Heyne,* "[t]hese are the kinds of specific facts, indicating the present of pre-existing bias, that this Court has recognized could rise to a valid claim for infringement of the due process right to an impartial decisionmaker[.]"  *See id*. at 568.

In response, Defendants may argue Gischel's cross examination concerns lack merit because he cannot prove the answers to his questions would have changed the outcome of his disciplinary proceeding.  This Court rejected this argument when it was raised in opposition to preliminary injunction motion sought by a male plaintiff like Gischel who alleged he was falsely accused of sexual misconduct. *Nokes,* 2017 WL 3674910, *12, fn10 (rejecting argument that

preliminary injunction must be denied because plaintiff cannot establish his cross-examination of witnesses "would have changed the 'outcome'" of the disciplinary hearing). Therefore, this Court should reject any "changed outcome" argument advanced by Defendants and reject Defendants' motion to dismiss.

> **D. The Individual Defendants Are Not Entitled to Qualified Immunity as to the University's Title IX Proceeding because They Violated Clearly Established Statutory and/or Constitutional Rights of Which a Reasonable Person Would Have Known.**

Qualified immunity shields government officials performing discretionary functions from liability if they have violated an individual's constitutional right, but that right was not "clearly established" when the officials acted. *See Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007). To determine whether a government official is entitled to qualified immunity, courts apply a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)).

As set forth above, Gischel properly alleged gender bias triggered violations of Title IX and his due process and equal protection rights. There is no question that the due process right to an impartial decisionmaker is clearly established, as is the right to equal protection under the Fourteenth Amendment. *See, e.g., Heyne,* 655 F.3d at 568-569; *see also Rondigo v. Twp. of Richmond*, 641 F.3d 673 (6th Cir., 2011) ("It was clearly established that the Equal Protection Clause prohibited intentional gender discrimination . . . "). Accordingly, the Individual Defendants were not entitled to qualified immunity and its decision should be reversed.

**E. Gischel Adequately Pled His Claim of Malicious Prosecution under the Fourth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983.**

In arguing for dismissal of Gischel's malicious prosecution claim, Defendants ignore Sixth Circuit case law and the crucial fact that the indictment against Gischel was dismissed with prejudice due to Richey's withholding and destruction of relevant, presumable exculpatory evidence and corroboration with Schoewe to do the same. Under the applicable case law, these facts are sufficient to plead a claim for malicious prosecution under Section 1983.

The elements of a Section 1983 claim for malicious prosecution are: (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 309-10 (6th Cir. 2010).

Defendants' sole argument for dismissal of the malicious prosecution claim is that the indictment in and of itself establishes probable cause. However, this is not an accurate statement of law. An indictment creates a presumption that probable cause exists, but that presumption can be overcome. In fact, the Sixth Circuit has held that the presumption that probable cause existed because there was an indictment is overcome when a police officer fabricates or hides evidence. *See King v. Harwood*, 852 F.3d 568, 591 (6th Cir. 2017). Detective Richey's outrageous conduct of withholding and destroying evidence is the exact type of behavior from a trained police office that the Sixth Circuit finds sufficient to plead a malicious prosecution claim. *Id*. The other elements of the claim are likewise sufficiently pled—a criminal prosecution was initiated against Gischel, he suffered a deprivation of liberty and the criminal prosecution was resolved in his favor. (*See* FAC ¶ 86, 126, 225-23). Thus, Gischel's malicious prosecution claim survives.

36

**F. Defendant Richey Is Not Entitled to Qualified Immunity from the Section 1983 Malicious Prosecution Claim**

It is not clear in the motion to dismiss whether Richey is requesting qualified immunity against the malicious prosecution claim. Presumably, this is because the law is well-established that Richey is not entitled to qualified immunity because of his refusal to provide evidence to the criminal court, destruction of that evidence, and involvement with Schoewe's destruction and withholding of similar evidence. Applying the test articulated in Section D, *supra*, qualified immunity does not apply to a police officer who has withheld and destroyed evidence to obtain an indictment.

First, a constitutional violation is properly alleged. Namely, Gischel alleged Richey wrongfully investigated him and withheld and destroyed exculpatory evidence to manufacture probable cause in violation of the Fourth Amendment. Second, Richey "cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional and/or statutory rights." *See Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999). In *Spurlock*, the Sixth Circuit found that police officers, such as Richey, who withhold or destroy evidence to support probable cause, are not entitled to qualified immunity. *Id*. at 1004-07.

**G. UC's Motion to Dismiss Gischel's Declaratory Judgment Claim Should Be Denied Because That Claim Is Tied to Viable, Underlying Claims.**

Count 7 of Gischel's FAC requests a declaratory judgment that UC violated Gischel's rights under UC Policies, Title IX and/or OCR regulations. As detailed throughout the FAC, and as is expressly incorporated by reference in Count 7, UC did so by violating its policies, , acting negligently, and violating Gischel's rights under Title IX. As such, Gischel's request for declaratory relief is tied to the underlying claims contained in the FAC. As set forth above, those

claims are viable in all respects.  Gischel's claim for declaratory judgment should therefore not be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Gischel respectfully requests an order from this Court denying UC's motion to dismiss the claims asserted against it.

Respectfully Submitted,

*/s/ Eric Rosenberg*_____
Eric Rosenberg (0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
Phone: 740.644.1027
Fax 866.498.0811 fax
erosenberg@rosenbergball.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2017, a copy of the foregoing Memorandum Contra was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered parties.

*/s/ Eric J. Rosenberg*_____
Counsel for Plaintiff Tyler Gischel