IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tyler Gischel, :
: Case No. 1:17-cv-475
     Plaintiff, :
: Judge Susan J. Dlott
         v. :
: Order Granting in Part and Denying in
University of Cincinnati, *et al.*, : Part Motion to Dismiss First Amended
: Complaint
     Defendants. :

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First

Amended Complaint (Doc. 11).  Plaintiff Tyler Gischel has sued the University of Cincinnati

("UC") and multiple UC officials following his dismissal from UC as a sanction for being found

responsible for the sexual assault of a female student.  Gischel alleges that Defendants violated

Title IX and his civil rights by discriminating against him on the basis of his gender during the

disciplinary proceedings.  Defendants have moved to dismiss all claims.  For the reasons that

follow, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

## I.      BACKGROUND

The well-pleaded allegations of fact in the First Amended Complaint (Doc. 10) and the

Exhibits attached thereto (Docs. 1-2 to 1-48)[1] are taken as true for purposes of the Motion.

### A.      The Parties

Plaintiff Tyler Gischel is a former student at UC, a public university in Ohio.  Defendant

Jyl Shaffer is UC's former Title IX Coordinator and the investigator for the Title IX complaint

filed with UC by a female student, Jennifer Schoewe, against Gischel.  Defendant William

---

[1] The Exhibits attached to the Complaint (Doc. 1) and the Amended Complaint (Doc. 10) appear to be identical.
The Court will cite the Complaint exhibits because the CM/ECF PageID numbers are illegible on the Amended
Complaint exhibits.

Richey is a UC Police Department detective.  Defendant Daniel Cummins is UC's Associate Dean of Students and the Director of the Office of Judicial Affairs.  Defendant Brice Mickey is a UC administrator and served as the chair of the Administrative Review Committee ("ARC") panel that adjudicated Schoewe's complaint and disciplined Gischel.  Defendants Carol Tonge Mack and Arenett Glassco are UC administrators and also served on the ARC panel.  Defendant Rachel Smith is a professor at the UC College of Law and served as the University Appeals Administrator who reviewed and denied Gischel's appeal.  (Doc. 10 at PageID 725–27.)

**B.      The Alleged Assault**

Gischel and Schoewe met at an off-campus party hosted by a UC student during the overnight hours on August 22–23, 2015.  (Doc. 1-12 at PageID 331–44.)  Both Gischel and Schoewe consumed alcohol at the party.  Witnesses described Schoewe as the most intoxicated person at the party, who stumbled and slurred her words.  (*Id.* at PageID 367–74.)  A group of students went to a pizza restaurant around midnight or 1:00 a.m.  *Id.*  Schoewe kissed Gischel.  (*Id.* at 370, 395.)  Gischel asserts that Schoewe also grabbed his penis outside the pizza place.  (*Id.* at PageID 395.)  Gischel and his friend, another male student, offered to walk Schoewe home when she indicated that she wanted to leave.  (*Id.* at PageID 373.)  The friend became separated from Gischel and Schoewe when he was stopped by an officer asking about an unrelated matter.  (*Id.*)  Gischel texted him around 3:30 a.m. that Schoewe was making wrong turns and did not remember where she lived.  (*Id.* at PageID 411–13.)  Gischel texted his friend again between 4:00 a.m. and 5:00 a.m. that Schoewe did not want to return to her student housing and asked to go to his apartment instead.  (*Id.* at PageID 373–76; 411–13.)  Gischel asserts that Schoewe expressly consented to having intercourse with Gischel when they arrived at his apartment.  (*Id.* at PageID 392, 398.)  After they had intercourse, Gischel asserts that he

2

did not walk Schoewe home because she wanted to go to another party.  (*Id.* at PageID 391–92, 413.)  Schoewe texted friends the next day that she was okay.  (*Id.* at PageID 387.)

**C.     Investigation and Proceedings against Gischel**

At some point between August 23 and 25, 2015, Schoewe spoke to her boyfriend and her mother, Rebecca Schoewe.  Rebecca Schoewe called the UC Police Department on August 25, 2015 and spoke to Defendant William Richey expressing a concern that her daughter had been raped over the weekend.  (*Id.* at PageID 334–35.)  Schoewe herself reported the incident to Jyl Schaffer, the UC Title IX Coordinator, that same day, and then she spoke with Detective Richey on August 26, 2015.  (*Id.* at PageID 331–32, 336.)  She reported that she had blacked out on the night of the incident, that she did not believe she had consumed enough alcohol to cause her to black out, and that she suspected she had been drugged.  She reported that she woke up in her apartment feeling unwell, that her underwear was missing when she woke up, and that she thought she had been sexually assaulted while unconscious.  (*Id.*)  UC determined not to do Title IX notifications until Schoewe decided whether to pursue criminal charges.  (*Id.* at PageID 338.)  By September 4, 2015, Detective Richey knew Schoewe wanted to pursue both criminal charges and a Title IX complaint against Gischel.

Detective Richey and non-party UC Police Officer Jennifer McMahon interviewed Gischel on September 16, 2015 without informing him that he was the subject of either a criminal or Title IX investigation.  Gischel waived his *Miranda* rights and provided his version of the events to the officers.  (*Id.* at PageID 388–406.)  Detective Richey was the primary interrogator.  (*Id.*)  On September 18, 2015, Shaffer gave Gischel notice of the Title IX complaint against him.

On October 16, 2015, UC placed Gischel on an interim suspension.  Almost four months later, on February 3, 2016, Shaffer sent her Title IX investigative report to Daniel Cummins, UC's Assistant Dean of Students and the Director of the Office of Judicial Affairs ("OUJA"). Cummins advised Gischel that same day that Schoewe's complaint had been referred to OUJA and stated that a procedural review was scheduled for February 12, 2016.  Gischel was informed that he had the right to bring an attorney to the procedural review.  (Doc. 1-11 at PageID 316.)

On February 9, 2016, UC received notice that the federal Department of Education's Office of Civil Rights ("OCR") had opened an investigation into UC upon Schoewe's complaint that UC "fail[ed] to promptly and adequately respond to complaints, reports and/or incidents of sexual violence" and that students like Schoewe "were subjected to a sexually hostile environment."  (Doc. 1-5 at PageID 180.)  Schoewe had filed the Title IX complaint against UC with the OCR on November 23, 2015.  (*Id.*)  UC did not inform Gischel about the pending OCR investigation at any time during the disciplinary investigation or proceedings against him.

On February 25, 2016, Cummins informed Gischel that a hearing would be held before an ARC panel on March 15, 2016 to determine if Gischel had broken Student Code of Conduct policies regarding a violation of law, physical harm or abuse, harassment or discrimination, or of UC's Title IX policies and statements.  (Doc. 1-11 at PageID 318–20.)  Gischel was given a deadline of February 29, 2016 to submit the identity of witnesses and evidence he would present at the ARC hearing.  (*Id.*)  He was informed that he could have an advisor, including an attorney, at the hearing.  (*Id.*)

On March 15, 2016, Shaffer appeared at the ARC hearing with Schoewe.  The hearing lasted less than two hours.  Schoewe and Gischel were both given the opportunity to submit questions.  The ARC panel asked Gischel almost all of Schoewe's questions.  Gischel submitted

63 questions, but the ARC panel refused to ask Schoewe questions about two topics important to Gischel.  (Doc. 1-11 at PageID 325–29.)  First, it refused to ask Schoewe questions about whether she had a personal or romantic relationship with Detective Richey, questions designed to establish that Detective Richey acted inappropriately or was biased.  Detective Richey did not appear at the hearing.  Second, the ARC panel refused to ask Schoewe questions intended to disprove that Schoewe was incapacitated on the night of the incident.

The ARC panel recommended that Gischel be held responsible as follows:

You are found responsible for violating provision(s) of the Student Code of Conduct specifically, Violation of Law, Physical Abuse or Harm, Harassment or Discrimination, and Violation of University Policies or Rules, most specifically University Policy Statement on Sex Offenses.

(*Id.* at PageID 323.)  On March 28, 2016, non-party Denine Rocco, the Assistant Vice President of Students Affairs and Dean of Students, accepted the recommendation of the ARC panel and imposed a sanction of immediate permanent dismissal.

Gischel appealed the decision on March 29, 2016 to Rachel Smith, the University Appeals Administrator, based on alleged violations of UC's own policies, Title IX, and his due process rights.  Smith issued a letter dated April 18, 2016 denying the appeal.  (Doc. 1-7 at PageID 196.)  She considered only the procedural arguments in accordance with the scope of her authority.  (*Id.*)  She concluded that the ARC panel did not commit procedural error by refusing to ask questions proffered by Gischel regarding Detective Richey's alleged bias or Shoewe's level of intoxication.  (*Id.*)  Gischel points out that Smith used the term "intoxication," not the term "incapacitation."  UC's Title IX policy defined the term "consent" to include that a "person cannot give consent if he or she is mentally or physically incapacitated or impaired such that the person cannot understand the fact, nature or extent of the sexual situation."  (Doc. 1-2 at PageID 107–08.)  However, UC's Policy Statement on Sex Offenses, effective August 15, 2012, states

under the definition of sexual assault that "[l]egally, consent cannot be given while intoxicated or medicated since these states inhibit an aware state of mind."  (*Id.* at PageID 119, 124.)

**D.      The Alleged Bias of Detective Richey**

Gischel attached to the Complaint evidence purporting to show the existence of an improper relationship between Detective Richey and Schoewe, or at least evidence of Detective Richey's bias in favor of Schoewe.  Detective Richey conducted the only interrogation of Gischel, he spoke multiple times with Schoewe during the course of the investigation, and he obtained statements from five witnesses about Schoewe's level of intoxication and her interactions with Gischel on the night of the incident.  (Doc. 1-12.)

UC conducted an internal investigation concerning the relationship between Detective Richey and Schoewe.  (Doc. 1-45 at PageID 641–50.)  Schoewe posted on social media a picture of her wearing a police hat and vest with a caption that included the saying "my detective loves me."  (*Id.* at PageID 641.)  Schoewe's friends reported reading text messages in which Detective Richey stated that he loved Schoewe and indicated he had given her a massage.  (*Id.* at PageID 642–43.)  Detective Richey would not allow UC to inspect the information on his mobile phone. (*Id.* at PageID 646.)  Detective Richey denied giving Schoewe a back massage and denied that he had intended to communicate that he meant his statement "as a relationship I love you."  He admitted to giving her a pendant to wear to comfort her during her grand jury testimony.  (*Id.*) Schoewe also denied any romantic relationship with Detective Richey.  (*Id.* at PageID 644.)  UC concluded in late October 2015 that it did not have evidence to "support or disprove" the allegation of a romantic relationship.  (*Id.* at PageID 650.)  However, it did transfer Detective Richey from special investigations to criminal investigations.  (*Id.*)

Gischel alleges that the alleged relationship between Detective Richey and Shoewe became a factor in the criminal proceedings against him arising from the alleged sexual assault. (Goldberg Aff., Doc. 1-40 at PageID 594–95.)  Gischel's criminal attorney procured a court order to obtain a forensic investigation of Detective Richey's phone to extract the texts between him and Schoewe, but Detective Richey had deleted all of his texts.  (*Id.*)  The criminal attorney then procured a court order for a forensic investigation of Shoewe's phone.  (*Id.*)  Gischel's expert determined that the phone was water damaged, but that text messages could be extracted if Schoewe produced the passcode.  When Shoewe refused to produce the passcode, the court dismissed the criminal indictment against Gischel.  (*Id.*)

**E.    UC's Alleged Bias Against Males in Title IX Investigations**

Gischel dedicates more than twenty pages of the First Amended Complaint to alleging factors, both external and internal, which created a culture of animus against male students at UC.  (Doc. 10 at PageID 729–59.)  These allegations will be only briefly summarized because, as will be explained in the Analysis below, the Sixth Circuit has directly addressed many of these factors, or substantially similar factors, in earlier cases.

The OCR issued the now well-known "Dear Colleague Letter" on April 4, 2011 instructing universities nationwide how to investigate and resolve sexual misconduct complaints. Universities were encouraged to adopt a preponderance of the evidence standard for disciplinary cases and to minimize the burden on the complainant.  (Dear Colleague Letter at 11, 15–16.)[2] The Secretary of Education threatened to withhold federal funding from universities that did not voluntarily comply with the guidelines.  (*Id.* at 16.)  Gischel asserts that UC implemented the

---

[2]  The Dear Colleague Letter was obtained at https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html on November 29, 2017.  The Department of Education withdrew the Dear Colleague Letter on September 22, 2017.

OCR's gender bias into its policies because of the threatened loss of federal funding. For example, Gischel cites an OUJA publication from December 2011 that refers to sexual misconduct complainants as "survivors," states that survivors are not to be blamed, and states that the role of faculty and staff is to support survivors. (Doc. 1-2 at PageID 126, 130, 150.)

Gischel asserts that the pressure on UC increased when Shoewe filed a complaint with the OCR, and the OCR informed UC on or about February 9, 2016 that it had launched the Title IX investigation of the University.[3] The existence of the OCR complaint against UC is noted in the OUJA file on the Schoewe/Gischel matter. (Doc. 1-9 at PageID 278.)

Gischel points out that the OCR's recommendations for handling sexual misconduct allegations have been criticized in law review articles, by the American Association of University Professors, and by the American College of Trial Attorneys.

Gischel also cites UC's participation and promotion of the "It's On Us" campaign which he describes as portraying male students as sexual predators. He faults UC's repeated promotion of a statistic stating that 20% to 25% of female college students are assaulted by male students, because he asserts that other organizations offer statistics that less than 1% of female students are assaulted. He also faults ARC training materials that, in the sexual misconduct section, refer to women as being the victims of rape, refer to "boyfriends" and not to "girlfriends" as perpetrators of date rape, and point out misconceptions that men have about their "right" to sex. (Doc. 1-33 at PageID 535–40.) However, the Court notes that the training materials use gender neutral language in most subsections and specifically note that men also are victims of rape. (*Id.*)

Finally, he states that Title IX Coordinator Shaffer, who investigated Schoewe's complaint against Gischel, is associated with two organizations, the Association of Title IX

---

[3] In this regard, Schoewe was interviewed by the *Cincinnati Enquirer* about the incident and UC's investigation of it for a lengthy article published on January 18, 2017. (Doc. 1-6 at PageID 187–95.)

Administrators and the National Center for Higher Education Risk Management, whom he describes as "promoting gender bias at universities by equating victim/complainants in sexual misconduct proceedings as being females who must receive preferential treatment." (Doc. 10 at PageID 752.)

## F.    Procedural History of this Case

On July 13, 2017, Gischel initiated this civil action by filing a Complaint against UC, Daniel Cummins, William Richey, Jyl Shaffer, Brice Mickey, Carol Tonge Mack, Arnett Glassco, and Rachel J. Smith. (Doc. 1.) Defendants moved to dismiss the Complaint on September 13, 2017. (Doc. 9.) In lieu of responding to the dismissal motion, Gischel filed the First Amended Complaint against the same defendants. (Doc. 10.) He asserts the following claims for relief in the First Amended Complaint:

> Count 1:  Violation of Title IX—Hostile Environment Sexual Harassment and/or Discrimination (against UC only);
>
> Count 2:  Violation of Title IX—Deliberate Indifference (against UC only);
>
> Count 3:  Violation of Title IX—Erroneous Outcome (against UC only);
>
> Count 4:  Violations of Procedural and Substantive Due Process Pursuant to 42 U.S.C. § 1983 (against the Individual Defendants in their official capacities for injunctive relief and in their personal capacities for money damages);
>
> Count 5:  Violation of the Equal Protection Clause Pursuant to 42 U.S.C. § 1983 (against the Individual Defendants in their official capacities for injunctive relief and in their personal capacities for money damages);
>
> Count 6:  Malicious Prosecution in Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 (against Detective Richey in his official capacity for injunctive relief and in his personal capacity for money damages).
>
> Count 7:  Declaratory Judgment—Violation of Due Process Provisions of the U.S. and Ohio Constitutions (against UC and the Individual Defendants)

(*Id.* at PageID 779–92.)

On October 18, 2017, Defendants moved to dismiss the First Amended Complaint in its entirety.  (Doc. 11.)  Gischel opposes dismissal of the First Amended Complaint.  (Doc. 12.)  This matter is fully briefed and ripe for adjudication.

## II.  STANDARDS FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted).  However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics."  *Twombly*, 550 U.S. at 555, 570.  A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678–79; *DiGeronimo Aggregates*, 763 F.3d at 509.  The district court may consider exhibits attached to the complaint

without converting a dismissal motion to a summary judgment motion.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

## III.     ANALYSIS

### A.     Title IX Claims Against UC

Title IX of the Education Amendments of 1972 provides generally that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Gischel purports to state three claims against UC for violations of Title IX, but the theories underlying Counts 1–3 are broad and overlapping. Reading the First Amended Complaint broadly, the Court will assume that Gischel intended to state Title IX claims for hostile environment sexual harassment/deliberate indifference, selective enforcement discrimination, and erroneous outcome discrimination.

#### 1.     Sexual Harassment/Deliberate Indifference

The hostile environment sexual harassment and deliberate indifference claims overlap.  In 2001, the Sixth Circuit stated that a Title IX claim for hostile environment could go forward when a plaintiff established a prima facie case that (1) she was subjected to a sexually hostile environment; (2) she provided actual notice to an official with authority to take corrective action; and (3) the institution's response to the harassment amounted to deliberate indifference. *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001).  *Klemencic* was not a disciplinary proceeding case, however.  Two years later, a student plaintiff asked the Sixth Circuit to allow a deliberate indifference claim arising from his Title IX challenge to a disciplinary proceeding.  *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003).  The Sixth Circuit described a deliberate indifference claim as one in which the plaintiff "seeks to

hold an institution liable for sexual harassment and . . . [is required to] demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Id.* However, the Sixth Circuit did not explicitly adopt the deliberate indifference theory of Title IX liability in the context of a disciplinary proceeding because it determined that the plaintiff could not establish that the university's conduct was motivated by gender bias regardless of the Title IX theory applied. *Id.* at 639.

Asssuming, arguendo, that the Sixth Circuit would recognize a deliberate indifference claim, Gischel does not identify specific facts showing that he was subjected to sexual harassment or a hostile environment at UC. He has not stated allegations that he was subjected to "discriminatory intimidation, ridicule, [or] insult" because of his gender. *Harris v. Forklift Syss.*, 510 U.S. 7, 21 (1993) (Title VII standard). Several courts in the Sixth Circuit have refused to recognize a claim for hostile environment Title IX case in the disciplinary context absent allegations of sexual harassment. *See Doe v. Miami Univ.*, 247 F. Supp. 3d 875, 885–86 (S.D. Ohio 2017), *appeal filed*, No. 17-3396 (2017); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 606 (S.D. Ohio 2016); *Pierre v. Univ. of Dayton*, No. 3:15-cv-362, 2017 WL 1134510, at *12 (S.D. Ohio Mar. 27, 2017); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 758 (E.D. Tenn. 2009). This Court, likewise, holds that a deliberate indifference claim in the disciplinary proceeding context would require a showing of sexual harassment.[4]

Gischel does not state plausible sexual harassment allegations. Gischel alleges that he told Detective Richey that Schoewe grabbed his penis on the night of the incident, but that UC

---

[4] The Court is aware of only one case in the Sixth Circuit where the court did not require a deliberate indifference claim to arise from an allegation of sexual harassment. In *Wells v. Xavier University*, 7 F. Supp. 3d 746 (S.D. Ohio 2014), the court recognized sexual harassment as the "classic case" of deliberate indifference, but stated a deliberate indifference claim could be based on allegations that a university official with notice of misconduct—misconduct leading to a defective disciplinary hearing—failed to take steps to remedy the defects. 7 F. Supp. 3d at 751 n.2. This Court declines to follow *Wells*.

took no steps to discipline Shoewe as a result.  However, he does allege either that the Shoewe's touching was unwelcome or that he reported the touching as unwelcome to UC.  The *Doe v. Miami University* case is instructive.  The plaintiff in that case alleged that he had asserted in the university's sexual misconduct proceedings against him that the female complainant had initiated sexual contact with him one time when he was incapacitated.  247 F. Supp. 3d at 885–86.  The district court noted that even if Miami University had notice about the incident, this allegation did not suffice as "severe, pervasive, and objectively offensive" harassment to support a deliberate indifference claim.  *Id.* at 886.  Similarly, the deliberate indifference claim in another case failed when the plaintiff did not allege to Ohio State that he was being harassed.  *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1069 (S.D. Ohio 2017).  The Court concludes that Gischel has failed to state an actionable Title IX claim for sexual harassment or deliberate indifference.

### 2.    Selective Enforcement Discrimination

The Sixth Circuit has applied the selective enforcement theory of Title IX set forth in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).  *See Mallory*, 76 F. App'x at 638–41.  In a selective enforcement claim, the plaintiff asserts that even if he or she did violate a university policy, the decision to initiate disciplinary proceedings or the severity of the punishment was motivated by gender animus.  *See Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 7254213, at *6 (S.D. Ohio Nov. 11, 2015).  The plaintiff must prove that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender."  *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *see also Doe v. Ohio State Univ.*, 239 F. Supp. 3d at 1066–67.

Gischel argues that he was disciplined for alleged sexual assault, but Schoewe was not disciplined for touching his penis, because of gender bais. This allegation is insufficient for two reasons. First, as stated above, Gischel did not complain to UC that Schoewe's touching him was unwelcome at any time before this litigation. Second, the accuser cannot be the similarly-situated individual to whom the accused student plaintiff is compared. *See Doe v. Ohio State Univ.*, 239 F. Supp. 3d at 1067; *Doe v. Case W. Reserve Univ.*, No. 1:14cv2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015). Gischel does not properly allege that a female accused of sexual assault was treated more favorably by UC, so his Title IX selective enforcement claim fails as a matter of law.[5]

### 3. Erroneous Outcome

In a typical erroneous outcome case, the plaintiff "attack[s the] university disciplinary proceeding on grounds of gender bias" by arguing that the plaintiff "was innocent and wrongly found to have committed an offense." *Yusuf*, 35 F.3d at 715. Stated differently, "[a] successful erroneous outcome claim requires the plaintiff to show that the outcome of [the] University's disciplinary proceeding was erroneous because of sex bias." *Cummins*, 662 F. App'x at 452 (internal quotation and citation omitted). To plead an erroneous outcome claim, the plaintiff must state "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal connection between the flawed outcome and gender bias." *Id.* (internal quotations and citation omitted). UC seeks dismissal of this claim on the grounds that Gischel has not pleaded sufficient facts to support either prong. The Court, drawing all reasonable inferences in favor of Gischel, disagrees.

---

[5] Gischel alleges in the First Amended Complaint that UC failed to respond to a public records request for documents that would show that UC engaged in an unlawful pattern of gender-biased decision making. (Doc. 10 at PageID 782.) Gischel does not provide any detail as to the particulars of the records request. The Court will allow Gischel to file a Second Amended Complaint if he obtains discovery suggesting that UC is biased in favor of females, regardless of whether they are the complainants or the accused students, over males.

Gischel has alleged facts that considered together are sufficient to cast articulable doubt on the outcome of the disciplinary hearing.[6] First, the crux of the charge against Gischel was that Schoewe was too intoxicated or incapacitated to give consent. Several students at the party where Schoewe and Gischel met described Schoewe as highly intoxicated. However, Schoewe gave investigators erroneous, or at least contradictory, evidence regarding how much alcohol she had consumed. Schoewe initially told her mother that she remembered nothing after 9:30 p.m., but she told the police that she remembered drinking until 11:30 p.m. (Doc. 1-12 at PageID 334, 336.) She denied drinking enough to black out and suggested that she might have been drugged. Tests confirmed the absence of drugs in her system. (Doc. 1-42 at PageID 600.) Gischel told a friend on the night of the incident and the police afterwards that Schoewe verbally asked to go to his apartment, and he told the police that Schoewe verbally consented to intercourse. She left Gischel's apartment alone and made it home. Significantly, Gischel was denied the opportunity to cross-examine Schoewe about her level of intoxication because the ARC panel refused to ask Schoewe the questions Gischel had submitted on the topic.

Second, Gischel was denied the opportunity to investigate the extent of Detective Richey's bias, if any, in favor of Schoewe. Detective Richey was in a position to influence the case presented against Gischel by UC at the ARC hearing. Detective Richey conducted the only UC interrogation of Gischel about the incident, he obtained statements from other key witnesses, and he counseled Schoewe during the investigation. However, he did not appear at the ARC hearing. He also refused to allow a forensic examination of his mobile phone to examine his communications with Schoewe despite credible evidence suggesting they might have had a romantic relationship. Finally, the ARC panel refused to ask Schoewe questions about her

---

[6] This conclusion should not be read to infer that the Court has made any determination about whether Schoewe, in fact, was intoxicated or incapacitated on the night of the incident and whether she was sexually assaulted by Gischel. Those matters are not before the Court.

relationship with Detective Richey.  In fact, the state court dismissed criminal charges against Gischel because Richey had deleted his text messages and Schoewe refused to provide the passcode to her water-damaged phone.  The Court finds that Gischel has alleged sufficient facts at the pleading stage to cast articulable doubt upon the outcome of the disciplinary hearing.

Regarding the causal connection prong, the allegations of causation necessary to state a Title IX claim can be similar to those sufficient to state a Title VII discrimination claim, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Yusuf*, 35 F.3d at 715; *see also Mallory*, 76 F. App'x at 640 (applying the *Yusuf* standard).  A plaintiff must plead more than conclusory allegations of causation or claims without factual support.  *Doe v. Ohio State Univ.*, 239 F. Supp. 3d at 1070.  Further, "one case by an individual who was subjectively dissatisfied with the result [of a disciplinary proceeding] does not constitute a pattern of decisionmaking."  *Mallory*, 76 F. App'x at 640 (internal quotation omitted); *see also Univ. of the South*, 687 F. Supp. 2d at 756 (quoting and applying *Mallory*).

Courts in the Sixth Circuit repeatedly have found that generalized allegations of hostility towards male students accused of sexual assault at universities arising from the OCR's now-rescinded Dear Colleague Letter and from Title IX advocacy groups are not sufficient to establish the required causal connection.  To begin, a conclusory allegation that the Dear Colleague Letter induced a university to discriminate against male students so as avoid the loss of federal funds is not sufficient evidence to state a plausible claim of gender bias.  *See Cummins*, 662 F. App'x at 453; *see also Doe v. College of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017) ("[A]llegations that Wooster's more stringent stance against campus sexual assault is the result of pressure exerted by the Department of Education through the issuance of

the Dear Colleague Letter fail to support a plausible inference of gender discrimination."); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 602 ("Plaintiffs' allegations concerning the sexual assault training provided to UC staff members and pressure allegedly exerted on universities by the Department of Education to intensify their response to sexual assault complaints fall short of creating a reasonable inference that the ARC panels in Plaintiffs' cases were biased.").

Also, courts have held that advocacy and bias in favor of the perceived victims of sexual assault is not evidence of gender bias because both men and women can be sexually assaulted. *Cummins*, 662 F. App'x at 453 (finding that accommodations giving to sexual assault complainants is not evidence of gender bias because both men and women can be victims of assault); *College of Wooster*, 243 F. Supp. 3d at 886 (stating that a bias in favor of the victims of sexual assault that started in response to criticism from the media and the student body is not equivalent to bias against male students); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d at 606–07 (stating that bias against students accused of sexual assault is not the same as bias against male students).

However, Gischel has made two allegations that give rise to a plausible inference of gender bias in the circumstances of this case. First, Gischel has pleaded that UC faced pressure not only from the OCR's Dear Colleague Letter, but by the fact the OCR opened a Title IX investigation into whether UC "discriminated against students based on sex" by failing to equitably respond to reports of sexual violence. (Doc. 1-5 at PageID 180.) There is an email in the OUJA file regarding the Schoewe/Gischel incident noting that the Gischel case is "part of" the OCR investigation. The ARC hearing was held in March 2016 after UC received written notice about the OCR investigation in February 2016. The Sixth Circuit has recognized that being investigated by the federal government for potential Title IX violations is a relevant

allegation suggesting that the university might be induced to discriminate against males in disciplinary hearings for alleged sexual assault. *Cummins*, 662 F. App'x at 453.

Second, *Gischel* has alleged facts suggesting gender bias on the part of at least Detective Richey who actively participated in the investigation and had the ability to influence the case presented against Gischel at the disciplinary proceeding. *See Doe v. Case W. Reserve Univ.*, No. 1:17cv414, 2017 WL 3840418, at *6–7 (N.D. Ohio Sept. 1, 2017) (stating that allegations of bias on the part of the Title IX coordinator who exercised control over the evidence presented to the decisionmaker was sufficient to support erroneous outcome claim at the dismissal stage); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d at 1072 (implying that statements of bias by pertinent university officials who had the authority to control the investigation of a sexual misconduct claim could be evidence supporting an erroneous outcome claim). Detective Richey was the primary questioner the only time UC interrogated Gischel, and he obtained statements from Schoewe and several witnesses who attended the party with Gischel and Schoewe on the night of the incident. Gischel has alleged numerous facts suggesting that Detective Richey, a male, viewed Schoewe, a female, as more than a victim. He submits a social media post with Schoewe in police garb stating "my detective loves me," exhibits describing text messages that can be read to suggest that Richey had developed romantic feelings for Shoewe, and evidence that Detective Richey admitted to giving Schoewe a pendant to wear. These allegations give rise to a plausible inference that Richey would have a gender-based animus against Gischel, a male who had sexual intercourse, whether consensual or non-consensual, with Schoewe. Significantly, Gischel alleges that he did not have the opportunity at the disciplinary hearing to explore the issue of Richey's possible bias.

The existence of the pending OCR investigation of UC for Title IX violations, and the potential gender-based animus Detective Richey had against Gischel, another male, arising from his alleged romantic interest in Schoewe, a female, are sufficient at the dismissal stage to support a Title IX claim. The Court will not dismiss the Title IX erroneous outcome claim against UC.

**B.      Section 1983 Claims against the Individual Defendants**

Gischel asserts that the Individual Defendants violated his due process rights and his right to equal protection, and he seeks relief pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action to individuals whose constitutional rights are violated by persons acting under the color of state law. 42 U.S.C. § 1983. Section 1983 claims against individual defendants acting in their official capacities are permitted when the plaintiff seeks only prospective injunctive relief. *Cummins*, 662 F. App'x at 444. Here, the Individual Defendants argue that the due process and equal protection claims against them should be dismissed for failure to state a claim upon which relief can be granted and on the basis of qualified immunity.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages [on personal capacity claims] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, courts must ask whether the government official's conduct violated a constitutional right, and if yes, whether the specific right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### 1.      Substantive Due Process and Equal Protection Violations

The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause of the Fourteenth Amendment likewise provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  *Id.*  Gischel's substantive due process and equal protection claims overlap.

A student's claim for a violation of a substantive due process right to continued education at a public university does not exist if the student's equal protection rights were not violated.  *See Martinson v. Regents of Univ. of Mich.*, 562 F. App'x 365, 375 (6th Cir. 2014); *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 (6th Cir. 2003).  The Equal Protection Clause is interpreted to prevent state actors from making "distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference."  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  Gischel bases his equal protection claim, and therefore his substantive due process claim, on the allegations that UC treated him differently than it treated Schoewe and other female students accused of sexual assaults.

These allegations are legally insufficient.  The Court already has determined that Schoewe cannot be considered to be similarly-situated to Gischel based on the facts alleged.  Gischel has not alleged that Schoewe's action in grabbing his penis was unwelcome or that he ever complained about Schoewe's conduct.  Instead, Gischel told Detective Richey that Schoewe grabbed his penis as part of his explanation as to why he believed that Schoewe had consented to have intercourse with him.  Additionally, Gischel failed to allege facts to support the conclusory allegation that UC treated other female students accused of sexual assault better than it treated

him.  He has not alleged facts concerning any alleged assaults committed by female students nor described the way in which such female students were treated by UC.  As such, Gischel has failed to state a claim for violations of his substantive due process or equal protection rights upon which relief can be granted.  It follows that Individual Defendants are entitled to qualified immunity on these claims to the extent they are sued in their individual capacities.  The Court will dismiss these claims.

### 2.  Procedural Due Process Violations

Gischel alleges in this claim that the Individual Defendants violated his procedural due process rights by denying him fair and impartial investigators and adjudicators and by restricting his ability to cross-examine witnesses.  The procedures followed by UC for charges of non-academic misconduct are set forth in the Student Code of Conduct attached to the Complaint.  (Doc. 1-2 at PageID 90–102.)  The procedures generally have been approved in other cases.  *See*, *e.g.*, *Cummins*, 662 F. App'x at 439; *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 396–98 (6th Cir. 2017); *Peloe v. Univ. of Cincinnati*, No. 1:14-cv-404, 2015 WL 728309, at *1–2 (S.D. Ohio Feb. 19, 2015).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Due process is implicated "when state conduct 'alters a right or status previously recognized by law.'"  *See Cutshall v. Sundquist*, 193 F.3d 446, 479 (6th Cir. 1999) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333 (internal

quotation and citation omitted).  The level of process to be afforded is determined by balancing

three factors:

> (1) the nature of the private interest affected by the deprivation; (2) the risk of an
> erroneous deprivation in the current procedures used, and the probable value, if
> any, of additional or alternative procedures; and (3) the governmental interest
> involved, including the burden that additional procedures would entail.

*Cummins*, 662 F. App'x at 446 (citing *Mathews*, 424 U.S. at 335).

"State universities must afford students minimum due process protections before issuing

significant disciplinary decisions."  *Doe v. Univ. of Cincinnati*, 872 F.3d at 399.  Suspensions or

expulsions from school implicate protected property interests, and allegations of sexual assault

can impugn a student's reputation and integrity triggering their liberty interests.  *Id.*  However,

the Sixth Circuit does not require universities to provide criminal trial-like procedures:

> In the school-disciplinary context, an accused student must at least receive the
> following pre-expulsion: (1) notice of the charges; (2) an explanation of the
> evidence against him; and (3) an opportunity to present his side of the story before
> an unbiased decisionmaker.  We have recognized, however, that "disciplinary
> hearings against students ... are not criminal trials, and therefore need not take on
> many of those formalities."  Although a university student must be afforded a
> meaningful opportunity to present his side, a full-scale adversarial proceeding is
> not required.  The focus, rather, should be on whether the student had an
> opportunity to "respond, explain, and defend," and not on whether the hearing
> mirrored a criminal trial.

*Cummins*, 662 F. App'x at 446 (internal citations omitted).

Students accused of sexual offenses have a "compelling" interest in the outcome of the

disciplinary hearing.  *Id.*  "A finding of responsibility will thus have a substantial lasting impact

on [the accused students'] personal lives, educational and employment opportunities, and

reputations in the community."  *Id.*  Against the students' personal interests, a court must balance

"additional procedures requested, any error-reducing benefit those procedures might have, and

the burden on [the University] of adding those additional procedures."  *Id.* (citation omitted).

An adjudicatory panel must be impartial and unbiased, but school adjudicatory panels are entitled to a presumption of impartiality absent a showing based on evidence of actual bias. *Id.* at 449–50.  Due process does not necessarily require adherence to judicial rules of evidence or procedure. *Id.* at 447.  Universities can rely on hearsay evidence. *Doe v. University of Cincinnati*, 872 F.3d at 404–05; *Cummins*, 662 F. App'x at 448.  Regarding the burden of proof in school disciplinary hearings, the Sixth Circuit has upheld UC's practice of not placing the burden on either party, but reaching its conclusion based on the preponderance of the evidence. *Cummins*, 662 F. App'x at 449.

Despite the fact that UC's procedures have been found to comply with due process generally, Gischel makes specific allegations of fact that he was denied due process in ways that merit discussion here.  First, Gischel contends that he was denied procedural due process because the complaint against him was not adjudicated in a timely manner.  UC's Title IX Policies and Procedures, dated December 1, 2016, states that sex discrimination complaints generally are to be resolved within sixty days.  (Doc. 1-2 at PageID 113.)  Setting aside the fact that this policy is dated several months after Gischel was dismissed from UC, the Court notes that UC did not conduct the ARC hearing on the complaint against Gischel until six months after he was given notice of the complaint.  However, the Sixth Circuit has stated that a claim that a university failed to provide due process solely because it violated an internal written policy "clearly lacks merit" because the Constitution and case law interpreting it control what process is due. *Cummins*, 662 F. App'x at 445 n.2.  Gischel has not alleged how the delayed hearing prejudiced him.

Additionally, UC did not inform Gischel that he was the subject of a Title IX complaint until after he had been interrogated by Detective Richey.  UC's Student Code of Conduct calls

for giving a student accused of harassment or discrimination notice of the complaint concurrent to that provided to the complainant.  (Doc. 1-2 at PageID 90–91.)  He asserts that this violation of policy constituted a denial of due process because he would have exercised his right to have an advisor present when he was interrogated by Detective Richey on September 16, 2015.[7] (Doc. 10 at PageID 773–74.)  He was not interviewed by Shaffer, Detective Richey, or any other UC official about the incident after he was given notice about the complaint against him.

Perhaps more significantly, Gischel alleges that the potential negative impact was exacerbated by the limited right of cross-examination afforded to him at the ARC hearing.  The Sixth Circuit has recognized at least a limited right to cross-examine adverse witnesses "in the most serious of cases."  *Doe v. Univ. of Cincinnati*, 872 F.3d at 401.  "[T]he opportunity to question a witness and observe her demeanor can be just as important to the trier of fact as to the accused."  *Id.*  The right to a cross-examination "is most critical when the issue is the credibility of the accuser."  *Id.*; *see also Cummins*, 662 F. App'x at 448.  However, an accused student does not have the right to cross-examine his accuser directly.  *Doe v. Univ. of Cincinnati*, 872 F.3d at 403; *Cummins*, 662 F. App'x at 448.

The Sixth Circuit has approved of "circumscribed form of cross-examination" used by UC where the accused student submits written questions to the ARC panel to ask the accuser at a hearing, but the panel can determine which questions are relevant and whether they will be posed to the witness.  *Doe v. Univ. of Cincinnati*, 872 F. at 396–97.   However, the Sixth Circuit in *Doe v. University of Cincinnati* was not presented with and did not resolve the specific issue of

---

[7]  It is true that Detective Richey did inform Gischel of his *Miranda* rights, including the right to an attorney, before the interrogation began.  However, it is not apparent based on the facts alleged or from the interrogation transcript that Gischel knew he was the target of a criminal or disciplinary investigation when the interrogation began.

whether a due process violation could arise if the adjudicative panel refused to ask entire

categories of questions the accused student deemed critical to his or her defense.[8]

Gischel presents plausible allegations that his ability to present a meaningful defense

was thwarted in this case.  First, as set forth in the Erroneous Outcome subsection above, Gischel

alleges that he was not permitted to conduct a meaningful cross-examination of Schoewe

because the ARC panel refused to ask Schoewe his questions about her level of intoxication.

Gischel alleges facts at least suggesting that Schoewe gave inconsistent or inaccurate statements

about how much she drank, the last events she remembered, and whether she was drugged.

Second, and also as set forth above, Gischel alleges that Detective Richey, who conducted the

only interview of Gischel and obtained many of the witness statements used to help establish

Schoewe's level of intoxication, was biased in favor of Schoewe because he had romantic

feelings towards her.[9]  Gischel was not able to cross examine Detective Richey about his alleged

bias and how that impacted his investigation because he did not appear at the hearing.  Likewise,

Gischel was not able to cross-examine Schoewe about Detective Richey's bias because the ARC

panel refused to ask Gischel's proffered questions on that topic to her.  Finally, Shaffer, the Title

IX coordinator and lead investigator, appeared at the hearing with Schoewe giving the

appearance of support for her.  For all of these reasons, the Court concludes that Gischel has

---

[8] In *Doe v. University of Cincinnati,* the accuser did not appear at the disciplinary hearing and could not be cross-examined.  *Id.* at 398, 402.  The adjudicatory panel had to rely on her written statement because there was no corroborating evidence in the case and the panel had to make a credibility determination, absent a cross-examination, to determine whether the assault occurred.  *Id.*  The Sixth Circuit affirmed a preliminary injunction enjoining the accused student's suspension because the accused student was denied a meaningful opportunity to cross-examine his accuser.  However, the Sixth Circuit stated that cross-examination "may be unnecessary where the University's case does not rely on testimonial evidence from the complainant."  *Id.* at 405.

[9] Gischel need not allege that Detective Richey's bias in favor of Schoewe was gender-based to establish a procedural due process violation claim.

asserted a plausible procedural due process claim against the Individual Defendants in their official capacities.[10]

However, as to the claims against the Individual Defendants in their personal capacities, Gischel cannot overcome the asserted defense of qualified immunity. The law regarding what process is due in the student disciplinary context is evolving. The Sixth Circuit has not clearly defined the contours of the circumscribed cross-examination to be afforded to an accused during a university disciplinary proceeding. Gischel has not identified Supreme Court or Sixth Circuit precedent holding that Gischel had an absolute right to have all of his questions posed directly to Schoewe at the hearing. Additionally, although there is a clearly established right to have an impartial decisionmaker, *see Cummins*, 662 F. App'x at 449 ("It is unquestioned that a fundamental due-process requirement is an impartial and unbiased adjudicator."), Gischel has not identified case law clearly establishing that due process is violated if the investigator who gathered evidence, but did not participate at the disciplinary hearing or act as a decisionmaker, is biased. The Court will dismiss the claims against the Individual Defendants in their personal capacities on the basis of qualified immunity.

C.    **Malicious Prosecution**

Finally, Gischel asserts that Detective Richey is liable for malicious prosecution in violation of the Fourth Amendment. "[I]ndividuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in

---

[10]  The Court concludes that Gischel has sufficiently stated a procedural due process claim to survive the dismissal motion for the reasons stated above, but the Court does not intend by its analysis to limit the scope of Gischel's procedural due process claim going forward. Conversely, the Court does not intend to suggest that it has reached even a preliminary decision as to the merits of Gischel's claim.

affidavits filed to secure warrants."  *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017), *cert. denied*, (Jan. 8, 2018).  The parties agree that a malicious prosecution generally fails if probable cause existed for the prosecution.  *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (listing elements of a malicious prosecution claim).  Gischel pleads that an indictment was issued against him in state court.  The issuance of an indictment based on probable cause, however, does not foreclose a malicious prosecution claim where a law enforcement officer sets a prosecution in motion based on false or fabricated evidence—evidence which does not consist solely of grand jury testimony or presentation.  *King*, 852 F.3d at 588.  Gischel alleges that the indictment against him was dismissed because an inference arose that Detective Richey conspired with Schoewe to fabricate or destroy evidence based on the fact that neither complied with court orders to provide their mobile phones to defense counsel for forensic examination.  Gischel's allegations are sufficient at the pleading stage to survive the dismissal motion.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**.  The following claims are dismissed:  (a) the Title IX claims for deliberate indifference/sexual harassment and for selective enforcement against Defendant UC; (b) the equal protection and substantive due process claims against the Individual Defendants in their official and personal capacities; and (c) the procedural due process claim against the Individual Defendants in their personal capacities.  The following claims will proceed:  (a) the Title IX claim for erroneous outcome claim against Defendant UC; (b) the procedural due process claim against the Individual Defendants in their official capacities; and (c) the malicious prosecution claim against Detective Richey in his official and personal capacities.

**IT IS SO ORDERED.**

Dated this 23rd day of January, 2018.

BY THE COURT:


s/Susan J. Dlott
Susan J. Dlott
United States District Judge

28