# UNITED STATES DISTRICT COURT
### for the
E    Southern District of Ohio

| | | |
|---|---|---|
| Tyler Gischel | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:17cv475 |
| University of Cincinnati, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: The United States Dept. of Education, Office of Civil Rights, Attn: Director Meene Morey Chandra, 1350 Euclid Ave., Suite 325, Cleveland Ohio 44115

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A for information on materials requested in this subpoena

| Place: Rosenberg & Ball Co., LPA, 395 North Pearl Street, Granville, Ohio 43023 | Date and Time: 03/16/2018 1:05 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting part may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty respond to this subpoena and the potential consequences of not doing so.

Date: 02/16/2018

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Tyler Gischel
_____, who issues or requests this subpoena, are:
Eric Rosenberg, Rosenberg & Ball Co. Lpa. 395 North Pearl St., Granville, Ohio 43023; phone 704.644.1027

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:17cv475

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* THE UNITED STATES DEPT EDUCATION OFFICE
on *(date)* 2/16/2018 . OF CIVIL RIGHTS

☒ I served the subpoena by delivering a copy to the named person as follows: BY SERVING
MICHAEL EARLY, AUTHORIZED AGENT TO ACCEPT

on *(date)* 2/20/2018 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ for travel and $ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: 2/21/2018

_____
*Server's signature*

MARK BERUS PROCESS SERVER
_____
*Printed name and title*

P.O BOX 93447 CLEVELAND OHIO 44101
_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SUBPOENA INSTRUCTIONS**

A.  Produce a copy of all originals, drafts, reproductions and photographs of the documents requested.

B.  The documents to be produced in response to these requests include all documents within your possession, custody or control. This includes documents in the possession, custody or control of your attorneys, agents, employees, investigators, consultants, and experts, as well as any firm, company, corporation or business in which you own a controlling interest or over which you exercise control in fact. You are required to use reasonable diligence to locate the documents, including those that are not in your immediate possession.

C.  If you claim that the attorney-client privilege, or any other privilege, doctrine or reason for withholding a document is applicable, please set forth in writing and with your response to this subpoena: (1) the date of the document; (2) the type of document; (3) the subject matter of the document; (4) the name, employment and title of each person who prepared or received the document or any copy thereof; and (5) the basis for the claim of privilege or other ground for withholding the document. If it is claimed that only part of the document is privileged or otherwise need not be produced, please produce the remaining part of the document.

D.  If any document to be produced has been lost, discarded, transferred to another person or entity, destroyed, or otherwise disposed of, please set forth in writing: (1) the date, name and subject matter of the document; (2) the name, employment and title of each person who prepared, received, reviewed, or had custody, possession, or control of the document; (3) all persons with knowledge of the contents or any portion of the contents of the document; (4) the previous location of the document; (5) the date of disposal or transfer of the document; (6) the reason for disposal or transfer of the document; and, if applicable, (7) the manner of disposal of the document; or, if applicable, (8) the names and addresses of the transferees of the document.

E.  **As provided by Federal Rule of Civil Procedure please produce all electronically stored information in a form in which it is ordinarily maintained (i.e., native format).** ("Electronically stored information" is defined to give the full scope of that term as contemplated by the Federal Rules of Civil Procedure, and refers to all computer or electronically stored or generated data and information, and shall include all attachments to and enclosures with any requested item, to which they are attached or with which they are enclosed, and all drafts thereof. "Electronically stored information" includes, but is not limited to, all information storied in any format and on any storage media, including for example, but not limited to: hard disks, floppy disks, optical disks, flash memory devices, and magnetic tape, whether fixed, portable, or removable. The format of "electronically stored information" includes, for example, but is not limited to: word-processing documents, electronic spreadsheets, electronic presentation documents, email messages, image files, sound files, material or information stored in databases, or accessible from databases, of whatever description. "Electronically stored information" also includes all associated metadata that is routinely maintained or saved, which includes for example, but is not limited

to document title or name, file name, data and time of creation, date and time of last edit, identity of author, identity of owner, identities of editors, identities of recipients, changes, history of changes, email header information, and email routing information.)

## **DEFINITIONS**

A.  "DOCUMENT" refers to every original, draft and duplicate of every writing and recording of every type and description, including, but not limited to, all writings, recordings, electronically stored information, electronic writings (such as information contained on the internet), e-mail, intra- or inter-company communications, memoranda, reports and photographs as those terms are defined in Rule 1001 of the Federal Rules of Evidence and all documents or tangible things as those terms are used in Rule 34 of the Federal Rules of Civil Procedure.  The term Document shall not include documents: (a) DOE provided to UC, or (b) UC provided to DOE.

B.  "COMMUNICATION" refers to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between you or between you and any other person or entity. The term communication shall not include documents: (a) DOE provided to UC, or (b) UC provided to DOE.

C.  "DOE," "YOU," or "YOUR" refers to the United States Department of Education and its Office of Civil Rights, together with any of its employees, officers, attorneys, representatives and agents.

D.  "UC" refers to Defendant, the University of Cincinnati, together with any of its employees, officers, attorneys, representatives and agents.

E.  "TITLE IX" refers to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, <u>et seq.</u>

F.  "SEXUAL MISCONDUCT" refers to sexual misconduct, sexual violence, sexual assault, sexual harassment, relationship violence, and/or stalking.

G.  "RELATE TO," "RELATED TO," and "RELATING TO" means directly or indirectly, mentioning or describing, pertaining to, being connected with, or reflecting upon the subject matter of the specific request.

## **DOCUMENTS REQUESTED**

1.  All document(s) and communication(s) created between April 4, 2011 and April 30, 2016 that relate to any sexual misconduct investigation(s) DOE conducted regarding UC's implementation of Title IX.

2.  All document(s) and communication(s) created between April 4, 2011 and August 30, 2016 that relate to any sexual misconduct complaint DOE received regarding UC's implementation of Title IX.

# ADDITIONAL INFORMATION RELATED TO
# SUBPOENA

- Although Plaintiff does not concede 34 C.F.R. §8.5 governs this subpoena, Plaintiff requests Acting Assistant Secretary Candice Jackson ("Jackson") authorize the release of the requested materials based in part on the rationale provided in this subpoena. To facilitate this authorization, this subpoena is being mailed to Jackson and DOE's General Counsel at U.S. Department of Education, Office of the General Counsel, 400 Maryland Avenue, SW., room 6E300, Lyndon Baines Johnson Building, Washington, DC 20202-2100.

- The materials sought in this subpoena are conducive to DOE's interests in part because these materials will likely advance DOE's goals of ensuring universities like UC conduct disciplinary proceedings in the gender-neutral fashion required by Title IX. UC's obligation to engage in these gender-neutral proceedings is documented in part in OCR's Sept. 22, 2017 Dear Colleague Letter and OCR's Sept. 22, 2017 Q&A on Campus Sexual Misconduct which are attached as *Exhibits A1* and *A2*. Therefore, producing the requested documents will advance the goals of OCR and the American Government of eliminating gender-bias by universities such as UC.

- Although Plaintiff does not concede 34 C.F.R. §8.5 governs this subpoena, the materials sought may be disclosed under 34 C.F.R. §8.3 for at least four reasons: (1) the subpoena does not seek materials Plaintiff could obtain in discovery from UC; (2) only DOE possesses the requested documents which include, but are not limited to: communications between DOE employees/agents; notes taken by DOE employees/agents; and/or internal DOE memorandums and/or reports that relate to UC's implementation of Title IX; (3) DOE's responses to Freedom of Information Act ("FOIA") requests produce highly redacted documents which would irreparably prejudice Plaintiff's ability to address UC's potential violations of Title IX. *See e.g., Exhibit A3* (containing DOE response to unrelated FOIA request); and (4) in response to similar subpoenas, DOE admitted it would produce only highly redacted documents in response to a FOIA request for documents sought in a subpoena by alleging: "[m]ost *if not all of the documents* sought [in the subpoena] are privileged in whole or in part" – and - that OCR would not produce documents sought because they are "exempt from release under the FOIA . . . ." *See Exhibit A4* (containing DOE's Jan. 10, 2018 letter to attorney Eric Rosenberg regarding subpoena in *Doe v. The Ohio State University*)(emphasis added).

- The requested materials described can be emailed to erosenberg@rosenbergball.com (or) mailed to Eric Rosenberg's attention at: Rosenberg & Ball Co. Lpa., 395 North Pearl Street, Granville, Ohio 43023. In the alternative, if OCR would rather produce the materials in person at an address within 100 miles of its Cleveland offices, please let Eric Rosenberg know and he will provide OCR an address for such a location. If OCR has any questions, please do not hesitate to contact Eric Rosenberg at 740.644.1027.



**U.S. Department of Education**
*Office for Civil Rights*

### Notice of Language Assistance

**Notice of Language Assistance:** If you have difficulty understanding English, you may, free of charge, request language assistance services for this Department information by calling 1-800-USA-LEARN
(1-800-872-5327) (TTY: 1-800-877-8339), or email us at: Ed.Language.Assistance@ed.gov.

**Aviso a personas con dominio limitado del idioma inglés:** Si usted tiene alguna dificultad en entender el idioma inglés, puede, sin costo alguno, solicitar asistencia lingüística con respecto a esta información llamando al 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o envíe un mensaje de correo electrónico a: Ed.Language.Assistance@ed.gov.

**給英語能力有限人士的通知:** 如果您不懂英語，或者使用英语有困难,您可以要求獲得向大眾提供的語言協助服務,幫助您理解教育部資訊。這些語言協助服務均可免費提供。如果您需要有關口譯或筆譯服務的詳細資訊，請致電 1-800-USA-LEARN (1-800-872-5327) (聽語障人士專線：1-800-877-8339),或電郵: Ed.Language.Assistance@ed.gov.

**Thông báo dành cho những người có khả năng Anh ngữ hạn chế:** Nếu quý vị gặp khó khăn trong việc hiểu Anh ngữ thì quý vị có thể yêu cầu các dịch vụ hỗ trợ ngôn ngữ cho các tin tức của Bộ dành cho công chúng. Các dịch vụ hỗ trợ ngôn ngữ này đều miễn phí. Nếu quý vị muốn biết thêm chi tiết về các dịch vụ phiên dịch hay thông dịch, xin vui lòng gọi số 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), hoặc email: Ed.Language.Assistance@ed.gov.

**영어 미숙자를 위한 공고:** 영어를 이해하는 데 어려움이 있으신 경우, 교육부 정보 센터에 일반인 대상 언어 지원 서비스를 요청하실 수 있습니다. 이러한 언어 지원 서비스는 무료로 제공됩니다. 통역이나 번역 서비스에 대해 자세한 정보가 필요하신 경우, 전화번호 1-800-USA-LEARN (1-800-872-5327) 또는 청각 장애인용 전화번호 1-800-877-8339 또는 이메일주소 Ed.Language.Assistance@ed.gov 으로 연락하시기 바랍니다.

**Paunawa sa mga Taong Limitado ang Kaalaman sa English:** Kung nahihirapan kayong makaintindi ng English, maaari kayong humingi ng tulong ukol dito sa inpormasyon ng Kagawaran mula sa nagbibigay ng serbisyo na pagtulong kaugnay ng wika. Ang serbisyo na pagtulong kaugnay ng wika ay libre. Kung kailangan ninyo ng dagdag na impormasyon tungkol sa mga serbisyo kaugnay ng pagpapaliwanag o pagsasalin, mangyari lamang tumawag sa 1-800-USA-LEARN (1-800-872-5327) (TTY: 1-800-877-8339), o mag-email sa: Ed.Language.Assistance@ed.gov.

**Уведомление для лиц с ограниченным знанием английского языка:** Если вы испытываете трудности в понимании английского языка, вы можете попросить, чтобы вам предоставили перевод информации, которую Министерство Образования доводит до всеобщего сведения. Этот перевод предоставляется бесплатно. Если вы хотите получить более подробную информацию об услугах устного и письменного перевода, звоните по телефону 1-800-USA-LEARN (1-800-872-5327) (служба для слабослышащих: 1-800-877-8339), или отправьте сообщение по адресу: Ed.Language.Assistance@ed.gov.



September 22, 2017

Dear Colleague:

The purpose of this letter is to inform you that the Department of Education is withdrawing the statements of policy and guidance reflected in the following documents:

- Dear Colleague Letter on Sexual Violence, issued by the Office for Civil Rights at the U.S. Department of Education, dated April 4, 2011.

- Questions and Answers on Title IX and Sexual Violence, issued by the Office for Civil Rights at the U.S. Department of Education, dated April 29, 2014.

These guidance documents interpreted Title IX to impose new mandates related to the procedures by which educational institutions investigate, adjudicate, and resolve allegations of student-on-student sexual misconduct. The 2011 Dear Colleague Letter required schools to adopt a minimal standard of proof—the preponderance-of-the-evidence standard—in administering student discipline, even though many schools had traditionally employed a higher clear-and-convincing-evidence standard. The Letter insisted that schools with an appeals process allow complainants to appeal not-guilty findings, even though many schools had previously followed procedures reserving appeal for accused students. The Letter discouraged cross-examination by the parties, suggesting that to recognize a right to such cross-examination might violate Title IX. The Letter forbade schools from relying on investigations of criminal conduct by law-enforcement authorities to resolve Title IX complaints, forcing schools to establish policing and judicial systems while at the same time directing schools to resolve complaints on an expedited basis. The Letter provided that any due-process protections afforded to accused students should not "unnecessarily delay" resolving the charges against them.

Legal commentators have criticized the 2011 Letter and the 2014 Questions and Answers for placing "improper pressure upon universities to adopt procedures that do not afford fundamental fairness."[1] As a result, many schools have established procedures for resolving allegations that "lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation."[2]

The 2011 and 2014 guidance documents may have been well-intentioned, but those documents have

---

[1] Open Letter from Members of the Penn Law School Faculty, *Sexual Assault Complaints: Protecting Complainants and the Accused Students at Universities*, Wall St. J. Online (Feb. 18, 2015), http://online.wsj.com/public/resources/documents/2015_0218_upenn.pdf (statement of 16 members of the University of Pennsylvania Law School faculty).
[2] *Rethink Harvard's Sexual Harassment Policy*, Boston Globe (Oct. 15, 2014) (statement of 28 members of the Harvard Law School faculty); *see also* ABA Criminal Justice Section Task Force on College Due Process Rights and Victim Protections, Recommendations for Colleges and Universities in Resolving Allegations of Campus Sexual Misconduct (2017); American College of Trial Lawyers, Task Force on the Response of Universities and Colleges to Allegations of Sexual Violence, White Paper on Campus Sexual Assault Investigations (2017).

led to the deprivation of rights for many students—both accused students denied fair process and victims denied an adequate resolution of their complaints. The guidance has not succeeded in providing clarity for educational institutions or in leading institutions to guarantee educational opportunities on the equal basis that Title IX requires. Instead, schools face a confusing and counterproductive set of regulatory mandates, and the objective of regulatory compliance has displaced Title IX's goal of educational equity.

The Department imposed these regulatory burdens without affording notice and the opportunity for public comment. Under these circumstances, the Department has decided to withdraw the above-referenced guidance documents in order to develop an approach to student sexual misconduct that responds to the concerns of stakeholders and that aligns with the purpose of Title IX to achieve fair access to educational benefits. The Department intends to implement such a policy through a rulemaking process that responds to public comment. The Department will not rely on the withdrawn documents in its enforcement of Title IX.

The Department refers you to the *Q&A on Campus Sexual Misconduct*, issued contemporaneously with this letter, and will continue to rely on its *Revised Sexual Harassment Guidance*, which was informed by a notice-and-comment process and issued in 2001,[3] as well as the reaffirmation of that *Guidance* in the Dear Colleague Letter on Sexual Harassment issued January 25, 2006.[4] As always, the Department's enforcement efforts proceed from Title IX itself[5] and its implementing regulations.[6]

In the forty-five years since the passage of Title IX, we have seen remarkable progress toward an educational environment free of sex discrimination. That progress resulted in large part from the vigorous enforcement of Title IX by the Office for Civil Rights at the Department of Education. The Department remains committed to enforcing these critical protections and intends to do so consistent with its mission under Title IX to protect fair and equitable access to education.

The Department has determined that this letter is a significant guidance document under the Final Bulletin for Agency Good Guidance Practices of the Office of Management and Budget, 72 Fed. Reg. 3432 (Jan. 25, 2007). This letter does not add requirements to applicable law.[7]

Sincerely,

/s/

Candice Jackson
Acting Assistant Secretary for Civil Rights
U.S. Department of Education

---

[3] The *Revised Sexual Harassment Guidance* is available at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html.
[4] The 2006 Dear Colleague Letter is available at https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html.
[5] 20 U.S.C. §§ 1681-88.
[6] 34 C.F.R. § 106.1 *et seq.*; *see also* 34 C.F.R. § 668.46(k) (implementing requirements of the Violence Against Women Act).
[7] If you have questions or are interested in commenting on this letter, please contact the Department of Education at ocr@ed.gov or 800-421-3481 (TDD: 800-877-8339).



**September 2017**

**Q&A on Campus Sexual Misconduct**

Under Title IX of the Education Amendments of 1972 and its implementing regulations, an institution that receives federal funds must ensure that no student suffers a deprivation of her or his access to educational opportunities on the basis of sex. The Department of Education intends to engage in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct, including peer-on-peer sexual harassment and sexual violence. The Department will solicit input from stakeholders and the public during that rulemaking process. In the interim, these questions and answers—along with the *Revised Sexual Harassment Guidance* previously issued by the Office for Civil Rights[1]—provide information about how OCR will assess a school's compliance with Title IX.

## SCHOOLS' RESPONSIBILITY TO ADDRESS SEXUAL MISCONDUCT

Question 1:

What is the nature of a school's responsibility to address sexual misconduct?

Answer:

Whether or not a student files a complaint of alleged sexual misconduct or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately.[2] In particular, when sexual misconduct is so severe, persistent, or pervasive as to deny or limit a student's ability to participate in or benefit from the school's programs or activities, a hostile environment exists and the school must respond.[3]

---

[1] Office for Civil Rights, *Revised Sexual Harassment Guidance* (66 Fed. Reg. 5512, Jan. 19, 2001), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf [hereinafter 2001 Guidance]; *see also* Office for Civil Rights, Dear Colleague Letter on Sexual Harassment (Jan. 25, 2006), *available at* https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html.

[2] 2001 Guidance at (VII).

[3] *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 631 (1999); 34 C.F.R. § 106.31(a); 2001 Guidance at (V)(A)(1). Title IX prohibits discrimination on the basis of sex "under any education program or activity" receiving federal financial assistance, 20 U.S.C. § 1681(a); 34 C.F.R. § 106.1, meaning within the "operations" of a postsecondary institution or school district, 20 U.S.C. § 1687; 34 C.F.R. § 106.2(h). The Supreme Court has explained that the statute "confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs." *Davis*, 526 U.S. at 644. Accordingly, OCR has informed institutions that "[a] university does not have a duty under Title IX to address an incident of alleged harassment where the incident occurs off-campus and does not involve a program or activity of the recipient." Oklahoma State University Determination Letter at 2, OCR Complaint No. 06-03-2054 (June 10, 2004); *see also* University of Wisconsin-Madison Determination Letter, OCR Complaint No. 05-07-2074 (Aug. 6, 2009) ("OCR determined that the alleged assault did not occur in the context of an educational program or activity operated by the University."). Schools are responsible for redressing a hostile environment that occurs on campus even if it relates to off-campus activities. Under the Clery Act, postsecondary institutions are obliged to collect and report statistics on crimes that occur on campus, on noncampus properties controlled by the institution or an affiliated student organization and used for educational purposes, on public property within or immediately adjacent to campus, and in areas within the patrol jurisdiction of the campus police or the campus security department. 34 C.F.R. § 668.46(a); 34 C.F.R. § 668.46(c).

Each recipient must designate at least one employee to act as a Title IX Coordinator to coordinate its responsibilities in this area.[4] Other employees may be considered "responsible employees" and will help the student to connect to the Title IX Coordinator.[5]

In regulating the conduct of students and faculty to prevent or redress discrimination, schools must formulate, interpret, and apply their rules in a manner that respects the legal rights of students and faculty, including those court precedents interpreting the concept of free speech.[6]

## THE CLERY ACT AND TITLE IX

Question 2:

What is the Clery Act and how does it relate to a school's obligations under Title IX?

Answer:

Institutions of higher education that participate in the federal student financial aid programs are subject to the requirements of the Clery Act as well as Title IX.[7] Each year, institutions must disclose campus crime statistics and information about campus security policies as a condition of participating in the federal student aid programs. The Violence Against Women Reauthorization Act of 2013 amended the Clery Act to require institutions to compile statistics for incidents of dating violence, domestic violence, sexual assault, and stalking, and to include certain policies, procedures, and programs pertaining to these incidents in the annual security reports. In October 2014, following a negotiated rulemaking process, the Department issued amended regulations to implement these statutory changes.[8] Accordingly, when addressing allegations of dating violence, domestic violence, sexual assault, or stalking, institutions are subject to the Clery Act regulations as well as Title IX.

## INTERIM MEASURES

Question 3:

What are interim measures and is a school required to provide such measures?

Answer:

Interim measures are individualized services offered as appropriate to either or both the reporting and responding parties involved in an alleged incident of sexual misconduct, prior to an investigation or while an investigation is pending.[9] Interim measures include counseling, extensions of time or other course-related adjustments, modifications of work or class schedules, campus escort services, restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of campus, and other similar accommodations.

---

[4] 34 C.F.R. § 106.8(a).
[5] 2001 Guidance at (V)(C).
[6] Office for Civil Rights, Dear Colleague Letter on the First Amendment (July 28, 2003), *available at* https://www2.ed.gov/about/offices/list/ocr/firstamend.html; 2001 Guidance at (XI).
[7] Jeanne Clery Disclosure of Campus Security Policy and Campus Security Crime Statistics Act, Pub. L. No. 101-542, 20 U.S.C. § 1092(f).
[8] *See* 34 C.F.R. § 668.46.
[9] *See* 2001 Guidance at (VII)(A).

It may be appropriate for a school to take interim measures during the investigation of a complaint.[10] In fairly assessing the need for a party to receive interim measures, a school may not rely on fixed rules or operating assumptions that favor one party over another, nor may a school make such measures available only to one party. Interim measures should be individualized and appropriate based on the information gathered by the Title IX Coordinator, making every effort to avoid depriving any student of her or his education. The measures needed by each student may change over time, and the Title IX Coordinator should communicate with each student throughout the investigation to ensure that any interim measures are necessary and effective based on the students' evolving needs.

## GRIEVANCE PROCEDURES AND INVESTIGATIONS

Question 4:

What are the school's obligations with regard to complaints of sexual misconduct?

Answer:

A school must adopt and publish grievance procedures that provide for a prompt and equitable resolution of complaints of sex discrimination, including sexual misconduct.[11] OCR has identified a number of elements in evaluating whether a school's grievance procedures are prompt and equitable, including whether the school (i) provides notice of the school's grievance procedures, including how to file a complaint, to students, parents of elementary and secondary school students, and employees; (ii) applies the grievance procedures to complaints filed by students or on their behalf alleging sexual misconduct carried out by employees, other students, or third parties; (iii) ensures an adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence; (iv) designates and follows a reasonably prompt time frame for major stages of the complaint process; (v) notifies the parties of the outcome of the complaint; and (vi) provides assurance that the school will take steps to prevent recurrence of sexual misconduct and to remedy its discriminatory effects, as appropriate.[12]

Question 5:

What time frame constitutes a "prompt" investigation?

Answer:

There is no fixed time frame under which a school must complete a Title IX investigation.[13] OCR will evaluate a school's good faith effort to conduct a fair, impartial investigation in a timely manner designed to provide all parties with resolution.

Question 6:

What constitutes an "equitable" investigation?

---

[10] 2001 Guidance at (VII)(A). In cases covered by the Clery Act, a school must provide interim measures upon the request of a reporting party if such measures are reasonably available. 34 C.F.R. § 668.46(b)(11)(v).

[11] 34 C.F.R. § 106.8(b); 2001 Guidance at (V)(D); *see also* 34 C.F.R. § 668.46(k)(2)(i) (providing that a proceeding which arises from an allegation of dating violence, domestic violence, sexual assault, or stalking must "[i]nclude a prompt, fair, and impartial process from the initial investigation to the final result").

[12] 2001 Guidance at (IX); *see also* 34 C.F.R. § 668.46(k). Postsecondary institutions are required to report publicly the procedures for institutional disciplinary action in cases of alleged dating violence, domestic violence, sexual assault, and stalking, 34 C.F.R. § 668.46 (k)(1)(i), and to include a process that allows for the extension of timeframes for good cause with written notice to the parties of the delay and the reason for the delay, 34 C.F.R. § 668.46 (k)(3)(i)(A).

[13] 2001 Guidance at (IX); *see also* 34 C.F.R. § 668.46(k)(3)(i)(A).

Answer:

In every investigation conducted under the school's grievance procedures, the burden is on the school—not on the parties—to gather sufficient evidence to reach a fair, impartial determination as to whether sexual misconduct has occurred and, if so, whether a hostile environment has been created that must be redressed. A person free of actual or reasonably perceived conflicts of interest and biases for or against any party must lead the investigation on behalf of the school. Schools should ensure that institutional interests do not interfere with the impartiality of the investigation.

An equitable investigation of a Title IX complaint requires a trained investigator to analyze and document the available evidence to support reliable decisions, objectively evaluate the credibility of parties and witnesses, synthesize all available evidence—including both inculpatory and exculpatory evidence—and take into account the unique and complex circumstances of each case.[14]

Any rights or opportunities that a school makes available to one party during the investigation should be made available to the other party on equal terms.[15] Restricting the ability of either party to discuss the investigation (e.g., through "gag orders") is likely to deprive the parties of the ability to obtain and present evidence or otherwise to defend their interests and therefore is likely inequitable. Training materials or investigative techniques and approaches that apply sex stereotypes or generalizations may violate Title IX and should be avoided so that the investigation proceeds objectively and impartially.[16]

Once it decides to open an investigation that may lead to disciplinary action against the responding party, a school should provide written notice to the responding party of the allegations constituting a potential violation of the school's sexual misconduct policy, including sufficient details and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved, the specific section of the code of conduct allegedly violated, the precise conduct allegedly constituting the potential violation, and the date and location of the alleged incident.[17] Each party should receive written notice in advance of any interview or hearing with sufficient time to prepare for meaningful participation. The investigation should result in a written report summarizing the relevant exculpatory and inculpatory evidence. The reporting and responding parties and appropriate officials must have timely and equal access to any information that will be used during informal and formal disciplinary meetings and hearings.[18]

## INFORMAL RESOLUTIONS OF COMPLAINTS

Question 7:

After a Title IX complaint has been opened for investigation, may a school facilitate an informal resolution of the complaint?

Answer:

If all parties voluntarily agree to participate in an informal resolution that does not involve a full investigation and adjudication after receiving a full disclosure of the allegations and their options for formal resolution and if a school determines that the particular Title IX complaint is appropriate for such a process, the school may facilitate an informal resolution, including mediation, to assist the parties in reaching a voluntary resolution.

---

[14] 2001 Guidance at (V)(A)(1)-(2); *see also* 34 C.F.R. § 668.46(k)(2)(ii).
[15] 2001 Guidance at (X).
[16] 34 C.F.R. § 106.31(a).
[17] 2001 Guidance at (VII)(B).
[18] 34 C.F.R. § 668.46(k)(3)(i)(B)(3).

**DECISION-MAKING AS TO RESPONSIBILITY**

Question 8:

What procedures should a school follow to adjudicate a finding of responsibility for sexual misconduct?

Answer:

The investigator(s), or separate decision-maker(s), with or without a hearing, must make findings of fact and conclusions as to whether the facts support a finding of responsibility for violation of the school's sexual misconduct policy. If the complaint presented more than a single allegation of misconduct, a decision should be reached separately as to each allegation of misconduct. The findings of fact and conclusions should be reached by applying either a preponderance of the evidence standard or a clear and convincing evidence standard.[19]

The decision-maker(s) must offer each party the same meaningful access to any information that will be used during informal and formal disciplinary meetings and hearings, including the investigation report.[20] The parties should have the opportunity to respond to the report in writing in advance of the decision of responsibility and/or at a live hearing to decide responsibility.

Any process made available to one party in the adjudication procedure should be made equally available to the other party (for example, the right to have an attorney or other advisor present and/or participate in an interview or hearing; the right to cross-examine parties and witnesses or to submit questions to be asked of parties and witnesses).[21] When resolving allegations of dating violence, domestic violence, sexual assault, or stalking, a postsecondary institution must "[p]rovide the accuser and the accused with the same opportunities to have others present during any institutional disciplinary proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice."[22] In such disciplinary proceedings and any related meetings, the institution may "[n]ot limit the choice of advisor or presence for either the accuser or the accused" but "may establish restrictions regarding the extent to which the advisor may participate in the proceedings."[23]

Schools are cautioned to avoid conflicts of interest and biases in the adjudicatory process and to prevent institutional interests from interfering with the impartiality of the adjudication. Decision-making techniques or approaches that apply sex stereotypes or generalizations may violate Title IX and should be avoided so that the adjudication proceeds objectively and impartially.

---

[19] The standard of evidence for evaluating a claim of sexual misconduct should be consistent with the standard the school applies in other student misconduct cases. In a recent decision, a court concluded that a school denied "basic fairness" to a responding party by, among other things, applying a lower standard of evidence only in cases of alleged sexual misconduct. *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 607 (D. Mass. 2016) ("[T]he lowering of the standard appears to have been a deliberate choice by the university to make cases of sexual misconduct easier to prove—and thus more difficult to defend, both for guilty and innocent students alike. It retained the higher standard for virtually all other forms of student misconduct. The lower standard may thus be seen, in context, as part of an effort to tilt the playing field against accused students, which is particularly troublesome in light of the elimination of other basic rights of the accused."). When a school applies special procedures in sexual misconduct cases, it suggests a discriminatory purpose and should be avoided. A postsecondary institution's annual security report must describe the standard of evidence that will be used during any institutional disciplinary proceeding arising from an allegation of dating violence, domestic violence, sexual assault, or stalking. 34 C.F.R. § 668.46(k)(1)(ii).

[20] 34 C.F.R. § 668.46(k)(3)(i)(B)(3).

[21] A school has discretion to reserve a right of appeal for the responding party based on its evaluation of due process concerns, as noted in Question 11.

[22] 34 C.F.R. § 668.46(k)(2)(iii).

[23] 34 C.F.R. § 668.46(k)(2)(iv).

**DECISION-MAKING AS TO DISCIPLINARY SANCTIONS**

Question 9:

What procedures should a school follow to impose a disciplinary sanction against a student found responsible for a sexual misconduct violation?

Answer:

The decision-maker as to any disciplinary sanction imposed after a finding of responsibility may be the same or different from the decision-maker who made the finding of responsibility. Disciplinary sanction decisions must be made for the purpose of deciding how best to enforce the school's code of student conduct while considering the impact of separating a student from her or his education. Any disciplinary decision must be made as a proportionate response to the violation.[24] In its annual security report, a postsecondary institution must list all of the possible sanctions that the institution may impose following the results of any institutional disciplinary proceeding for an allegation of dating violence, domestic violence, sexual assault, or stalking.[25]

**NOTICE OF OUTCOME AND APPEALS**

Question 10:

What information should be provided to the parties to notify them of the outcome?

Answer:

OCR recommends that a school provide written notice of the outcome of disciplinary proceedings to the reporting and responding parties concurrently. The content of the notice may vary depending on the underlying allegations, the institution, and the age of the students. Under the Clery Act, postsecondary institutions must provide simultaneous written notification to both parties of the results of the disciplinary proceeding along with notification of the institution's procedures to appeal the result if such procedures are available, and any changes to the result when it becomes final.[26] This notification must include any initial, interim, or final decision by the institution; any sanctions imposed by the institution; and the rationale for the result and the sanctions.[27] For proceedings not covered by the Clery Act, such as those arising from allegations of harassment, and for all proceedings in elementary and secondary schools, the school should inform the reporting party whether it found that the alleged conduct occurred, any individual remedies offered to the reporting party or any sanctions imposed on the responding party that directly relate to the reporting party, and other steps the school has taken to eliminate the hostile environment, if the school found one to exist.[28] In an elementary or secondary school, the notice should be provided to the parents of students under the age of 18 and directly to students who are 18 years of age or older.[29]

---

[24] 34 C.F.R. § 106.8(b); 2001 Guidance at (VII)(A).

[25] 34 C.F.R. § 668.46(k)(1)(iii).

[26] 34 C.F.R. § 668.46(k)(2)(v). The Clery Act applies to proceedings arising from allegations of dating violence, domestic violence, sexual assault, and stalking.

[27] 34 C.F.R. § 668.46(k)(3)(iv).

[28] A sanction that directly relates to the reporting party would include, for example, an order that the responding party stay away from the reporting party. *See* 2001 Guidance at vii n.3. This limitation allows the notice of outcome to comply with the requirements of the Family Educational Rights and Privacy Act. *See* 20 U.S.C. § 1232g(a)(1)(A); 34 C.F.R. § 99.10; 34 C.F.R. § 99.12(a). FERPA provides an exception to its requirements only for a postsecondary institution to communicate the results of a disciplinary proceeding to the reporting party in cases of alleged crimes of violence or specific nonforcible sex offenses. 20 U.S.C. § 1232g(b)(6); 34 C.F.R. § 99.31(a)(13).

[29] 20 U.S.C. § 1232g(d).

Question 11:

How may a school offer the right to appeal the decision on responsibility and/or any disciplinary decision?

Answer:

If a school chooses to allow appeals from its decisions regarding responsibility and/or disciplinary sanctions, the school may choose to allow appeal (i) solely by the responding party; or (ii) by both parties, in which case any appeal procedures must be equally available to both parties.[30]

## EXISTING RESOLUTION AGREEMENTS

Question 12:

In light of the rescission of OCR's 2011 Dear Colleague Letter and 2014 Questions & Answers guidance, are existing resolution agreements between OCR and schools still binding?

Answer:

Yes. Schools enter into voluntary resolution agreements with OCR to address the deficiencies and violations identified during an OCR investigation based on Title IX and its implementing regulations. Existing resolution agreements remain binding upon the schools that voluntarily entered into them. Such agreements are fact-specific and do not bind other schools. If a school has questions about an existing resolution agreement, the school may contact the appropriate OCR regional office responsible for the monitoring of its agreement.

*Note:* The Department has determined that this Q&A is a significant guidance document under the Final Bulletin for Agency Good Guidance Practices of the Office of Management and Budget, 72 Fed. Reg. 3432 (Jan. 25, 2007). This document does not add requirements to applicable law. If you have questions or are interested in commenting on this document, please contact the Department of Education at ocr@ed.gov or 800-421-3481 (TDD: 800-877-8339).

---

[30] 2001 Guidance at (IX). Under the Clery Act, a postsecondary institution must provide simultaneous notification of the appellate procedure, if one is available, to both parties. 34 C.F.R. § 668.46(k)(2)(v)(B). OCR has previously informed schools that it is permissible to allow an appeal only for the responding party because "he/she is the one who stands to suffer from any penalty imposed and should not be made to be tried twice for the same allegation." Skidmore College Determination Letter at 5, OCR Complaint No. 02-95-2136 (Feb. 12, 1996); *see also* Suffolk University Law School Determination Letter at 11, OCR Complaint No. 01-05-2074 (Sept. 30, 2008) ("[A]ppeal rights are not necessarily required by Title IX, whereas an accused student's appeal rights are a standard component of University disciplinary processes in order to assure that the student is afforded due process before being removed from or otherwise disciplined by the University."); University of Cincinnati Determination Letter at 6, OCR Complaint No. 15-05-2041 (Apr. 13, 2006) ("[T]here is no requirement under Title IX that a recipient provide a victim's right of appeal.").



**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE FOR CIVIL RIGHTS, REGION XV**

1350 EUCLID AVENUE, SUITE 325
CLEVELAND, OH 44115

REGION XV
MICHIGAN
OHIO

December 10, 2015

Ms. Ellen L. Foell, Esq.
Rosenberg & Ball Co., LPA
395 North Pearl Street
Granville, Ohio 43023

Re: FOIA Number 15-02101-F

Dear Ms. Foell:

On August 20, 2015, the U.S. Department of Education (Department), Office for Civil Rights (OCR), received your August 20, 2015, request for records pertaining to OCR dockets ## 15-14-2128 and 15-15-2166. Your request constitutes a request for information under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA).

Mr. Donald S. Yarab, Supervisory Attorney, and you communicated via telephone and email on October 5, and 8, 2015, during which communications you narrowed your request to the following records related to OCR Docket Nos. 15-14-2128 and 15-15-2166:

1. A copy of any complaint with submitted supporting documentation;
2. A copy of any interview of the complainant conducted by OCR during OCR's intake evaluation of the complaint;
3. A copy of any correspondence between the complainant and OCR exchanged during OCR's intake evaluation of the complaint;
4. A copy of OCR's letter of notification to the recipient regarding the complaint;
5. A copy of OCR's data request letter to the recipient regarding the complaint.
6. A copy of any resolution letter or disposition letter regarding the complaint; and
7. A copy of any resolution agreement regarding the complaint.

The Department has determined that you are a commercial requestor and, as such, subject to fees for processing the request. During the October 5 and 8 communications, you advised Mr. Yarab that you authorized up to $150.00 in fees related to processing this request.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*
*www.ed.gov*
Exhibit A3, p.1     **Exhibit 1, page 1**

Page 2 – Ms. Ellen L. Foell, Esq.

Your request for documents from OCR's official files has been processed according to the provisions of FOIA. The policy of the Department is generally one of full disclosure limited only by the exemptions delineated in the FOIA. The Department makes determinations on a case-by-case basis regarding whether or not it is appropriate to release records.

The Department has conducted a thorough search of its files and identified 24 pages responsive to your request. The Department has carefully reviewed the records and has determined that it is able to release six pages without redaction and five pages with partial redactions made pursuant to the exemptions of the FOIA discussed below. The Department has also determined that it must withhold 13 pages in their entirety pursuant to the exemptions of the FOIA discussed below. This determination constitutes a partial denial of your request for records pursuant to 5 U.S.C.§ 522(b)(6) (Exemption (6)); 5 U.S.C. § Section 552(b)(7)(C) (Exemption 7(C)); and 5 U.S.C. § 552(b)(7)(A) (Exemption 7(A)).

Under Exemption 6, an agency is permitted to withhold information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Similarly, Exemption 7(C) permits the withholding of records or information compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. A balancing of the privacy interests versus the public interests is necessary when determining whether information should be withheld. In this case, the Department has determined that the identified privacy interests outweigh the identified public interests and has redacted personally identifiable information from the responsive records pursuant to the requirements of Exemptions 6 and 7(C). Additionally, Exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings..." The Department has determined that certain records from OCR Docket No. 15-14-2128, which is still being investigated by OCR, will be withheld in their entirety pursuant to Exemption 7(A).

You have the right to appeal this partial denial determination by writing, within 35 days of your receipt of this letter, to:

> Assistant Secretary for Management
> Office of Management
> U.S. Department of Education
> 400 Maryland Avenue, S.W.
> Room 2W311, LBJ
> Washington, DC 20202-4500
> ATTN: FOIA Appeals

An appeal form is available at http://www2.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf. Appeals may also be made via e-mail to EDFOIAappeals@ed.gov or by fax to

Page 3 – Ms. Ellen L. Foell, Esq.

(202) 401-0920. Your appeal should be accompanied by a copy of your initial request and this partial denial letter and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

The responsive documents released total 11 pages. The search, review, and duplication fees related to this FOIA request are $45.28.

Please submit payment in the amount of $45.28 to:

> U.S. Department of Education
> Office of Management
> Attn: FOIA Requester Service Center
> 400 Maryland Avenue, SW,
> PCP, 9th Floor
> Washington, DC 20202-4651

Please write the check out to "The U.S. Department of Education," and indicate "Cleveland OCR FOIA Request No. 15-02101-F" in the notes section. Please note that if payment is not received, future requests will require advance payment.

If you have any questions about this letter, please contact Mr. Donald S. Yarab, Supervisory Attorney/Team Leader, at (216) 522-7634.

Sincerely,

Meena Morey Chandra
Regional Denial Officer

Enclosures



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS, REGION XV

1350 EUCLID AVENUE, SUITE 325
CLEVELAND, OH 44115

REGION XV
MICHIGAN
OHIO

March 7, 2014

Adam S. Weinberg, Ph.D.
President
Denison University
P.O. Box 713
Granville, Ohio 43023

Re: OCR Docket #15-14-2128

Dear Dr. Weinberg:

On February 19, 2014, the U.S. Department of Education's Office for Civil Rights (OCR)
received a complaint filed against Denison University (the University). The complaint
alleges that the University discriminated on the basis of sex. Specifically, the complaint
alleges that the University failed to promptly and equitably respond to complaints, reports
and/or incidents of sexual violence of which it had notice, including a (b)(6); (b)(7(C),(b)
report of sexual assault made by a female student (the Student), and, as a result, students,
including the Student, were subjected to a sexually hostile environment.

OCR is responsible for enforcing Title IX of the Education Amendments of 1972,
20 U.S.C. § 1681 *et seq.*, and its implementing regulation, at 34 C.F.R. Part 106, which
prohibit discrimination on the basis of sex in education programs and activities operated
by recipients of Federal financial assistance from the Department. As a recipient of such
financial assistance, the University is subject to Title IX.

Because OCR has determined that we have jurisdiction over the allegation and that this
complaint was filed timely, we are opening the allegation for investigation. Based on the
complaint allegation, we will investigate the following legal issues:

1.  Whether the University provided prompt and equitable responses to sexual
    violence complaints, reports, and/or other incidents of which it had notice
    (knew about or should have known about) as required by the Title IX
    implementing regulation at 34 C.F.R. §§ 106.8 and 106.31.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*
*www.ed.gov*

Page 2 – Dr. Adam S. Weinberg

      a.    Whether the University complied with the requirements of the Title IX regulation at 34 C.F.R. § 106.9 regarding notice of nondiscrimination.

      b.    Whether the University complied with the requirements of the Title IX regulation at 34 C.F.R. §§ 106.8 and 106.9(a) regarding the designation and notice of a Title IX coordinator.

2.    Whether any failure by the University to provide a prompt and equitable response allowed a student or students and/or the campus, generally, to continue to be subjected to a sexually hostile environment that denied or limited a student or students' ability to participate in or benefit from the University's programs, in violation of the Title IX implementing regulation at 34 C.F.R. §§ 106.8 and 106.31.

Please note that opening an allegation for investigation in no way implies that OCR has made a determination with regard to its merits. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from the complainant, the recipient, and other sources as appropriate. OCR will ensure that the investigation is legally sufficient and is dispositive of the allegation in accordance with the provisions of Article III of OCR's Case Processing Manual.

For your reference, the enclosed document, entitled "OCR Complaint Processing Procedures," includes information about:

- OCR's complaint evaluation and resolution procedures, including the availability of Early Complaint Resolution (ECR);

- regulatory prohibitions against retaliation, intimidation and harassment of persons who file complaints with OCR or participate in an OCR investigation; and

- the application of the Freedom of Information Act and the Privacy Act to OCR investigations.

Additional information about the laws OCR enforces is available on our website at http://www.ed.gov/ocr.

OCR intends to conduct a prompt investigation of this complaint. The Title VI regulation, at 34 C.F.R. § 100.6, requires that a recipient of Federal financial assistance make available to OCR information that may be pertinent to reaching a compliance determination. The Title IX regulation incorporates those requirements by reference at 34 C.F.R. §106.71. In addition, in accordance with the Title VI regulation at 34 C.F.R. § 100.6(c) and with the regulation implementing the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, at 34 C.F.R. § 99.31(a)(3)(iii), OCR may review personally identifiable records without regard to considerations of privacy or confidentiality.

Page 3 – Dr. Adam S. Weinberg

Accordingly, we are requesting that you forward the following information to us within 15 calendar days of the date stamped at the top of this letter. Wherever possible, please provide the requested information on a CD (and bates-labeled if you have that capability); otherwise please provide the information via hard copy:

1.  a copy of any University policies or procedures in effect during the 2011-2012, 2012-2013, and 2013-2014 school years that address discrimination and harassment based on sex, including sexual violence, involving students, employees, and third parties, including sexual violence/misconduct/harassment policies and procedures, Title IX grievance procedures, applicable disciplinary procedures and codes, appeal procedures, and nondiscrimination notices;

2.  if any of the above policies or procedures changed over the applicable time period, please provide a copy of all documents that reflect each change and note the date(s) when the new policy or procedure became applicable;

3.  the name(s) and title(s) of the University's Title IX coordinator(s), and any deputy or co-coordinator(s).  In addition, please note when each individual assumed his or her position, and provide an explanation of how that person or persons' identity and contact information are disseminated to students, faculty, staff, and administrators;

4.  the names and titles of any University personnel, other than those listed in response to request number 3, responsible for investigating incidents of discrimination and harassment based on sex or implementing any part of the University's Title IX grievance process;

5.  a description of how the University handles criminal complaints and the effect that criminal complaints have on the University's Title IX investigation process; the names and titles of any University designated contact person for related criminal investigations; and the process used by the University in communicating with local prosecutors about the status of criminal investigations;

6.  a description of law enforcement's role in the University's Title IX investigation process, including a copy of any memoranda of understanding with campus and local law enforcement or related protocols;

7.  a description of how the University handles requests for confidentiality by those reporting incidents of discrimination and harassment based on sex, including sexual violence;

Page 4 – Dr. Adam S. Weinberg

8. a detailed description of the University's electronic conduct management system (the ADVOCATE), including how it works and its role with respect to the reporting of sexual harassment, sexual assault or sexual violence complaints; include the names and titles of all individuals who have access to review information relayed to the system and the name and title of the individual responsible for monitoring the system;

9. a copy of all documentation concerning any formal or informal complaints or reports of sexual harassment made to the University (including, but not limited to those received by University personnel, campus security, University housing residential advisors, Denison Health Services, Title IX Coordinator, Associate Dean and Director of Student Conduct, Human Resources, Vice President of Student Development or those received elsewhere and then referred to the University) or investigated/ resolved by the University during the 2011-2012, 2012-2013, and 2013-2014 school years. The documentation should reflect all steps of the complaint process through the final resolution, including all levels of the appeal process available through the University, and shall include:

   a. a copy of any written complaints or reports, and a detailed description of any verbal complaints;

   b. a copy of all investigative files, interview memoranda, witness statements, and related documents concerning any University investigation of these complaints or reports;

   c. a copy of any documents showing the steps of the investigation and the results of the University's investigation, including any correspondence, e-mails, and other documents, as well as how the University notified pertinent parties of the outcome of each investigation;

   d. a detailed description of any action the University took to stop any harassment or discrimination and to prevent any additional discrimination or harassment based on sex, while each complaint or report identified in response to request 8(a) above was being investigated (interim measures) by the University or other law enforcement entities or after the investigation concluded;

   e. a copy of any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action the University took in response to each complaint or report identified in response to request 8(a) above; and

Page 5 – Dr. Adam S. Weinberg

        f.     for each complaint or report of alleged sexual harassment and/or violence responsive to this request, identify (1) whether the University found that the complainant and/or other students were sexually harassed/assaulted; (2) whether the University found that any complaint was part of a larger pattern of similar complaints; (3) whether the University made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment; and (4) whether any of the University's findings, actions, or conclusions were reversed, overturned, or affirmed through a subsequent appeal process;

10.    if not included in responses above, copies of all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by University faculty, staff, administration, and/or Trustees during the 2011-2012, 2012-2013, and 2013-2014 school years that discuss, relate, or refer to the complaints or reports identified under request 8 above;

11.    copies of any notes, agendas, summaries, or follow-up communication related to any meetings during the 2011-2012, 2012-2013, and 2013-2014 school years between University staff and the complaining student(s) regarding any allegations of, or remedies for, sexual harassment;

12.    a description and copies, if applicable, of any steps the University took during the 2011-2012, 2012-2013, and 2013-2014 school years to make students, faculty, and staff at the University aware of the policies and procedures identified in response to requests 1 or 2 above, such as publications, website statements, and/or training;

13.    a description of the ways in which the University communicates with students, staff, and other members of the campus community about its processes for addressing sexual harassment and violence (for example, through its web site, specific publications, specific other electronic means, etc.);

14.    a description of any training regarding Title IX as it applies to sexual harassment, including sexual assault and violence, the University provided or offered to (1) University personnel; and (2) University students during 2011-2012, 2012-2013, and 2013-2014 school years. For each training, include the date of the training; the target audience (e.g., coaches, residence hall staff, etc.); copies of any related materials distributed at the trainings; and a description of the background/expertise of the individual who provided training;

Page 6 – Dr. Adam S. Weinberg

15. copies of any and all brochures, pamphlets, or other materials that are disseminated to by the University to students regarding sexual harassment, the rights of complainants and accused individuals, and/or other campus resources available to assist those facing sexual harassment/violence;

16. a description of the University's collaborative efforts with any advocacy groups on and off campus to prevent sexual harassment, misconduct, and violence and to notify students and employees of their rights under Title IX;

17. a list of campus organizations and other resources for students that address students' concerns or issues related to sexual harassment (including, but not limited to, women's or men's organizations; lesbian, gay, bisexual, transgender, or alliance organizations; and rape crisis centers, sexual assault support networks, or other similar agencies); include contact information for each organization, and how information about these organizations is disseminated to students;

18. a description of how the University has assessed the campus climate regarding sexual harassment issues, conducted self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for school years 2011-2012, 2012-2013, and 2013-2014. Please provide any summaries or interim or final reports that describe the outcome of these efforts; and

19. any other information you believe relevant to the complaint allegations.

Thank you for your cooperation in this matter. We also may need to interview individuals at the University with knowledge of the facts of this case. If we determine that an on-site visit is necessary, we will contact you to schedule a mutually convenient time for our visit.

Upon receipt of this letter, please notify OCR of the name, address, and telephone number of the person who will serve as the University's contact person during OCR's investigation. If you have any questions, please contact Denise Vaughn, the OCR attorney who has been assigned to investigate this complaint, by telephone at (216) 522-7574 or by e-mail at Denise.C.Vaughn@ed.gov.

Sincerely,

Kelly M. Johnson
Team Leader

Enclosure

**Sample, Tanya W.**

| | |
|---|---|
| **From:** | OCR |
| **Sent:** | Monday, March 16, 2015 5:39 PM |
| **To:** | OCR Cleveland |
| **Subject:** | FW: Title IX complaint against Denison University |
| **Attachments:** | title ix (3).docx |

March 16, 2015

Director Meena Chandra
Office for Civil Rights, Cleveland Office
U.S. Department of Education
1350 Euclid Avenue, Suite 325
Cleveland, OH 44115

Dear Ms. Chandra:

I am forwarding the enclosed email inquiry to your office for further review and appropriate handling.

Thank you for your prompt attention to this matter.

Sincerely,

Tamara Merges
Customer Service Team
Office for Civil Rights

Enclosure

cc: (b)(6); (b)(7(C)

From: OCR
Sent: Monday, March 16, 2015 2:37 PM
To: (b)(6); (b)(7(C)
Subject: RE: Title IX complaint against Denison University

March 16, 2015

Dear (b)(6); (b)(7(C)

I am pleased to respond to your correspondence February 27, 2015, to the U. S. Department of Education's (Department) Office for Civil Rights (OCR), Customer Service Team, reference your Title IX complaint against Denison University:

OCR is responsible for enforcing five federal civil rights laws that prohibit discrimination based on race, color, national origin, sex, disability and age by recipients of federal financial assistance. These laws are:

- Title VI of the Civil Rights Act of 1964 (prohibiting discrimination based on race, color and national origin);
- Title IX of the Education Amendments of 1972 (prohibiting sex discrimination);
- Section 504 of the Rehabilitation Act of 1973 (prohibiting disability discrimination);
- The Age Discrimination Act of 1975 (prohibiting age discrimination); and
- Title II of the Americans with Disabilities Act of 1990 (prohibiting disability discrimination by public entities, e.g., public elementary and secondary school systems, postsecondary schools, and vocational education programs, whether or not they receive federal financial assistance).

In addition, OCR enforces the Boy Scouts of America Equal Access Act, which addresses equal access to school facilities for the Boy Scouts and other specific youth groups.

I am forwarding your complaint to OCR's Cleveland Enforcement Office for further review and appropriate handling. The Cleveland Office is responsible for investigations of educational institutions in Ohio and may be able to provide technical assistance to you.

If you wish, you may contact the Cleveland Office directly at the following street mail address, e-mail address, or telephone and facsimile numbers.

> Office for Civil Rights, Cleveland Office
> U.S. Department of Education
> 1350 Euclid Avenue, Suite 325
> Cleveland, OH 44115
> Telephone: 216-522-4970
> TTY: 800-877-8339
> Email: OCR.Cleveland@ed.gov

I hope the information provided is of assistance.

> Sincerely,
>
> Tamara Merges
> Customer Service Team
> Office for Civil Rights

cc: Cleveland Office

March 16, 2015

Director Meena Chandra
Office for Civil Rights, Cleveland Office
U.S. Department of Education

2

1350 Euclid Avenue, Suite 325
Cleveland, OH 44115

Dear Ms. Chandra:

I am forwarding the enclosed email inquiry to your office for further review and appropriate handling.

Thank you for your prompt attention to this matter.

Sincerely,


Tamara Merges
Customer Service Team
Office for Civil Rights


Enclosure

cc: (b)(6); (b)(7(C)


From: (b)(6); (b)(7(C)
Sent: Friday, February 27, 2015 7:04 PM
To: OCR
Subject: Title IX complaint against Denison University



**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE FOR CIVIL RIGHTS, REGION XV**

1350 EUCLID AVENUE, SUITE 325
CLEVELAND, OH 44115

REGION XV
MICHIGAN
OHIO

April 17, 2015

(b)(6); (b)(7)(C)

Re: OCR Docket #15-15-2166

Dear (b)(6); (b) :

On March 17, 2015, the U.S. Department of Education's Office for Civil Rights (OCR)
received your complaint against Denison University (the University). The complaint
alleged that the University discriminated against you based on your sex by failing to
respond appropriately after you made a report of sexual assault in (b)(6); (b)

OCR is responsible for enforcing Title IX of the Education Amendments of 1972,
20 U.S.C. § 1681 *et seq.*, and its implementing regulation, at 34 C.F.R. Part 106, which
prohibit discrimination on the basis of sex in education programs and activities operated
by recipients of Federal financial assistance from the U.S. Department of Education. As
a recipient of such financial assistance, the University is subject to Title IX.

To conduct an investigation of this complaint, OCR would need to disclose your identity
to the University. On (b)(6); (b)(7)(C)
(b)(6); (b)(7)(C)                                                          Since OCR
cannot investigate this complaint without your written consent to disclose your identity,
OCR is closing your complaint effective the date of this letter.

OCR notes that it is currently addressing the systemic issue of whether the University
promptly and equitably responds to complaints alleging sex discrimination, including
sexual harassment and sexual assault, as required by Title IX of the Education
Amendments of 1972, through a pending OCR complaint.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*
*www.ed.gov*

Exhibit A3, p.13   **Exhibit 1, page 13**

Page 2 - (b)(6); (b)(7(C)

If you have any questions concerning this matter, please contact Julianne Gran, the OCR staff member assigned to process your complaint, by telephone at (216) 522-2684, or by e-mail at Julianne.Gran@ed.gov.

Sincerely,

Kelly M. Johnson
Supervisory Attorney/Team Leader



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS, REGION XV

1350 EUCLID AVENUE, SUITE 325
CLEVELAND, OH 44115

REGION XV
MICHIGAN
OHIO

January 10, 2018

**Via email at erosenberg@rosenbergball.com and regular mail**

Eric Rosenberg, Esq.
Rosenberg & Ball Co., LPA
395 North Pearl Street
Granville, Ohio 43023

> Re: Third Subpoena in *John Doe v. The Ohio State Univ.*, Civil Action No. 2:16-cv-171,
> United States District Court for the Southern District of Ohio

Dear Mr. Rosenberg:

I write in response to the above-referenced subpoena, dated December 27, 2017, directed at the
U.S. Department of Education (Department), Office for Civil Rights (OCR), Cleveland Regional
Office. This is the third subpoena you have sent to the Department in the above-captioned
lawsuit.

As background, on October 12, 2017, I sent you a letter objecting to your first subpoena and
explaining why it was defective. On November 2, 2017, I sent you a letter objecting to your
second subpoena and explaining why it was defective. On November 14, 2017, the Department
moved to quash both subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(3) in the U.S.
District Court for the Southern District of Ohio. On November 17, 2017, you informed the
Department you were withdrawing the subpoenas and, shortly thereafter, you requested
documents under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Accordingly, on
November 20, 2017, the Department withdrew its motion to quash the subpoenas as moot.

Also on November 20, 2017, the Department confirmed receipt of your November 17, 2017,
FOIA request and identified it as FOIA Request No. 18-00485-F. You requested the following
documents in your FOIA request:

> 1. All document(s) and communication(s) created between April 4, 2011 and August 7,
> 2015 - which DOE[1] has not provided to [The Ohio State University (OSU)] - that relate
> to any investigation(s) DOE conducted regarding OSU's implementation of [Title IX of
> the Education Amendments of 1972 (Title IX)].[2]

---

[1] Although DOE is the abbreviation generally used for the U.S. Department of Energy, you indicated in your
correspondence to the Department that you intend "DOE" to refer to the U.S. Department of Education.
[2] 20 U.S.C. 1681 *et seq.* Title IX prohibits sex discrimination in educational programs or activities that receive
Federal funds, including, among other things, sexual misconduct. *See also* 34 C.F.R. Part 106.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.*
*www.ed.gov*
**Exhibit A4, p.1**

2. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to any complaint DOE received regarding OSU's implementation of Title IX.

3. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015- which DOE has not provided to OSU - that relate to OSU's implementation of Title IX.

4. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015- which DOE has not provided to OSU - that relate to OSU's Title IX policies.

5. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015- which DOE has not provided to OSU - that relate to OSU's sexual misconduct policies.

On November 28, 2017, the OCR Cleveland Regional Office explained in a letter to you that the initial estimate of charges for the Department to conduct an initial search for documents responsive to FOIA Request No. 18-00485-F was $20,097.00. The letter stated that under the Department's implementing regulation, at 34 C.F.R. § 5.32(c), when the Department estimates that the fees for processing a FOIA request will total more than $25 and the requester has not stated a willingness to pay such fees, the Department notifies the requester of the anticipated amount of the fees before processing the FOIA request and will not further process the request until the requester agrees in writing to pay the anticipated total fee. The letter also explained that, under 34 C.F.R. § 5.32(g)(2), where the Department estimates that fees for processing a FOIA request will total more than $250, it may require the requester to pay the fees in advance. Thus, the Department requested advance payment and explained that it was suspending the processing of your request pending receipt of such payment. Alternatively, the letter provided the name and contact information for Traci Ext, the Chief Attorney in the OCR Cleveland Regional Office, to discuss narrowing the request to specific relevant records, which could "significantly reduce the search, review, and duplication fees." As of the date of this letter, you have not contacted Ms. Ext to discuss narrowing your FOIA request. Instead, on December 20, 2017, you emailed Leah Wolfe, the Assistant United States Attorney who filed the November 14, 2017, motion to quash, and indicated that you "plan[ned] on issuing a subpoena" in the above-captioned lawsuit "in the next week." On January 3, 2018, the OCR Cleveland Regional Office administratively closed FOIA Request No. 18-00485-F because payment had not been received and you had not had contacted the Department to narrow the request.

The Department's Office of the General Counsel received a copy of the third subpoena on January 2, 2018, and the OCR Cleveland Regional Office received the third subpoena on January 8, 2018.

The third subpoena, which seeks production of documents on January 19, 2018, at 1:34 p.m., commands the Department to:

[P]roduce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, and sampling of the material: See attached Exhibit A for materials required in this subpoena.

Exhibit A attached to the third subpoena identifies the following five categories of requested documents and communications (documents):

> 1. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to any investigation(s) DOE conducted regarding OSU's implementation of Title IX.

> 2. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to any complaint DOE received regarding OSU 's implementation of Title IX.

> 3. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to OSU's implementation of Title IX.

> 4. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to OSU's Title IX policies.

> 5. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE has not provided to OSU - that relate to OSU's sexual misconduct policies.

Department regulations at 34 C.F.R. § 8.5(b) prohibit the custodian of records from releasing information contained in Department files without the specific written authorization from the U.S. Secretary of Education (Secretary). Section 8.5(c) provides that the Secretary may grant such authorization if the Secretary determines, among other things, that doing so would: (1) be appropriate under the rules of procedure governing the matter in which the demand arises and other applicable laws, rules, and regulations, and (2) not be contrary to an interest of the United States, which includes furthering a public interest of the Department and protecting the human and financial resources of the United States. The Secretary has delegated the authority to permit Departmental employees to give testimony and to produce records to each of the principal officers in the Department for employees under that officer's supervisory authority. The Secretary has delegated this authority to the Acting Assistant Secretary for Civil Rights, Candice Jackson.

The Supreme Court of the United States has specifically recognized the authority of a Federal agency to restrict the testimony of employees or the production of documents. *See United States ex rel. Touhy v. Ragen et al.*, 340 U.S. 462 (1951). In addition to concluding your third subpoena is defective under 34 C.F.R. § 8.3(c), discussed *supra*, in accordance with *Touhy* and 34 C.F.R. § 8.5, Acting Assistant Secretary Jackson has made the requisite determinations and also concluded that: (1) compliance with the third subpoena would not be appropriate under the rules of procedure governing the matter in which the demand arises and other applicable laws, rules, and regulations; and, (2) production of the records requested under the third subpoena would be contrary to the interests of the Department and the United States.

I.   Acting Assistant Secretary Jackson has determined that compliance with the third
     subpoena is not appropriate under the rules of procedure governing the matter in which
     the demand arises as well as other applicable laws, rules, and regulations.

Rule 45 of the *Federal Rules of Civil Procedure* governs subpoenas in Federal litigation, and
requires that reasonable steps be taken by the issuing party to "avoid imposing undue burden or
expense" on the responding party. Fed. R. Civ. P. 45(d)(1). Similarly, with regard to producing
electronically stored information, Rule 45 affirms that production is not necessary if the
requested information is "not reasonably accessible because of undue burden or cost." Fed. R.
Civ. P. 45(e)(1)(D).

Rule 26 of the *Federal Rules of Civil Procedure*, which concerns the scope of discovery and
proportionality, also governs this matter. Under Rule 26, "[p]arties may obtain discovery
regarding any non-privileged matter that is . . . proportional to the needs of the case, considering
the amount in controversy, the importance of the issues at stake in the action, the parties'
resources, the importance of the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Here, the Department is not a party to this private lawsuit. While you claim that providing the
requested documents will "likely advance DOE's goals of ensuring universities like Defendant
OSU will conduct disciplinary proceedings in the gender-neutral fashion required by Title IX"
and that your client has the "ability to advance the goals of OCR and the American Government
to eliminate gender-bias by universities such as OSU," in fact, responding to your third subpoena
would divert the Department's financial resources and human capital from enforcement of Title
IX for the sole benefit of your client in a private lawsuit against one university. Further, the
scope of the third subpoena is excessively broad and disproportionate to the claims in your
client's lawsuit. For instance, you define "Document" as every original, draft, and duplicate of
every writing and recording of every type and description; you define "Communication" as any
oral, written, spoken or electronic transmission of information, including but not limited to,
meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages,
postings, instructions, conferences, or seminars or any other exchange of information between
the Department or between the Department and any other person or entity; you define "DOE"
and "OSU" as including all employees, officers, attorneys, representatives, and agents[3]; and you
define "Sexual Misconduct" as including sexual misconduct, sexual violence, sexual assault,
sexual harassment, relationships violence, and stalking. You even seek documents and
communications that indirectly "mention[]" or "reflect[] upon the subject matter of the request,"
which is vague and unclear. Not only are these overbroad requests clearly impermissible under
the Federal Rules of Civil Procedure, as evidenced by the Department's estimate of fees for
processing your FOIA request, disclosure of documents responsive to this subpoena involves
searching a voluminous number of records and a significant cost to the Department. Moreover,
the first four requests in the subpoena seek documents and communications from within the
entire Department related to OSU's implementation of or policies on Title IX in its entirety,
despite the fact that the underlying litigation involves OSU's adjudication of sexual misconduct
allegations against one individual under Title IX and OSU's sexual misconduct policies. While
the fifth request in the subpoena is limited to OSU's sexual misconduct policies, it still broadly

---

[3] The Department has approximately 4,400 employees. The Ohio State University has over 35,000 employees.

seeks documents and communications from within the entire Department, which may include other program offices in the Department other than OCR that handle sexual misconduct issues under different statutes. Finally, to the extent the subpoena is read to cover documents that the Department received from OSU, you can obtain those documents from OSU through discovery during the normal course of the litigation. Thus, the demand for documents outside the scope of the issues claimed in the litigation is overly broad and not proportional to the needs of your client's case. Further, as discussed more fully below, the documents sought are privileged and protected, and the burdens and potential chilling effects of the requested disclosures on the Department and its enforcement activities are significant. The burdens and impact of production here are not proportional to, and outweigh, the value of the requested documents to your client's case, if any.

Additionally, Rule 45 recognizes privileges, and instructs that subpoenas not require the disclosure of privileged or other protected information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). Most if not all of the documents sought under the third subpoena are privileged in whole or in part. For example, the request for "[a]ll documents and communications…- which DOE has not provided to OSU- that relate to any investigation(s) DOE conducted regarding OSU's implementation of [Title IX]" includes documents that are privileged, in full or in part, under at least the deliberative-process privilege, attorney-work product privilege, attorney-client privilege, and law enforcement privilege. The third subpoena also seeks "protected information," namely information covered by Federal laws that protect the strong privacy interests of persons whose personal information is in the Federal government's hands, which would be exempt from release under the FOIA by 5 U.S.C. § 552(b)(6) and (7)(C). Other Federal laws that protect the personal information sought in the third subpoena are the Privacy Act of 1974, as amended (Privacy Act), 5 U.S.C. § 552a, and the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g and 34 C.F.R. Part 99. The Privacy Act generally does not permit the Department to disclose, without the individual's prior written consent, individually identifiable information contained in records maintained in one of the Department's systems of records. Similarly, FERPA generally does not permit the Department to re-disclose personally identifiable information (PII) from students' education records without the student's prior written consent, although there is an exception to this requirement for consent that would permit the Department to make such a re-disclosure pursuant to a lawfully issued subpoena or a court order, provided that the re-disclosure of such PII is on behalf of an educational institution and the Department has made a reasonable effort to provide notification to the affected students prior to making such re-disclosure so that they may seek protective action from the issuing court. See 20 U.S.C. § 1232g(b)(2) and 34 C.F.R. § 99.31(a)(9)(i) and (ii).

With regard to the Privacy Act, in this instance, some documents responsive to the third subpoena contain individually identifiable information from records maintained in a system of records that are retrieved by an individual complainant's name. Responsive documents include individually identifiable information from complaints filed with OCR that are covered by the system of records notice entitled "Complaint Files and Log" (18-08-01), published in the Federal Register on March 15, 2004 (69 Fed. Reg. 12248-12251). As such, these documents are covered by the Privacy Act. Section 552a(b)(11) of the Privacy Act permits disclosure of records without the consent of the individual if the disclosure is made pursuant to an order of a court of competent jurisdiction. However, absent a specific order from a court of competent jurisdiction,

the Department may not rely on 5 U.S.C. § 552a(b)(11) to release individually identifiable information from Privacy Act-protected records of a complainant without his or her express prior written consent. In this regard, please note that a subpoena that is not specifically approved by a judge is not considered a court order. *See Doe v. DiGenova*, 779 F.2d 74, 77-85 (D.C. Cir. 1985) (ruling that a subpoena issued by a court clerk, such as Federal grand jury subpoena, is not a "court order" within the meaning of 5 U.S.C. § 552a(b)(11) because it is not "specifically approved" by a judge). This third subpoena was signed only by you, as counsel for Plaintiff; thus, production in response to the third subpoena would not be a permissible, non-consensual disclosure under the Privacy Act, and the Department may not legally disclose its Privacy Act-protected records pursuant to the exception to the general requirement in 5 U.S.C. § 552a(b)(11) in response to the third subpoena. Although the Department appreciates your offer to "negotiat[e] mutually agreeable protocols or gender specific pseudonyms under which the requested materials can be produced," it is not clear that such steps would be sufficient to remove all individually identifiable information from the Department's Privacy Act-protected records in a way that would permit the Department to disclose any such Privacy Act-protected records.

With regard to FERPA, documents responsive to the third subpoena contain PII from students' education records maintained by OSU. Such PII from the students' education records are protected by FERPA. This PII may be released pursuant to a lawfully issued subpoena without the prior written consent of the affected students only if the re-disclosure is made on behalf of the educational institution and the Department has made a "reasonable effort to notify" the students whose PII are at issue of the subpoena in advance of compliance therewith so that they may have the opportunity to seek additional protective action from the court, as set forth in 20 U.S.C. § 1232g(b)(2) and 34 C.F.R. §§ 99.31(a)(9)(i) and (ii) and 99.33(b)(2). Given the Department's commitment to and obligations under FERPA to provide notification to affected students in advance of compliance with a subpoena, the Department may not legally disclose its FERPA-protected PII in response to the third subpoena without having made a reasonable effort to provide such notification in advance of compliance with the third subpoena. Because the PII from the students' education records includes extremely sensitive and personal information, such as OSU Title IX investigation files from complaints alleging sexual misconduct, student conduct files, correspondence between OSU and students regarding referrals for counseling and/or medical tests, and medical information concerning students, these students' privacy interests will be compromised and undermined if their PII is disclosed by the Department without their prior written consent; thus, the privacy interests of the students are compelling.

In addition, disclosure also imposes undue burdens on the Department with respect to the costs and difficulties of locating these individual students, providing them with effective notification, and ensuring that they are appropriately provided with the opportunity to seek protective action from the court. Moreover, the Department may no longer have good contact information for a large number of these individual students, such as student witnesses, respondents, and complainants who did not file complaints with the Department, given that the third subpoena seeks documents dating back to April 4, 2011. Further, it would be extremely burdensome for the Department to remove all of these students' PII before releasing the responsive documents because this would require the Department not only to remove these students' direct and indirect identifiers but also to determine what other information could be combined with the released

information in a way that would make it linkable to these students. Under FERPA, the definition of the term "Personally Identifiable Information" includes not only direct and indirect identifiers, but also "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." *See* 34 C.F.R. § 99.3 (subsection (f) of the definition of "Personally Identifiable Information"). Because the Department is not a member of the OSU community and therefore does not know what other information about these students has been released to or is available within the OSU community, it would be extremely burdensome for the Department to have to make the determinations needed to ensure that all of these students' PII has been redacted from the responsive documents.

Thus, under the Acting Assistant Secretary's delegated authority, she has determined that compliance with the third subpoena would not be appropriate under the rules of procedure governing the matter and other applicable laws, rules, and regulations.

II.   Acting Assistant Secretary Jackson has also concluded that production of the requested documents under the third subpoena would be contrary to interests of the Department and the United States.

Disclosure of the requested documents would not further a public interest of the Department. The requested documents were created or obtained during the course of OCR's enforcement activities, specifically with regard to Title IX. As noted above, the requests for all documents related to OSU's implementation of Title IX are overbroad to the extent they seek documents unrelated to your client's claims against OSU in this lawsuit. Further, with regard to current OCR enforcement activities of sexual misconduct claims under Title IX, as of the date of the third subpoena, OCR has 591 sexual misconduct cases under investigation at 431postsecondary institutions. These investigations contain highly sensitive information gathered with the expectation that it will only be used for enforcement purposes. Thus disclosure of the requested documents pursuant to your subpoena in a private lawsuit to which the Department is not a party will have a chilling effect on current and future OCR enforcement activities.

With regard to current OCR enforcement activities, OCR is currently evaluating one complaint filed against OSU, investigating two complaints against OSU, and monitoring two agreements entered into with OSU to resolve issues identified in a compliance review and a complaint, respectively. The compliance review agreement includes continued review of OSU's handling of internal reports of sexual misconduct. Production of the requested documents reduces the effectiveness of the resolution agreement; students who believe their complaints, or information and related details shared with others about their complaints, will be released to a third party may choose not to engage in the reporting process, undermining the purpose of the resolution agreement. Additionally, there is a significant concern that production of the requested documents, which contain highly sensitive content and PII of numerous respondents and complainants, could lead to inadvertent disclosures for which there is no remedy available.

In addition, production of these documents may create similar chilling effects for those who have been subjected to unlawful discrimination by recipients of Federal funds or other participants in

OCR's investigations; that is, the public may feel discouraged or deterred from contacting OCR about their complaints of unlawful discrimination, which often include very personal and sensitive information, if OCR is then expected to produce such information in litigation to which the Department is not a party. Similarly, the public may feel discouraged from contacting staff at institutions, medical professionals, or law enforcement about their complaints of unlawful discrimination if OCR is then expected to produce interviews of these individuals that may include information about specific student complaints in private litigation to which the Department is not a party. Thus, in order for OCR to ensure recipients' compliance with the Federal antidiscrimination statutes it enforces, OCR must be able to ensure not only that the information it collects during its enforcement activities is not used for unintended purposes, but that the information is not used for a purpose that would undermine or be incompatible with OCR's enforcement efforts.

Finally, protecting OCR's deliberative process, investigative strategies, analysis, and work product in making and issuing findings in this sensitive area is also significant. It is not in the interest of the Department or of the United States to disclose such deliberations, especially where they appear to be only tangential to the case at hand.

Production of the requested documents for your client's lawsuit, and similar documents in other matters, would therefore weaken the effectiveness of OCR's enforcement actions, and such impact is disproportionate to the need for the documents in your client's private action against OSU. It is not only in the best interest of the Department, but also essential for OCR to maintain the public's trust, and it is vital that participants in OCR's enforcement actions understand the care, conscientiousness, and respect OCR has for their privacy.

Further, production would significantly impact the human and financial resources of the Department and would create an undue burden, as also referenced in Section I, *supra*. As stated in the November 28, 2017, correspondence from the Cleveland Regional Office concerning solely the search costs:

> The Department has initially determined that it will take approximately 377.5 hours to conduct an initial search for the records responsive to this request, and that the Department will incur approximately $30 of direct costs to retrieve several files from archives. Based on the foregoing, the Department's initial estimate of charges for the search for the responsive records is $20,097.00. This is an initial estimate only, and subject to revision.

The human and financial burden of reviewing the documents following a search to determine which documents fall within the scope of the request, and handling the PII contained therein as described above, and locating and notifying persons for whom FERPA protections apply, in addition to duplicating and producing the records, would be far greater than this total estimated search cost. Thus, under the Acting Assistant Secretary's delegated authority, she has determined that compliance with the third subpoena would be contrary to the interests of the Department and the United States. Disclosure of the requested documents would have a chilling effect not only on OCR's current and future enforcement activities, but potentially on individuals who have been subject to discrimination. Additionally, the significant estimated costs both from

a human capital and financial resources perspective to search, review, and produce the requested documents for the sole benefit of one party in a private lawsuit is contrary to the interests of the Department, the United States, and the public.

Based on the foregoing, please withdraw your subpoena by close of business on January 19, 2018. If you have questions about the Assistant Secretary's determination, please contact Traci Ext, Regional Chief Attorney, Cleveland Regional Enforcement Office, at (216) 522-2671 or Traci.Ext@ed.gov. In addition, if you are interested in submitting a second FOIA request to the Department, you may also contact Ms. Ext to discuss narrowing the scope of such a request to specific relevant records, which could significantly reduce the search, review, and duplication fees. Thank you for your time and attention to this matter.

Sincerely,

Meena Morey Chandra
Regional Director