IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Tyler Gischel, | : | |
| | : | Case No. 1:17-cv-475 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion to Quash |
| University of Cincinnati, *et al.*, | : | Subpoena and Granting Motion to |
| | : | Compel |
| Defendants. | : | |

This matter is before the Court on the United States Department of Education's Motion to Quash Subpoena (Doc. 20) and Plaintiff's Motion to Compel a Subset of Documents Sought in Plaintiff's Subpoena to the United States Department of Education ("Motion to Compel") (Doc. 22). In this suit, Plaintiff Tyler Gischel alleges gender discrimination against the University of Cincinnati ("UC") and UC officials after he was expelled from UC as a sanction for being found responsible for the sexual assault of a female student. He asserts that UC was biased against him in the disciplinary proceedings because, in part, UC felt pressure from the Office of Civil Rights ("OCR") within the U.S. Department of Education ("DOE") to provide preferential treatment in favor of female students who accuse male students of sexual misconduct. (Doc. 10 at PageID 729–51.) The DOE is not a party in this suit.

Gischel has issued a subpoena *duces tecum* to the DOE. The DOE seeks to quash the subpoena on procedural and substantive grounds. Gischel seeks to compel production of the responsive documents. For the reasons that follow, the Court will **DENY** the Motion to Quash Subpoena and **GRANT** the Motion to Compel.

## I.  PROCEDURAL HISTORY AND THE DEPARTMENT OF EDUCATION'S *TOUHY* REGULATIONS

### A.  Subpoena

Gischel served a subpoena *duces tecum* dated February 16, 2018 on the DOE on or about February 20, 2018.  (Doc. 20-1 at PageID 1638–43.)  Gischel seeks the DOE to produce the following documents:

> 1.  All document(s) and communication(s) created between April 4, 2011 and April 30, 2016 that relate to any sexual misconduct investigation(s) DOE conducted regarding UC's implementation of Title IX.

> 2.  All document(s) and communication(s) created between April 4, 2011 and August 30, 2016 that relate to any sexual misconduct complaint DOE received regarding UC's implementation of Title IX.

(*Id.* at PageID 1642.)  Significantly, both the terms "document" and "communication" are defined in the subpoena to *exclude* "documents: (a) DOE provided to UC, or (b) UC provided to DOE."  (*Id.*)  Gischel is excluding from the subpoena request, therefore, documents that he otherwise could obtain in discovery from UC.  In drafting and serving the subpoena upon the DOE, Gischel explicitly provided "ADDITIONAL INFORMATION" intended to bring the subpoena into compliance with the DOE's *Touhy* regulations set forth immediately below.  (*Id.* at PageID 1643.)

### B.  The DOE *Touhy* Regulations

Federal agencies have discretion to restrict the testimony of employees and the production of agency documents through promulgated regulations.  *Touhy v. Ragen*, 340 U.S. 462, 468–69 (1951).  The so-called federal housekeeping statute provides as follows:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.  This section does not authorize

2

withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301.  The relevant DOE *Touhy* regulations are set forth at 34 C.F.R. §§ 8.1 *et seq*.

The procedures in the regulations are to be followed when the DOE or an employee of the DOE receives a demand (1) to testify regarding DOE records or information or (2) to produce or disclose records or information.  34 C.F.R. § 8.1(a).  A demand for testimony or for records "[m]ust be in writing" and "[m]ust state the nature of the requested testimony or records, why the information sought is unavailable by any other means, and the reason why the release of the information would not be contrary to an interest of the Department or the United States."  34 C.F.R. § 8.3(a)(1) & (2).

Employees of the DOE are prohibited from producing records in response to a demand "without the prior written authorization of the Secretary."  34 C.F.R. § 8.5(b).  The Secretary "may make the records available" if three requirements are met:  (1) the requirements of § 8.3 are satisfied; (2) the disclosure would be appropriate under the Federal Rules of Civil Procedure; and (3) the disclosure "[w]ould not be contrary to an interest of the United States, which includes furthering a public interest of the Department and protecting the human and financial resources of the United States."  34 C.F.R. § 8.5(c).  The DOE Secretary has delegated her responsibility to the head of each DOE principal office—the Regional Director of the OCR's Cleveland, Ohio office in this case.[1]

---

[1]  https://www2.ed.gov/about/offices/list/om/docs/delegations/fs_general_ea_varied2.pdf.

**C.  The DOE Response and Gischel's Attempt to Compromise**

Citing the *Touhy* regulations, the OCR Regional Director declined to comply with the subpoena on behalf of the DOE.  (Doc. 20-2 at PageID 1677–84.)  She objected that the request was overly broad and unreasonably burdensome under Rules 26 and 45 of the Federal Rules of Civil Procedure.  Although she did not provide a privilege log, she also stated that the requested documents contain private and confidential information which is protected from disclosure.  The OCR Regional Director also objected that the production of the documents requested might have a chilling effect on OCR enforcement activities.  Finally, she suggested that Gischel submit a Freedom of Information Act request in lieu of the subpoena.  (*Id.*)

Gischel then offered to compromise.  He offered to limit the scope of the requested documents to only documents and communications from those DOE employees involved in an investigation or inquiry at UC during the relevant time frame.  (Doc. 22 at PageID 1695–96; Doc. 22-3 at 1890.)  He also offered to allow the DOE to redact personally identifiable information or use pseudonyms in lieu of student names to address the DOE's privacy and confidentiality concerns.  (Doc. 22 at PageID 1695; Doc. 22-3 at PageID 1890–91.)

## II.  ANALYSIS

**A.  Procedural Issue**

The DOE and Gischel disagree as to how the Court should proceed.  The DOE asserts that if Gischel is dissatisfied with its response to his *Touhy* subpoena, then his remedy is to file a separate action against the DOE pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*  The APA provides a right of judicial review for a person aggrieved by a federal agency action.  5 U.S.C. § 702.  The APA requires the reviewing court to set aside agency actions or findings found to be "arbitrary, capricious, an abuse of discretion, or otherwise

4

not in accordance with law." 5 U.S.C. § 706(2)(A). The "proper remedy" if the reviewing court determines that the agency decision was improper is to remand the issue back to the agency "for further investigation and explanation." *OhioHealth Corp. v. U.S. Dep't of Veteran Affairs*, No. 2:14-cv-292, 2014 WL 4660092, at *7 (S.D. Ohio Sept. 17, 2014). Gischel, on the other hand, asserts that the Court has authority to determine in this case, without a separate APA action, whether to quash the subpoena or compel the production of the requested documents pursuant to the Federal Rules of Civil Procedure.

There is a split of authority in the federal courts as to how to proceed. Some courts in the Sixth Circuit have held that the APA provides the sole avenue for review of an agency's decision to refuse to comply with a *Touhy* subpoena. *See*, *e.g.*, *Rimmer v. Holder*, 700 F.3d 246, 262–63 (6th Cir. 2012) (stating that a state court litigant whose *Touhy* request has been denied by the agency may seek a federal court to review the denial under the APA); *OhioHealth Corp.*, 2014 WL 4660092, at *2–3 (applying APA review to *Touhy* subpoenas for deposition testimony issued in state court litigation); *U.S. v. Threat*, No. 09-20523-05, 2011 WL 5865076, at *1 (E.D. Mich. Nov. 22, 2011) ("Moreover, if Defendant is dissatisfied with the DEA's response to his *Touhy* request, his remedy is an action against the DEA pursuant to the Administrative Procedures Act, and not pursuant to a motion to compel."). However, two of the three decisions, *Rimmer* and *OhioHealth*, are readily distinguishable by the fact that the subpoenas in those cases were issued by state courts. There is no dispute that, because of the doctrine of sovereign immunity, the sole remedy for a state court litigant whose *Touhy* request is denied is judicial review in federal court under the APA. *See Rimmer*, 700 F.3d at 262 (explaining that the doctrine of sovereign immunity bars a *state* court from enforcing a subpoena against the federal government) (emphasis added); *In re Packaged Ice Antitrust Lit.*, No. 08-md-01952, 2011 WL

5

1790189, at *2 (E.D. Mich. May 10, 2011) (stating that "legitimate issues of sovereign immunity may be implicated where federal officials are responding to *state* court subpoenas") (emphasis in the original).

Additionally, other district courts in the Sixth Circuit have enforced federal subpoenas under Rules 26 and 45, without separate APA actions applying arbitrary and capricious review. *See Packaged Ice*, 2011 WL 1790189, at *2–3; *see also Gardner v. Mich. State Univ.*, No. 1:12-cv-1018, 2013 WL 5320282, at *3–4 (W.D. Mich. Sept. 20, 2013) (citing favorably to *Packaged Ice*).  The *Packaged Ice* court disagreed with a Department of Justice argument that it could only be forced to comply with a subpoena in a separate court action filed under the APA.  2011 WL 1790189, at *2.  The court began its analysis stating that "in a federal court action, sovereign immunity cannot bar a federal court from enforcing a federal subpoena against the federal government."  *Id.*  The court then recognized that the Sixth Circuit had not determined the issue, but it found that the Sixth Circuit would conclude that "Federal Rule of Civil Procedure 45 and various available privilege rules provide sufficient limitations on discovery to adequately address legitimate governmental interests in objecting to a motion to compel compliance with a valid federal court subpoena."  *Id.*

Additionally, as recognized by the *Gardner* court, the Sixth Circuit provided instructive analysis about how a district court should proceed when a different federal agency regulation conflicted with discovery rules set forth in the Federal Rules of Civil Procedure.  2014 WL 5320282, at *3.  The Sixth Circuit in *In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995), addressed regulations issued by the Federal Reserve Board that prohibited the non-government defendant from disclosing certain confidential documents to plaintiff which were discoverable under Rule 34 of the Federal Rules of Civil Procedure.  The Sixth Circuit explained that "Rule

34, as enforced through Rule 37, clearly authorizes the district court to order [the defendant] Bankers Trust to turn over those documents in its possession [to the plaintiff] while the Board's regulations specifically prohibit such a disclosure." *Id.* at 469.  The Sixth Circuit determined to enforce the supremacy of Rule 34:

> [A Federal Reserve Board regulation] that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court.  Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced.  To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here.

*Id.* at 470 (footnote omitted).  This Court, likewise, concludes the DOE's *Touhy* regulations should not be read to prohibit this Court from applying the Federal Rules of Civil Procedure to compel the production of documents pursuant to an otherwise enforceable subpoena.

For these reasons, the Court will determine in this action whether to quash the subpoena or compel the production of responsive documents following Rules 26 and 45.

**B.**     **Discoverability Analysis**

Rule 26 generally governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 45 permits the party serving a subpoena to "move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  Likewise, Rule 45 requires the court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii) & (iv).

Gischel, as the party issuing the subpoena, has the burden to establish that the discovery sought is relevant if the relevancy is not apparent on the face of the request.  *See Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *Am. Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999).  However, the DOE, as the party moving to quash the subpoena, bears the ultimate burden of proof.  *Hendricks*, 275 F.R.D. at 253.  "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"  *In re Modern Plastics Corp.*, — F. App'x —, 2018 WL 195936, at *4 (6th Cir. Apr. 26, 2018) (quoting *Am. Elec. Power*, 191 F.R.D. at 136).  "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."  *In re Caresource Mgmt. Group, Co..*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (quoting *Am. Elec. Power*, 191 F.R.D. at 136).

The Court finds that Gischel has established that the documents sought are relevant. Gischel seeks to prove in this case that UC officials felt pressure from the OCR to discriminate against males accused of sexual misconduct.  The DOE acknowledges that there were four Title IX complaints made with the OCR against UC during the 2011–2016 timeframe.  (Ext Dec.,

Doc. 20-3 at PageID 1686.) Also, Gischel has alleged that a UC official made a notation in his disciplinary investigation file that the OCR had a Title IX investigation pending against UC. (Doc. 1-9 at PageID 278.) An allegation that a university is being investigated by the OCR for potential Title IX violations can tend to suggest that the university might be induced to discriminate in disciplinary proceedings against a male accused of sexual misconduct. *Cf. Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (finding that the threat of a loss of federal funds if the OCR determined the university did not vigorously combat sexual assault was part of the allegations creating an inference of intentional gender discrimination against male students by the university); *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2018 WL 1173043, at *16 (S.D. Ohio Mar. 6, 2018) (listing "Muskingum's fear of federal funding being cut if no action was taken" as part of the sufficient general allegations of gender bias).

The documents Gischel seeks from the DOE here—documents not in the possession of UC—are relevant to whether UC made statements to the OCR that tend to indicate that it was making gender-based decisions or had gender-based motivations in response to the OCR investigation and complaints. Verbal statements made by UC officials to the OCR, and then memorialized by the OCR or acted upon by the OCR, would not necessarily be found in documents provided to or from UC. Therefore, Gischel has established that the OCR's responsive documents, if any, are relevant to his claims for purposes of Rules 26 and 45.

Turning to other Rule 45 factors, the DOE has not met its burden to prove that the subpoena is overly broad or unduly burdensome. The OCR Regional Chief Attorney described the scope of responsive documents as follows:

> 8.     A search of OCR's Case Management System and Document Management System revealed four complaints that fall within the scope of the subpoena: OCR is currently investigating two of the complaints and the other two

were closed at the evaluation stage, meaning that OCR would not have had any communications with the University about them.  In addition to searching through these four case files, a preliminary review of the electronic files for these cases reveals that responding to the subpoena would require searching Microsoft Exchange e-mail accounts belonging to, at a minimum, nine current [DOE] employees and three former [DOE] employees.

9.      In addition, during the time periods covered by the subpoena, OCR Cleveland routinely sent internal general case management communications and reports, and OCR headquarters generated routine case lists, which may have mentioned cases regarding the University.  As a result, it is conceivable that all OCR Cleveland team leaders, some acting team leaders, senior managers, other OCR regional managers and staff, all OCR headquarter recipients in Washington, D.C., and other [DOE] employees in Washington, D.C., may have responsive documents.  Therefore, searching for responsive documents would require searching Microsoft Exchange e-mail accounts of potentially 600 or more former and current [DOE] employees.

10.     Further, [DOE] would have to search for responsive records related to technical assistance inquiries, customer service requests, press inquiries, as well as any records released under the Freedom of Information Act (FOIA) that might mention the cases regarding the University.  This would include searching records from OCR Cleveland, OCR Headquarters, [DOE]'s press office, and [DOE]'s FOIA Service Center.

11.     Once the searches have been conducted, [DOE] would have duplication and review costs, which would include removing any personally identifiable information likely to be contained in many of the documents.

(Ext Dec., Doc. 20-3 at PageID 1686–87.)

Complying with the subpoena will not be unduly burdensome given the concessions Gischel has made about the scope of the discovery requested during the briefing on the pending motion.  Gischel has agreed to narrow the scope of his requests to only documents related to the four OCR complaints detailed in ¶ 8 of the Ext Declaration.  (Doc. 23 at PageID 2128; Doc. 26 at PageID 2592.)  Gischel also has agreed to narrow the scope of his requests to only the documents and communications made by the twelve DOE employees involved with addressing the four OCR complaints.  Gischel states that "the twelve employees involved in these four complaints are the _only_ individuals in possession of documents which will likely reveal" UC's gender-biased

10

positions, directives, goals and/or strategies. (Doc. 26 at PageID 2588, 2592 (emphasis in the original).) Therefore, UC would not have to check the email accounts of 600 DOE employees or the records from other OCR offices as stated in ¶¶ 10–11 of the Ext Declaration.

Finally, as to the DOE's assertions regarding privacy and confidentiality concerns, the Court lacks sufficient information to make a definitive ruling. The DOE has asserted these concerns only in an abstract way without providing a privilege log to Gischel or the Court. Gischel has stated that he is willing to have all personally-identifiable information redacted. (Doc. 26 at PageID 2593.) The Court finds that the parties first should jointly attempt to resolve the DOE's privacy and confidentiality concerns before the Court addresses the issue.

## III.     CONCLUSION

For the foregoing reasons, the Motion to Quash (Doc. 20) is **DENIED** and the Motion to Compel (Doc. 22) is **GRANTED**. The DOE and Gischel are hereby ordered to meet-and-confer by telephone, teleconference, or in person—not solely by the exchange of written correspondence—within two weeks of the date of this Order to attempt to resolve any privilege, confidentiality, or privacy disputes. Thereafter, they shall contact the Court's courtroom deputy, William Miller, if they are unable to resolve their concerns and wish to request a discovery conference.

**IT IS SO ORDERED.**

Dated this __26th__ day of _____June_____, 2018.

BY THE COURT:

s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

11