**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Tyler Gischel,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.   1:17 CV 475** |
| | : | |
| **v.** | : | **Judge Susan J. Dlott** |
| | : | |
| **University of Cincinnati,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |


**[PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

**1.     PURPOSE**

This Stipulated Order ("Order") will govern the discovery and use of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the scheduling order(s) entered in this matter, and any other applicable orders and rules. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

**2.     COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**3.     E-DISCOVERY LIAISONS**

Each party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will:

a.     be knowledgeable about the party's e-discovery efforts;

b.     be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

c.     be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Each party will notify the other of any changes of its designated E-discovery Liaison.

## 4.     PROVISION OF ESI-RELATED INFORMATON

By August 28, 2019, the parties agree to provide in writing the information listed in items (a) through (e) below. The parties agree and understand that their responses are based on their knowledge and understanding as of the date of the response. The parties agree to amend or supplement their responses in a timely manner if they learn that in some material respect its response is incomplete or incorrect:

a.     A list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and a brief description of job responsibilities for each individual, and a general description of the devices and/or storage systems on which the custodian's ESI is located;

b.     A general description of any other systems for electronic communications and ESI storage ("non-custodial sources") that may contain discoverable information;

2

    c.      A general description or a copy of Defendants' operative document retention policies, throughout the relevant time period, pertaining to any electronic communications and or/ESI storage system(s) that may contain discoverable information;

    d.      A description of any potentially discoverable ESI that the party is aware of having been lost or destroyed;

    e.      A description of any potentially discoverable ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

        i.    the reasons for the party's contention regarding accessibility; and

        ii.    the proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

## 5.    MEET-AND-CONFER

The parties have begun, and will continue, to meet-and-confer to discuss and attempt to reach an agreement on the appropriate scope and limitations of both preservation and production of ESI. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

6.      **ESI SEARCH**

The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive documents of which it is aware.

A.      <u>Search Terms</u>:

1.      Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and the parties will meet and confer regarding any additional terms proposed by the requesting party. Once an initial list of terms is agreed upon, the producing party will provide a search term hit list or hit report after global de-duplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). The parties will use the report to modify terms, if necessary.

2.      If a party disputes a specific term as being overly broad, the producing party can agree review a statistically valid sample (using a benchmark of 98% confidence level with an error rate of 2%) of documents from that term to determine if the term is accurately returning documents. The producing party agrees to share the results of that review

and any responsive documents so that the parties can make an informed decision regarding modifications to the specific term in dispute.

       3.      If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter, or in whatever other form the Court may indicate, with a discussion of the relevance and/or burden associated with the search terms in dispute.

       4.      The producing party agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set. The size of the statistically random sample shall be calculated using a confidence level of 95% and a margin of error of 2%. If responsive documents are found during the Null Set review, the producing party agrees to produce the responsive documents separate and apart from the regular production. The parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

    b.    <u>Technology Assisted Review</u>: Prior to using predictive coding/technology-assisted-review for the purpose of identifying or culling the documents to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives. This discussion will include:

       1.      Whether any culling measures were taken prior to the application of TAR. If key terms are used, then the protocol above would apply to that part of the process;

       2.      The vendor being used to manage the application of the technology;

       3.      The method(s) used to derive the seed or exemplar set;

4.     The method for validating the computer decisions; and

5.     The measures taken to check the quality of the computer decisions.


The party employing TAR agrees to a goal of 85% stabilization rate for its process, meaning that of a hundred random documents sampled from the reviewable set, 85% would be accurately coded by the computer.  If the 85% stabilization rate is not reasonably achievable, the parties agree to meet and confer to adjust this number.


7.     **ESI PRODUCTION**

a.     The parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents in PDF, TIFF, native and/or paper or a combination thereof as set forth in Appendix A. For good cause, a requesting party may request the production of documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer, and the producing party shall not unreasonably deny such requests. The parties agree not to degrade the searchability of documents as part of the document production process. The parties also recognize that in some instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

b.    A producing party may deduplicate a production vertically (*i.e.*, within individual custodians) or horizontally (*i.e.,* across different custodians) provided that horizontal deduplication will necessitate the inclusion of information for custodians for which the documents have been deduplicated as specified in the technical production specification attached)

c.    The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**8.    AUTHENTICITY**

A document produced in this litigation shall be presumed to be authentic if offered as evidence against the party that produced it unless the party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

**9.    CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION**

a.    The Protective Order, ECF Doc. 56, will govern the treatment of information warranting confidential treatment.

b.    The prosecution and defense of these actions will require the processing and review of ESI, and may include data containing Personally Identifiable Information ("PII") and protected health information. In the interest of addressing privacy and security concerns, and in order to facilitate the processing and production of documents containing such data, the parties will discuss appropriate precautions and arrangements for reviewing such data. The parties' discussions

concerning the nature of information and data meriting this specialized treatment, the accessibility

of this data, and the specific parameters to govern specialized review arrangements are ongoing.


**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

  /s/ Eric J. Rosenberg
Eric J. Rosenberg (0069958)
Tracy L. Turner (0069927)
Rosenberg & Ball Co., LPA
395 N. Pearl Street
Granville, OH  43023
Phone:  (740) 644-1027
Fax:  (866) 498-0811
erosenberg@rosenbergball.com
tturner@rosenbergball.com

*Counsel for Plaintiff*

/s/ *Eric K. Combs*
Eric K. Combs (0067201)
Andrew B. Cassady (0092413)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH  45202
Phone:  513-977-8200
Fax:  513-977-8141
eric.combs@dinsmore.com
andrew.cassady@dinsmore.com

*Counsel for Defendants*


**PURSUANT TO STIPULATION AND FOR GOOD CAUSE SHOWN, IT IS SO ORDERED**.


DATED: _____                    _____
                                                                  Judge Susan J. Dlott

## Appendix A

## Technical Specifications for Production

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs or External USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

  Field Separator, ASCII character 020: "¶"
  Quote Character, ASCII character 254 "þ"
  Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

  > Beginning Production Number
  > Ending Production Number
  > Beginning Attachment Range
  > Ending Attachment Range
  > Custodian
  > Other Custodian (custodians who had duplicate copies of the document but were deduplicated using horizontal deduplication)
  > Confidentiality Designation
  > Original Location Path
  > Email Folder Path
  > Document Type
  > File Name
  > File Size
  > Hash Value
  > Date Last Modified
  > Date Created
  > Date Last Accessed
  > Date Sent
  > Date Received
  > Author (either email or lose file)
  > Recipients
  > Copyees
  > Blind Copyees
  > Email Subject
  > Path to Native File
  > Conversation Index

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to tiff images in accordance with the above protocol).

- Notwithstanding the language of Federal Rule of Civil Procedure 34, upon review the requesting party may ask for certain other documents and\or databases that were initially produced in their petrified (tiff or pdf) format to be produced in their native format in the event that the petrified version is not reasonably usable. If this is the case, the requesting party will submit a list of bates numbers identifying the documents. The documents should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:

  Beginning Production Number
  Ending Production Number
  Beginning Attachment Range
  Ending Attachment Range
  Path to Native File
  MD5 Hash Value

## PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information.  To the extent a database contains responsive and non-responsive information, only potentially responsive information needs to be disclosed:

Database Name
Type of Database
Software Platform
Software Version
Business Purpose
A List of Standard Reports
Database Owner or Administrator's Name
Field List
Field Definitions (including field type, size and use)

Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.